## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

Divon Daniel Wray,

                    Plaintiff,

            v.                                    1:25-CV-1393
                                                  (MAD/MJK)

Experian Information Solutions, Inc. *et al.*

                    Defendants.

---

Divon Daniel Wray, *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Mae A. D'Agostino, U.S. District Court Judge

## ORDER & REPORT-RECOMMENDATION

On October 7, 2025, Divon Daniel Wray began this action by filing a Complaint. (Dkt. 1). He also moved for leave to proceed *in forma pauperis* ("*IFP*"). (Dkt. 2). Wray alleges violations of the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. § 1681 *et seq*. The Clerk sent Wray's Complaint and *IFP* application to this Court for review. (Dkts. 1, 2).

1

## I. BACKGROUND

Wray sues Experian Information Solutions, Inc., Equifax Information Services, LLC, and TransUnion, LLC, ("Defendants") under the FCRA alleging violations of 15 U.S.C. §§ 1681. (Dkt. 1 at 2-3 and ¶¶ 7-9).[1] Wray claims that Defendants operate as "consumer reporting agencies." (*Id.*). Wray further alleges that on August 12, 2025, he submitted "disputes" to Defendants relating to an allegedly fraudulent Verizon account that appeared on his credit reports. (Dkt. 1 at ¶ 8). About two months after submitting his disputes, Wray filed this Complaint. (Dkt. 1 at 1). In his Complaint, Wray argues that Defendants violated the FCRA in five different ways. (Dkt. 1 at ¶¶ 6-28).

First, that Defendants "failed to follow reasonable procedures to assure maximum possible accuracy of the information they reported regarding [Wray]," in violation of 15 U.S.C. § 1681e(b). (Dkt. 1 at ¶¶ 33-34). As examples, Wray alleges that details of a Department of Education account, Mohela account, and Lead Bank account are inconsistent or absent from his credit reports. (Dkt. 1 at ¶¶ 18-20).

---

[1] The page numbers cited are those produced by the Electronic Case Filing ("ECF") system.

Second, Wray claims that Defendants failed to conduct reasonable reinvestigations after his disputes, in violation of 15 U.S.C. § 1681i. (Dkt. 1 at ¶ 41). In his words: "Defendants merely 'parroted' information received from the furnishers without independently reevaluating the extensive information and proof provided by Wray." (Dkt. 1 at ¶ 13).

Third, that Defendants "failed to block information resulting from identity theft," in violation of 15 U.S.C. § 1681c-2. (Dkt. 1 at ¶¶ 50-51).

Fourth, that Defendants did not maintain reasonable procedures to prevent reinsertion, and unlawfully reinserted, previously deleted information onto his credit reports, in violation of 15 U.S.C § 1681(a)(5)(b). (Dkt. 1 at ¶20). For this argument, Wray's Complaint includes a list of several accounts that had been allegedly deleted and reinserted into his various credit reports. (Dkt. 1 at ¶¶ 21-23).

Fifth, that Defendants improperly disclosed his credit reports because of several allegedly unauthorized credit inquiries. (Dkt. 1 at ¶ 63).

Wray argues that Defendants' violation of the FCRA entitle him to "actual damages in an amount to be determined at trial, but not less

3

than $74,000; statutory damages for each willful violation of the FCRA pursuant to 15 U.S.C. § 1681n; costs of this action and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;" injunctive relief; and "other and further relief that the Court may deem just and proper." (Dkt. 1 at ¶ 65) (cleaned up).

## II. *IFP* APPLICATION

Wray declares that he is unable to pay the filing fee in his *IFP* application. (Dkt. 2). After reviewing his application and supporting documents, this Court finds that Wray is financially eligible for *IFP* status.

## III. STANDARD OF REVIEW

Alongside determining whether Wray meets the financial criteria to proceed *IFP*, the Court must also consider whether Wray's complaint sets forth sufficient allegations considering 28 U.S.C. § 1915. That Section provides that the Court may dismiss a complaint, or a portion of the complaint, at any time if the Court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

To determine if an action is frivolous, the Court must consider whether the complaint lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and 28 U.S.C. § 1915. Dismissal of frivolous actions prevents abuse of court process and discourages the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974) (*per curiam*). While true that the Court must show liberality toward *pro se* litigants—and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond—the court still has a responsibility to determine that a claim is not frivolous before permitting the action to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (*per curiam*) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

## IV.  DISCUSSION

The Court recommends that the District Court dismiss Wray's Complaint for two reasons. First, Wray has failed to allege any "concrete" injury sufficient to confer standing. Second, Wray has not adequately stated claims under the FCRA. Therefore, the Court recommends that the District Court dismiss Wray's Complaint.

### A. The District Court should Dismiss Wray's Complaint because he has not alleged a "concrete" injury sufficient to confer standing.

The District Court should dismiss Wray's Complaint because he fails to allege any injury sufficient to confer standing. To have standing, a plaintiff must allege an injury in fact that is concrete and particularized. Here, Wray has not pleaded a concrete and particularized injury. So, the District Court should dismiss his Complaint for lack of standing.

Wray's Complaint alleges no injury sufficient to confer standing. To establish standing, "a plaintiff must show," among other things, "an 'injury in fact.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quotation omitted). An injury must be "concrete and particularized" and "actual or imminent," not "conjectural or

6

hypothetical." *Id.* at 158. Concerning the FCRA specifically, "'a bare procedural violation, divorced from any concrete harm fails to satisfy the injury-in-fact requirement of Article III." *Zlotnick v. Equifax Info. Servs.*, LLC, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016) (cleaned up).

At the pleading stage "standing allegations need not be crafted with precise detail, nor must the plaintiff prove the allegations of his injury." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401-02 (2d Cir. 2015) (quotation omitted). But still, a plaintiff must answer the core question of standing: "What's it to you?" *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (citation omitted). And to answer that question, a plaintiff must allege facts "that affirmatively and plausibly suggest that he has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

Wray's Complaint does not plausibly allege facts suggesting that he has standing as to any of his five claims. For each FCRA claim, Wray states the required elements. *See* (Dkt. 1 at ¶¶ 31-64). He further asks for "[actual] damages," "[p]unitive damages," and "[c]osts of this action

and reasonable attorney's fees. (Dkt. 1 at ¶ 65) (cleaned up). For example, he alleges that the Defendants' alleged violations are "sufficient to mislead prospective creditors acting reasonably under the circumstances and to adversely affect credit decisions regarding the Plaintiff" (Dkt. 1 at ¶35), but he does not allege that he has actually suffered any adverse credit decisions. Similarly, he alleges that the Defendants' violations "have directly and proximately caused Plaintiff to suffer concrete damages" (Dkt. 1 at ¶¶44, 51) but does not plead these damages. Wray does not allege any facts suggesting that he has suffered any "concrete and particularized" harm sufficient to confer standing. *See Amidax*, 671 F.3d at 145 (a plaintiff must allege facts "that affirmatively and plausibly suggest that [she] has standing to sue.").

And without allegations linking Defendants' actions to any harm, Wray's Complaint contains nothing more than a list of alleged procedural violations followed by "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2008). Without more, this is insufficient to confer standing. *See Gross v. TransUnion, LLC*, 607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022) (cleaned

up) (explaining that a plaintiff fails to establish standing if "[t]he alleged harms are not expenses, costs, any specific lost credit opportunity, or specific emotional injuries.").

At bottom, the District Court should dismiss Wray's Complaint because his conclusory allegations fail to show *how* Defendants' alleged errors caused Wray to suffer a "concrete and particularized harm."

## B. The District Court should dismiss Wray's Complaint because he has not pleaded sufficient facts to survive this initial review.

Should the District Court decide that Wray has standing, the Court recommends that the District Court dismiss the Complaint because Wray has failed to plausibly allege sufficient facts for any claim under the FCRA. Below, the Court will discuss each of Wray's FCRA allegations.

### 1.  Wray fails to allege that Defendants followed improper procedures while generating and reinvestigating his credit reports.

The District Court should dismiss Wray's Complaint because he fails to plausibly plead that Defendants' have violated 15 U.S.C. §§ 1681e(b) and 1681i. Section 1681e(b) requires a plaintiff to show that a defendant lacked reasonable procedures to assure credit accuracy.

Section 1681i requires a plaintiff to show that a defendant lacked reasonable procedures to reinvestigate disputed credit information. Because Wray's Complaint fails to plausibly allege that Defendants' lack reasonable investigation and reinvestigations procedures, he has failed to state a claim. Therefore, the Court recommends that the District Court dismiss Wray's Complaint.

Wray has not plausibly pleaded that Defendants violated Section 15 U.S.C. § 1681e(b). Section 1681e(b) creates liability if a credit reporting agency ("CRA") fails "to follow reasonable procedures to assure maximum possible accuracy." 15 U.S.C. § 1681e(b). To raise a claim under § 1681e(b), a plaintiff must show that "(1) the consumer reporting agency was negligent [or willful] in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence [or willfulness] proximately caused the plaintiff's injury." *Taylor v. Experian Info. Sols., Inc.*, 5:24-CV-188 (DNH/MJK), 2024 WL 618741, at *4 (N.D.N.Y. Feb. 14, 2024) (citations omitted). Wray has not plausibly stated a claim under Section 1681(e)(b). Rather,

Wray simply states that he has "identified significant inconsistencies in the reporting of accounts across all three Defendants' credit reporting systems, further evidencing their failure to maintain reasonable procedures to assure maximum possible accuracy." (Dkt. at ¶7) (cleaned up). Indeed, Wray appears to argue that because there were alleged errors, Defendants' must not have maintained reasonable procedures. That is not enough. *See Gaft v. Mitsubishi Motor Credit of Am.*, No. 07-CV-527, 2009 WL 3148764 (S.D.N.Y. Sept. 22, 2009) (explaining that an "inaccurate entry of credit information, in and of itself, is not a violation of the FCRA; rather . . . [the] plaintiff must allege that the [CRA] failed, through negligence or intention, to follow reasonable procedures to ensure the accuracy of the information."). Wray's Section 1681i claim fairs no better. Section 1681i creates procedures that CRAs must follow to investigate disputes concerning the accuracy of reported information. These procedures include reinvestigating a consumer's record within a reasonable period after a consumer "directly conveys" a dispute about the "completeness or accuracy of an item on his credit report" to the consumer reporting agency. *Podell v. Citicorp Diners Club*, 112 F.3d 98, 101 (2d Cir. 1997) (citing 15 U.S.C. § 1681i(a)). What constitutes a

"reasonable" reinvestigation depends on the circumstances of the allegations. *See Jones v. Experian Info. Solutions, Inc.*, 982 F. Supp. 2d 268, 272 (S.D.N.Y. 2013) (citation omitted).

Here, Wray fails to make any plausible claims regarding Defendants' reinvestigation procedures. Wray states that "Defendants' conducted 'sham' reinvestigations by merely parroting information received from furnishers without conducting an independent evaluation of the disputed information and [his] evidence." (Dkt. 1 at ¶ 42). But Wray fails to allege any facts concerning the specific procedures that Defendants took to reinvestigate his allegedly inaccurate credit reports. *See Nguyen v. Ridgewood Sav. Bank*, No. 14-CV-1058, 2015 WL 2354308, at *11 (E.D.N.Y. May 15, 2015) (dismissing plaintiff's complaints because he "fail[ed] to make any allegations regarding either the procedures followed or investigations by Trans Union, Equifax or Experian . . . in order to support a Section 1681i claim."). As it stands, Wray's Section 1681i arguments rest on "naked assertion[s]" devoid of "further factual enhancement" which is not enough to show "grounds" for any "entitle[ment] to relief." *Twombly*, 550 U.S. at 555, 557 (2006).

\* \* \*

12

And so, the District Court should dismiss Wray's 15 U.S.C. §§ 1681e(b) and 1681i claims because he has failed to state a claim upon which relief can be granted.

## 2. Wray has failed to state a claim under 15 U.S.C. § 1681 c-2.

The District Court should dismiss Wray's Complaint because he fails to plausibly plead that Defendants violated 15 U.S.C. § 1681c-2 which requires a CRA to block credit information that the consumer identifies as resulting from identity theft. Because it is unclear whether Wray submitted the required paperwork to trigger Defendants' duty to block his credit information, he has failed to state a claim upon which relief can be granted. Therefore, the Court recommends that the District Court dismiss Wray's Complaint.

Under Section 1681c-2, a CRA has a duty to "block the reporting of any information" in a consumer's file that the consumer identifies as resulting from identity theft. To trigger the CRA's duty to block the reporting of information, the consumer must provide the CRA with "(1) proof of the identity of the consumer; (2) a copy of the identity theft report; (3) the identification of the information resulting from the alleged identity theft; and (4) a statement by the consumer affirming

13

that the disputed information does not relate to any transaction by the consumer." *Phipps v. Experian*, No. 20-CV-3368, 2020 WL 3268488, at *4 (S.D.N.Y. June 15, 2020) (quoting 15 U.S.C. § 1681c-2(a)).

Although Wray claims that he has submitted some of the required paperwork—like a Federal Trade Commission Identity Theft Report—he has not alleged additional facts sufficient to plausibly state that Defendants violated their FCRA duties.[2] And like his 15 U.S.C. §§ 1681e(b) and 1681i claims, Wray fails "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Therefore, the Court recommends dismissing Wray's complaint. *See Phipps*, 2020 WL 3268488, at *4 (noting that it is "unclear from the complaint whether [the *pro se* plaintiff] provided [the defendant-CRA] with the required information" and granting the plaintiff leave to amend "and plead facts showing that he provided [the defendant-CRA] with the information required under § 1681c-2(a) and that it failed to comply with its duties under the statute").

---

[2] The FTC Identity Theft Report is attached to the Complaint at Dkt. 1, p. 22. A review of this exhibit reveals that it lacks material details that are required to plead a claim under this section of the FCRA.

### 3. Wray fails to state a claim under 15 U.S.C. § 1681b because he does not plausibly allege that Defendants provided his credit report to third parties.

The Court recommends that the District Court dismiss Wray's Complaint because he fails state a claim under 15 U.S.C. § 1681b. To plausibly plead a Section 1681b claim, a plaintiff must show that credit information was improperly disseminated to third parties and that the defendant did not maintain reasonable procedures to prevent credit information dissemination. Wray has failed to plausibly plead either. Therefore, the Court recommends that the District Court dismiss Wray's Complaint.

"Section 1681b generally specifies the circumstances under which a consumer report may be furnished and used and protects consumer privacy by limiting access to consumer credit reports." *Moore v. Experian*, No. 23-CV-673, 2023 WL 7169119, at *5 (S.D.N.Y. Oct. 13, 2023), *report and recommendation adopted*, 2023 WL 7166158 (S.D.N.Y. Oct. 31, 2023) (cleaned up). Section 1681b differs from other FCRA provisions because "liability under Section 1681b typically attaches to third parties who willfully or negligently 'use or obtain' a consumer report for an impermissible purpose." *Id.* (cleaned up). Still, liability

may attach to a CRA where a third party accessed or used a consumer report for an impermissible purpose provided the CRA "either willfully or negligently fail[ed] to maintain reasonable procedures designed to avoid violations of" Section 1681b. *Pietrafesa v. First Am. Real Estate Info. Servs.*, No. 1:05-CV-1450 (LEX), 2007 WL 710197, at *3 (N.D.N.Y. Mar. 6, 2007) (cleaned up). To determine whether the CRA maintained reasonable procedures, "the standard of conduct is what a reasonably prudent person would do under the circumstances." *Hines v Equifax*, No. 19-CV-6701, 2022 WL 2841909, at *23 (E.D.N.Y July 16, 2022) (cleaned up).

Wray does not plausibly allege a § 1681b claim against Defendants because the Complaint does not allege that Defendants provided his consumer report to a third party, "which is fatal to any claim that [Defendants] impermissibly shared [his] report." *Moore*, 2023 WL 7169119, at *6. On this basis alone, Wray's Complaint is subject to dismissal.

That said, Wray's Complaint does provide a list of alleged credit inquiries made without any "permissible purpose." *See* (Dkt. 1 at ¶¶ 63-64). But his claim still fails because he does not plausibly allege that

Defendants "either willfully or negligently fail[ed] to maintain reasonable procedures" to prevent an improper furnishing of information. *Pietrafesa*, 2007 WL 710197, at *3. Indeed, "[m]erely stating that the violation was 'willful' or 'negligent' without more is insufficient." *Perez v. Experian*, No. 20-CV-9119, 2021 WL 4784280, at *11 (S.D.N.Y. Oct. 14, 2021) (citation omitted).

Because Wray does not plausibly allege that his credit information was disseminated to third parties, the District Court should dismiss his Complaint. But even if Wray had plausibly alleged that his credit information was disseminated to third parties, his claim would still fail because he has not alleged that a third party sought or used his information for an impermissible purpose. *See Taylor*, 2024 WL 618741. Moreover, Wray has failed to plausibly plead  facts to support the allegations that Defendants willfully or negligently failed to maintain reasonable procedures to prevent improper furnishing of information. *See Perl v. Am. Exp.*, No. 11-CV-7374, 2012 WL 178333, at *2 (S.D.N.Y. Jan. 19, 2012) (dismissing part of the *pro se* plaintiffs' complaint because they did not provide enough additional facts for the court to infer willful or negligent violations of the FCRA).

17

In the end, Wray has pleaded no facts suggesting that Defendants disseminated his credit information to third parties. Wray has also not pleaded any facts suggesting that even if Defendants had disseminated his credit information, they acted with anything other than good faith. In consequence, the District Court should dismiss Wray's Complaint because he has failed to state a claim under 15 U.S.C. § 1681b.

### 4. Wray's 15 U.S.C. § 1681i(a)(5)(A) claim fails because he does not allege that Defendants improperly reinserted information after reinvestigation.

The District Court should dismiss Wray's Complaint because he fails to plausibly allege that Defendants have violated 15 U.S.C. § 1681i(a)(5)(A). Section 1681i(a)(5)(A) requires a plaintiff to plausibly plead that a CRA improperly reinserted credit information into a credit report. Wray has not done so. Therefore, the Court recommends that the District Court dismiss Wray's Complaint.

Section 1681i(a)(5)(A) of the FCRA requires that a consumer reporting agency delete information disputed by a consumer from the consumer's file if that information cannot be verified pursuant to a "reinvestigation under paragraph (1)." 15 U.S.C. § 1681i(a)(5)(A)(i); *see also id.* § 1681i(a)(1). Section 1681i(a)(5)(B) provides: "If any information is deleted from a consumer's file pursuant to subparagraph

(A), the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate." *Id.* § 1681i(a)(5)(B)(i). And if a consumer reporting agency reinserts any previously deleted information, it must "notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion." *Id.* § 1681i(a)(5)(B)(ii); *see also Phipps*, 2020 WL 3268488, at *2 (S.D.N.Y. June 15, 2020) (describing FCRA reinsertion procedure). So, to state a valid claim for failure to notify under Section 1681i(a)(5)(B), "the re-reported information must have been deleted pursuant to a § 1681i(a)(1) reinvestigation." *Wimberly v. Experian Info. Sols.*, No. 1:18-CV-6058, 2021 WL 326972 (S.D.N.Y. Feb. 1, 2021) (quotation omitted).

Wray's proposed reinsertion claim fails for two reasons. First, Wray does not plausibly allege that Defendants reinserted previously deleted information regarding a tradeline that had previously been deleted. (Dkt. 1 at ¶¶54-60). And because the tradeline was not deleted from Wray's file pursuant to a reinvestigation, any alleged reinsertion did not trigger the notice requirement. Therefore, Defendants cannot be

liable for failure to notify Wray of reinserted information. *See Wimberly*, 2021 WL 326972.

Second, even if the alleged reinsertion did trigger the notice requirement, Wray has not pleaded any injury whatsoever for this claim. *See* (Dkt. 1 at ¶¶54-60). And a plaintiff must show, among other things, a concrete and particularized injury to "affirmatively and plausibly suggest that he has standing to sue." *Amidax*, 671 F.3d at 145. Because Wray fails to plead any injury under this count, the Court recommends that the District Court dismiss Wray's Complaint.

## V.    OPPORTUNITY TO AMEND

Generally, before the court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the court should afford a plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the Court recommends that Wray be allowed to amend his Complaint because he may be able to plead facts that give him standing and that invoke one or more of the statutory sections that he references.

## VII. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED,** that Wray's motion to proceed *in forma pauperis* (Dkt. 2) is granted; and it is further

**RECOMMENDED,** that the Complaint (Dkt. 1) be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that if the District Court adopts this recommendation, Wray be given forty-five (45) days to amend their Complaint to the extent authorized, and that Wray be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERSEDE THE ORIGINAL**, and that Wray must include all remaining facts and causes of action in the amended complaint. No facts or claims from the original complaint may be incorporated by reference; and it is further

**RECOMMENDED,** that if the District Court adopts this recommendation, and Wray does not elect to amend their Complaint within the imposed deadline, the case be dismissed in its entirety, with prejudice; and it is further

**RECOMMENDED,** that if the District Court adopts this recommendation, and Wray files a proposed amended complaint, the proposed amended complaint be returned to me for review of the amended complaint and any orders relating to service on the Defendants, and it is

**ORDERED** that the Clerk provide Wray with a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citation omitted); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 20, 2026

Digitally signed by
Mitchell J Katz
Date: 2026.02.20
10:02:12 -05'00'

Hon. Mitchell J. Katz
U.S. Magistrate Judge

22

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 23 of 143

Taylor v. Experian Information Solutions, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 618741

2024 WL 618741
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Sharmell TAYLOR, Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC., Defendant.

5:24-CV-188 (DNH/MJK)
|
Signed February 14, 2024

**Attorneys and Law Firms**

SHARMELL TAYLOR, Plaintiff, pro se.

### ORDER and REPORT-RECOMMENDATION

Mitchell J. Katz, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a pro se complaint filed by plaintiff Sharmell Taylor, in which she has asserted claims against defendant Experian Information Solutions INC ("Experian") under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692; the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681; and state law. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

### I. IFP Application

Plaintiff declares in her IFP application that she is unable to pay the filing fee. (Dkt. No. 2). After reviewing her application and supporting documents, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldredge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Houston v. Collerman, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting Ashcroft, 556 U.S. at 678). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." Id. (citing Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009)). The court will now turn to a consideration of plaintiff's complaint under the above standards.

### II. Complaint

**\*2** Plaintiff alleges that defendant Experian operates a "credit collection agency." (Compl. at 7). [1] Plaintiff further states that on October 18, 2023, she sent a "dispute" to Experian, "disputing the reporting of transactions on

2024 WL 618741

the plaintiff's consumer report that were not authorized to be furnished by the consumer." (*Id.*). On November 2, 2023, Experian "responded to the plaintiff sending out dispute results." (*Id.*). On December 3, 2023, plaintiff "reached out" to Experian "for the second time regarding the transactions still being reported on the consumer report without authorization." (*Id.*). On December 22, 2023, Experian "responded with an identical letter and the transactions were still being reported." (*Id.* at 7-8).

1    The page numbers cited are those produced by the Electronic Case Filing ("ECF") system.

The complaint alleges four counts against Experian. First, plaintiff states a cause of action for "Defamation of Character (Per Se)." (*Id.* at 6). Specifically, plaintiff alleges that Experian, through plaintiff's consumer report, made "false and damaging statements about the plaintiff." (*Id.*). Plaintiff states that, as a result of Experian's defamatory statements, plaintiff has suffered "negligent infliction of emotional and financial distress." (*Id.*).

Plaintiff next asserts a cause of action for "Negligent Enablement of Identity Fraud." (*Id.* at 6). She states that Experian's failure to investigate her submitted dispute "enabled identity fraud" against her, and, as a result of Experian's negligence, plaintiff has suffered "negligent infliction of emotional and financial distress." (*Id.*).

Plaintiff's third cause of action is brought under the FDCPA. (*Id.* at 6). Plaintiff alleges that Experian, "a debt collector as defined by the [FDCPA], violated the Act by not removing the debt or the portion of the debt the plaintiff dispute with in the 30-day period under 15 U.S.C. § 1692g(b)." (*Id.* at 6-7).

Plaintiff's final cause of action is brought under the FCRA. (*Id.* at 7). She states that Experian "willfully violated the [FCRA] by failing to comply with 15 U.S.C. § 1681b the permissible purpose of consumer reports and 1681a(2)(A)(i) definitions; rules of construction." (*Id.* at 7).

In her request for relief, plaintiff seeks compensatory damages in the amount of $4,000 for "pain and suffering due to an inability to utilize the credit system[,]" as well as for causing "emotional and financial damages due to reported information by" Experian. (Compl. at 4). Plaintiff also seeks punitive damages in the amount of $4,000 "based on the egregious and willful nature of" Experian's conduct, and to "punish and deter future similar conduct." (*Id.*). Last, plaintiff

seeks injunctive relief in the removal of the disputed account from the consumer report. (*Id.*).

## DISCUSSION

### III. The Fair Debt Collection Practices Act

The FDCPA prohibits deceptive and misleading practices by "debt collectors." *Anderson v. Experian*, No. 19-CV-8833, 2019 WL 6324179, at *2 (S.D.N.Y. Nov. 26, 2019) (quoting 15 U.S.C. § 1692e). The statute seeks to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."*Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting 15 U.S.C. § 1692(e)) (internal quotation marks omitted). "To accomplish these goals, the FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices." *Anderson v. Experian*, 2019 WL 6324179, at *2 (citing 15 U.S.C. § 1692k).

"To establish a violation under the FDCPA, three elements must be proven: '(1) the plaintiff [must] be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a "debt collector," and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements.' " *Skvarla v. MRS BPO, LLC*, No. 21-CV-55, 2021 WL 2941118, at *2 (S.D.N.Y. July 12, 2021) (quoting *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559-60 (E.D.N.Y. 2017)). "The term 'debt collector' is defined under the FDCPA as a person who, among other requirements, is engaged in any 'business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect ... debts owed or due ... another.' " *Perez v. Experian*, No. 20-CV-9119, 2021 WL 4784280, at *12 (S.D.N.Y. Oct. 14, 2021), *report and recommendation adopted*, 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021)(quoting 15 U.S.C. § 1692a(6)).

**\*3** Plaintiff's complaint fails to state facts suggesting a claim for relief under the FDCPA. Experian, the sole defendant named in this action, is "not normally identified as a debt collector." *Anderson v. Experian*, 2019 WL 6324179, at *2; *see also Perez v. Experian*, 2021 WL 4784280, at *13 ("Equifax, Experian, and Trans Union are credit reporting agencies that do not collect debts, and therefore

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 25 of 143

Taylor v. Experian Information Solutions, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 618741

do not fall within the meaning 'debt collector' under the FDCPA, but instead under the term 'consumer reporting agency' [("CRA")] as defined in § 1681a(f)."); *compare* 15 U.S.C. 1692a(6) (defining debt collector) *with* 15 U.S.C. § 1681a(f) (defining consumer reporting agency). Plaintiff does not credibly allege that Experian is a "debt collector." Rather, plaintiff's allegations suggest her challenges to the consumer report issued by Experian in its capacity as a CRA. (Compl. at 7). Because the complaint fails to allege any non-conclusory allegations that Experian is a "debt collector," or that it has engaged in any debt collection activity, plaintiff has failed to state a claim under the FDCPA. *See Allen v. United Student Aid Funds, Inc.*, No. 17-CV-8192, 2018 WL 4680023, at *5 (S.D.N.Y. Sept. 28, 2018) (granting motion to dismiss when plaintiff has not pled sufficient facts to classify defendants as debt collectors).

## IV. The Fair Credit Reporting Act

"The FCRA regulates consumer credit reporting agencies to ensure accuracy, confidentiality, relevancy, and proper utilization of consumer credit information." *Perez v. Experian*, 2021 WL 4784280, at *5 (citing 15 U.S.C. § 1681(b)). "It 'places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies.' " *Id.* (quoting *Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475, 2002 WL 31106934, at *3 (S.D.N.Y. Sept 20, 2002) (citing 15 U.S.C. §§ 1681 et seq.)).

Liberally construed, plaintiff's complaint alleges FCRA claims against Experian pursuant to §§ 1681b, 1681e(b), and 1681i. The court will address each claim in turn.

### A. § 1681b

"Section 1681b generally specifies the circumstances under which a consumer report may be furnished and used[,] and protects consumer privacy by limiting access to consumer credit reports." *Moore v. Experian*, No. 23 Civ. 673, 2023 WL 7169119, at *5 (S.D.N.Y. Oct. 13, 2023), *report and recommendation adopted*, 2023 WL 7166158 (S.D.N.Y. Oct. 31, 2023) (internal citations and quotation marks omitted). "As distinguished from many other provisions of the FCRA regulating CRAs, liability under Section 1681b typically attaches to third parties who willfully or negligently 'use or obtain' a consumer report for an impermissible purpose." *Id.* (internal quotation marks omitted) (quoting *Rajapakse v. Shaw*, No. 20 Civ. 10473, 2022 WL 1051108, at *5 (S.D.N.Y. Feb. 18, 2022), *report and recommendation adopted*, 2022

WL 855870 (S.D.N.Y. Mar. 23, 2022)). However, liability may attach to a CRA where a third party accessed or used a consumer report for an impermissible purpose, if the CRA "either willfully or negligently fail[ed] to maintain reasonable procedures [2] designed to avoid violations of" Section 1681b. *Pietrafesa v. First Am. Real Estate Info. Servs.*, No. 05 Civ. 1450 (LEK/RFT), 2007 WL 710197, at *3 (N.D.N.Y. Mar. 6, 2007); *see also Podell v. Citicorp Diners Club*, 859 F. Supp. 701, 705 (S.D.N.Y. 1994) (noting that Section 1681b "limits the purposes and uses of a credit report," and that the FCRA "imposes civil liability upon [CRAs] ... who willfully or negligently violate the [FCRA]"). To determine whether the CRA maintained reasonable procedures, "the standard of conduct is what a reasonably prudent person would do under the circumstances." *Hines*, 2022 WL 2841909, at *23.

[2]     Section 1681e(a) provides that "[e]very [CRA] shall maintain reasonable procedures designed to ... limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). The court construes plaintiff's Section 1681b Claim as if brought pursuant to both Sections 1681b and 1681e(a), and, as other courts have done, analyzes these claims together. *See Hines v. Equifax Info. Servs., LLC*, No. 19 Civ. 6701, 2022 WL 2841909, at *23 (E.D.N.Y. July 16, 2022).

**\*4**  Plaintiff fails to plausibly allege a § 1681b claim against Experian, because the complaint does not allege that Experian provided plaintiff's consumer report to a third party, "which is fatal to any claim that [Experian] impermissibly shared her report." *Moore v. Experian*, 2023 WL 7169119, at *6. On this basis alone, plaintiff's complaint is subject to dismissal.

Even if the complaint could be read to allege that Experian furnished a consumer report to an unnamed third party, the claim would still fail because plaintiff does not plausibly allege that a third party sought or used the information for an impermissible purpose, nor does it plausibly allege that Experian "either willfully or negligently fail[ed] to maintain reasonable procedures" to prevent an improper furnishing of information. *Pietrafesa*, 2007 WL 710197, at *3; *see also Selvam v. Experian Info. Sols., Inc.*, No. 13 Civ. 6078, 2015 WL 1034891, at *4 (E.D.N.Y. Mar. 10, 2015) (granting motion to dismiss where plaintiff failed to allege how the CRA acted unreasonably). In her complaint, plaintiff states that Experian "willfully" violated the FCRA, and also references that Experian "breached [its] duty through

Taylor v. Experian Information Solutions, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 618741

negligence." (Compl. at 6-7). However, "[m]erely stating that the violation was 'willful' or 'negligent' without more is insufficient." *Perez v. Experian*, 2021 WL 4784280, at *11 (citing *Perl v. Plains Com. Bank*, No. 11-CV-7972, 2012 WL 760401, at *2 (S.D.N.Y. Mar. 8, 2012)); *see also Perl v. Am. Exp.*, No. 11-CV-6899, 2012 WL 178333, at *2 (S.D.N.Y. Jan. 19, 2012) ("While [plaintiff] assert[s] that each [D]efendant's FCRA violation was willful, [he] do[es] so in a conclusory manner in [both] of the complaints .... [Plaintiff] ha[s] failed to allege any facts related to [D]efendants' state of mind when they allegedly [violated the FCRA]"). Accordingly, plaintiff's § 1681b claim should be dismissed.

**B. §§ 1681e(b) and 1681i** [3]

[3]     The following discussion of the applicable law is taken from U.S. Magistrate Judge James L. Cott's cogent summary in *Perez v. Experian*, No. 20-CV-9119, 2021 WL 4784280, at *1 (S.D.N.Y. Oct. 14, 2021), which report-recommendation was adopted in its entirety by U.S. District Judge Paul A. Engelmayer in *Perez v. Experian*, No. 20 Civ. 9119, 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021).

Section 1681e(b) imposes a duty on CRAs to "assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To state a claim under Section 1681e(b), a plaintiff must allege that: "(1) the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury." *Wimberly v. Experian Info. Sols.*, No. 18-CV-6058, 2021 WL 326972, at *5 (S.D.N.Y. Feb. 1, 2021) (quoting *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367, 2019 WL 2492762, at *2 (E.D.N.Y. June 14, 2019)).

When the accuracy of a report is in dispute, Section 1681i outlines specific procedures that CRAs must follow to ensure the proper reinvestigation of disputed information. Section 1681i requires that if a consumer notifies a CRA of a dispute as to the accuracy of any item of information contained in his file, within 30 days of notification, the CRA "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A); *Jones v. Experian Info. Solutions, Inc.*, 982 F. Supp. 2d 268, 272 (S.D.N.Y. 2013). Courts in this District have noted that "the parameters of a reasonable investigation

will ... depend on the circumstances of a particular dispute." *Frydman v. Experian Info. Sols., Inc.*, No. 14-CV-9013, 2016 WL 11483839, at *15 (S.D.N.Y. Aug. 11, 2016) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 713 (3d Cir. 2010)), *report and recommendation adopted*, 2016 WL 5661596 (Sept. 30, 2016). The reinvestigation requirement demands "more than (a) forwarding the dispute information onto the furnisher of information and (b) relying on the furnisher of information's response." *Gorman v. Experian Info. Sols., Inc.*, No. 07-CV-1846, 2008 WL 4934047, at *5 (S.D.N.Y. Nov. 19, 2008) (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)).

**\*5** The threshold question under both Sections 1681e(b) and 1681i "is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Id.* (collecting cases). A credit report is inaccurate "either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Wimberly*, 2021 WL 326972, at *5 (quoting *Wenning v. On-Site Manager, Inc.*, No. 14-CV-9693, 2016 WL 3538379, at *9 (S.D.N.Y. June 22, 2016)). "Information provided by a consumer reporting agency is misleading where it is 'open to an interpretation that is directly contradictory to the true information.' " *Id.* (quoting *Wagner v. TRW, Inc.*, 139 F.3d 898, 898 (5th Cir. 1998)).

Although plaintiff may have a cognizable cause of action against Experian under the FCRA, at this juncture the bare-bone allegations contained in her complaint fail to state a claim for purposes of this initial review. As to the threshold question of the accuracy of the challenged information, Plaintiff states that Experian "report[ed] transactions on the plaintiff's consumer report that were not authorized to be furnished by the consumer." (Compl. at 7). Without more, the court cannot determine whether plaintiff is alleging that the information in her credit report was factually inaccurate, or if plaintiff's challenge is actually to the validity of a debt assessed by a third-party lender, which ultimately appeared on her credit report. If the latter, plaintiff's claim must fail because "inaccuracies that turn on legal disputes are not cognizable under the FCRA." *See Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023) (plaintiff failed to allege inaccuracy within the plain meaning of the FCRA because "[t]he bespoke attention and legal reasoning required to determine the post-bankruptcy validity of Mader's debt

Taylor v. Experian Information Solutions, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 618741

means that its status is not sufficiently objectively verifiable to render Mader's credit report 'inaccurate' under the FCRA.").

Even if the court were to interpret plaintiff's allegation to state that the challenged information in plaintiff's credit report was factually inaccurate, plaintiff has failed to set forth any allegations regarding the deficiencies in the procedures followed by Experian in assuring the accuracy of its reporting in order to state a claim under § 1681e(b). Because plaintiff "fail[s] to make any allegations regarding ... the procedures followed" by Experian, *Nguyen v. Ridgewood Sav. Bank*, No. 14-CV-1058, 2015 WL 2354308, at *11 (E.D.N.Y. May 15, 2015), her "[t]hreadbare recitals of the elements" do not state a plausible claim for relief under Section 1681e, *Iqbal*, 556 U.S. at 678.

Assuming, again, that plaintiff had sufficiently alleged that her credit information was not factually accurate, the court could also construe that plaintiff is alleging Experian violated the FCRA requirement to reasonably investigate her disputes under § 1681i. However, to state such an action, plaintiff must allege that Experian was either willful or negligent in its noncompliance with § 1681i. See *Perez v. Experian*, 2021 WL 4784280, at *11 ("The FCRA allows for a cause of action for willful and negligent noncompliance 'with any requirement imposed' by the FCRA.") (citing 15 U.S.C. §§ 1681n, 1681*o*). "In regard to a plaintiff's obligation to allege that a defendant's violation was willful or negligent, various courts have held that ... the plaintiff's complaint must allege specific facts as to the defendant's mental state" when the defendants committed the violation of the FCRA. *Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 397 (S.D.N.Y. 2014). Here, plaintiff has failed to allege any facts as to Experian's "mental state" when committing the alleged violations of the FCRA. As detailed above, plaintiff's reference to the terms "willful" and "negligence" in her statement of claims, without more, is insufficient. (Compl. at 6-7). See *Perez v. Experian*, 2021 WL 4784280, at *11; *Perl v. Am. Exp.*, 2012 WL 178333, at *2.

**\*6** Moreover, in the FCRA context, "the Supreme Court made clear that 'a bare procedural violation, divorced from any concrete harm' fails to satisfy the injury-in-fact requirement of Article III. *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016)). "In 2021, the Supreme Court, in another case involving the FCRA, again emphasized that the absence of any allegation of a concrete harm forecloses federal standing." *Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S.

413, 417-18 (2021)); see also *In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57, 62–63 (E.D.N.Y. 2021). At the pleading stage, "standing allegations need not be crafted with precise detail, nor must the plaintiff prove the allegations of his injury." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401-02 (2d Cir. 2015) (quoting *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003)). However, a plaintiff must allege facts "that affirmatively and plausibly suggest that [she] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

Here, plaintiff has alleged injury to the extent that she has an "inability to utilize the credit system ... due to reported information by" Experian. (Compl. at 4). There is no suggestion, however, that plaintiff has suffered any particularized injury, or that her information was actually disseminated to third parties. See *Zlotnick v. Equifax Information Services, LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) ("[W]hile plaintiff claims that his credit score was lowered as a result of the alleged improper reporting ... he fails to allege any particularized injury or actual dissemination to third-party creditors."); *Grauman v. Equifax Info. Servs., LLC*, 549 F. Supp. 3d 285, 291 (E.D.N.Y. 2021) ("Just as a plaintiff could not bring a defamation suit over a letter that merely sat in a desk drawer, these plaintiffs could not bring their FCRA suit over information that had never left the credit reporting agency's database.") (citation omitted).

Plaintiff's conclusory allegations of "emotional and financial distress" are further insufficient to allege a how Experian's purported violations caused plaintiff to suffer a "concrete" harm. See *Gross v. TransUnion, LLC*, 607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022) (Conclusory allegations in complaint were insufficient where "[t]he alleged harms are not expenses, costs, any specific lost credit opportunity, or specific emotional injuries[.]") (citing *Ashcroft v. Iqbal*, 556 U.S. at 678); see also *Maddox v. Bank of N.Y. Mellon Trust Co.*, 19 F.4th 58, 66 (2d Cir. 2021) ("A perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing."); *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) (plaintiff's injuries cannot create standing "[b]ecause bare allegations of confusion and anxiety do not qualify as injuries in fact"); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (stress and confusion - without accompanying physical manifestation - do not suffice for standing).

Taylor v. Experian Information Solutions, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 618741

Accordingly, for the reasons stated above, the court recommends dismissing plaintiff's claims for violations of §§ 1681e(b) and 1681i of the FRCA against Experian.

## V. State Law Claims

Section 1681h(e) of the FCRA provides that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, .... except as to false information furnished with malice or willful intent to injure such consumer." Otherwise stated, "[s]ection 1681h(e) preempts defamation [and other state-based] claims against CRAs unless the alleged false information is furnished with malice or willful intent to injure the plaintiff." *Thompson v. Equifax Info. Servs. LLC,* No. 20-CV-6101, 2022 WL 2467662, at *10 (E.D.N.Y. Feb. 24, 2022) (citing *Frydman v. Experian Info. Sols., Inc.,* No. 14-CV-9013, 2016 WL 11483839, at *17 (S.D.N.Y. Aug. 11, 2016), *report and recommendation adopted,* 2016 WL 5661596 (S.D.N.Y. Sept. 30, 2016) ("[Section 1681h(e)] essentially affords ... qualified immunity against the types of state law claims asserted by [plaintiff] unless he can establish that [defendants] acted 'with malice or willful intent to injure' him") (citations omitted)); *Ogbon v. Beneficial Credit Services, Inc.,* 10 Civ. 3760, 2013 WL 1430467, at *10 (S.D.N.Y. Apr. 8, 2013) ("Thus, defendants have qualified immunity against defamation actions, which can only be overcome where plaintiff shows that defendants acted with malice or willful intent.") (collecting cases).

**\*7** As previously discussed, plaintiff has failed to allege anything more than conclusory statements to suggest that Experian furnished any information with "malice" or "willful intent to injure" plaintiff. Accordingly, plaintiff's state law claims related to the contents of her credit report are preempted. Moreover, even if her claims were not preempted, her allegations lack the sufficient specificity required of such claims to put Experian on notice. *See, e.g.,Mitchell v. Experian Info. Sols., Inc.,* No. 22-CV-5883, 2023 WL 2990479, at *3 (E.D.N.Y. Apr. 18, 2023) ("In assessing whether a defamation claim has been plead with sufficient particularity, courts look to whether [the] complaint references the alleged defamatory statement, identifies who made the statement, when it was made, the context in which it was made, whether it was made orally or in writing and whether it was made to a third party.") (citation omitted). Accordingly, plaintiff's state law claims should be dismissed.

## VI. Opportunity to Amend

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the court is recommending dismissal with prejudice as to plaintiff's claims brought pursuant to the FDCPA. There is no plausible suggestion that defendant Experian was operating outside of its capacity as a credit reporting agency with respect to the conduct at issue, and the court does not find it plausible that plaintiff could amend to state a claim against Experian in any capacity as a "debt collector."

With respect to plaintiff's FCRA and state law claims, the court is recommending dismissal without prejudice, providing plaintiff the opportunity to amend her complaint. If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all of her claims in the new pleading and may not incorporate by reference any part of her original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [4] and it is

4    Although her IFP Application has been granted, plaintiff will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

**RECOMMENDED**, that plaintiff's claims pursuant to the Fair Debt Collection Practices Act be **DISMISSED WITH PREJUDICE**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITHOUT PREJUDICE** in all other respects, and it is

**RECOMMENDED,** that if the District Court adopts this recommendation, plaintiff be given forty-five (45) days to

Taylor v. Experian Information Solutions, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 618741

amend her complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERSEDE THE ORIGINAL**, and that plaintiff must include all remaining facts and causes of action in the amended complaint. No facts or claims from the original complaint may be incorporated by reference, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff does not elect to amend her complaint within the imposed deadline, the case be dismissed in its entirety, with prejudice, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review of the amended complaint and any orders relating to service on the defendants, and it is

 **\*8 ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail. [5]

[5]    The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.***Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 618741

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| 1. **Docket 5:24-CV-00188**<br>Taylor v. Experian Information Solutions, Inc. | — | N.D.N.Y. | Feb. 07, 2024 | Docket |

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (4)**

**Direct History (2)**

1.  Taylor v. Experian Information Solutions, Inc. 👓
    2024 WL 618741 , N.D.N.Y. , Feb. 14, 2024

    *Report and Recommendation Adopted by*

2.  Taylor v. Experian Information Solutions, Inc.
    2024 WL 986483 , N.D.N.Y. , Mar. 07, 2024

**Related References (2)**

3.  Taylor v. Experian
    2024 WL 2420542 , N.D.N.Y. , May 01, 2024

    *Report and Recommendation Adopted by*

4.  Taylor v. Experian
    2024 WL 2399917 , N.D.N.Y. , May 23, 2024

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 3148764
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Mark GAFT, Plaintiff,

v.

MITSUBISHI MOTOR CREDIT
OF AMERICA, et al., Defendants.

No. 07–CV–527 (NG)(LB).
|
Sept. 29, 2009.

West KeySummary

1    Res Judicata 🔑 Finance and banking

An alleged identity theft victim's claims
against credit reporting agencies under the Fair
Credit Reporting Act (FRCA) and Fair Debt
Collection Practices Act (FDCPA), for allegedly
misreporting his credit history, were not barred
by res judicata. Although the alleged victim's
claims concerned the same general subject
matter as a prior action, i.e., the improper
attribution of an extension credit stemming
from an identity theft, it was not clear that each fact
alleged by the alleged victim existed or could
have been sued upon at the time of the prior
action. Even if the debt in question existed and
was known to the alleged victim at the time of
the prior litigation, the current claim would not
be barred because the allegations alleged a new
misrepresentation that was not adjudicated by the
prior litigation.

12 Cases that cite this headnote

**Attorneys and Law Firms**

Mark Gaft, Brooklyn, NY, pro se.

Melissa A. Pena, Norris, McLaughlin & Marcus, PA, New
York, NY, for Mitsubishi Motor Credit.

Brian Olson, King & Spalding LLP, Atlanta, GA, Richard
Thomas Marooney, Jr., King & Spalding, New York, NY,
John/Jane Doe Employee(s) of Mitsubishi Motor Credit,
Equifax.

Timothy P. Creech, Kogan Trichon & Wertheimer P.C.,
Philadelphia, PA, for Transunion.

Allen G. Gibbs, Sandra D. Brown, Jones Day, New York, NY,
for Experian.

*OPINION AND ORDER*

GERSHON, District Judge.

**\*1** On February 2, 2007, plaintiff Mark Gaft filed a
complaint alleging that defendants Equifax Information
Services L.L.C. ("Equifax") and Mitsubishi Motor Credit
of America ("MMCA") had misreported plaintiff's credit
history in violation of the Fair Credit Reporting Act, 15
U.S.C. §§ 1681a–1681x, (the "FRCA"), and the Fair Debt
Collection Practices Act, 15 U.S.C. §§ 1592a–1592p (the
"FDCPA"). Plaintiff also alleged that defendants' actions
violated state common law doctrines. On June 28, 2007,
plaintiff filed an Amended Complaint adding similar claims
against defendants Experian Information Solutions, Inc.
("Experian") and Trans Union LLC ("Trans Union").

The instant lawsuit follows a prior action by plaintiff against
these defendants filed in this court on April 21, 2005,
*Gaft v. Equifax, et al.,* 05–cv–1941 (*"Gaft I"*). Following
settlements with certain defendants, *Gaft I* was dismissed with
prejudice.

All defendants have filed motions to dispose of this litigation.

BACKGROUND

**Gaft I**

In *Gaft I,* plaintiff alleged that numerous defendants,
including defendants in this action, who were engaged in
"consumer credit transactions" or who were "credit reporting
agencies," wrongly reported that plaintiff had been extended
accounts of credit and owed certain debts when, in fact,
plaintiff had never applied for these accounts. Plaintiff alleged
that the improper reporting stemmed from identity theft.
Specifically, plaintiff alleged that MMCA wrongly informed

defendant credit reporting agencies that MMCA had made ten loans to plaintiff. Plaintiff alleged that the credit reporting agencies improperly published the ten incorrect MMCA accounts, as part of plaintiff's credit history, as debts owed. Based on these allegations, plaintiff sought damages for common law negligence and violations of the FCRA.

On October 28, 2005, plaintiff amended his original *Gaft I* complaint, intentionally omitting claims against MMCA and later informing the court that the action had been dismissed as to MMCA. [1] On March 6, 2006, plaintiff executed settlement agreements with defendants Equifax and Trans Union dismissing those defendants from *Gaft I.* Pursuant to those settlements, plaintiff received consideration in exchange for (i) plaintiff's acknowledgement that a version of his credit report, in the form attached as an exhibit to the stipulated settlement, was "accurate and correct"; and (ii) releasing defendants Equifax and Trans Union from claims or causes of action which were raised, or which could have been raised in that action.

[1]       Plaintiff did not specify whether the dismissal of MMCA was with or without prejudice and no stipulation of dismissal was ever filed with the court.

On March 27, 2006, following the settlement agreements, the court dismissed, with prejudice, the entirety of *Gaft I,* with leave to reopen the action within 60 days. [2] On July 31, 2006, more than 60 days later, plaintiff moved, *pro se,* to reopen the litigation as to non-settling parties. The court denied the request as untimely.

[2]       It appears that Experian, named as a defendant in *Gaft I,* never appeared in that action, but was dismissed pursuant to the court's March 27, 2006 Order dismissing "the remaining defendants."

## Gaft II

Plaintiff now brings the above-captioned action, *pro se,* against MMCA, Equifax, Trans Union and Experian alleging that, sometime during 2007, following the dismissal of the prior action, plaintiff discovered an eleventh inaccurate debt (the "Eleventh Account"), purportedly owed to Mitsubishi, which was improperly reported by Equifax, Trans Union and Experian. Plaintiff alleges that he has no knowledge of this debt.

**\*2** Plaintiff contends that, following his discovery of the Eleventh Account on a credit report published by Equifax, he "officially disputed the accuracy of his Credit Report with Equifax," but that Equifax "failed or otherwise refused to provide copies of any validation to the plaintiff as demanded in plaintiff [sic] letter of request pursuant to the [Fair Credit Reporting] Act." [3] Plaintiff alleges that he later discovered the Eleventh Account on credit reports published by Trans Union and Experian and he amended his complaint to add these parties as defendants. Plaintiff contends that the false reporting was a product of the defendants' negligence, gross negligence and disregard of their statutory obligations.

[3]       Plaintiff does not allege that he disputed the Eleventh Account with Trans Union or Experian.

Plaintiff also avers, without detail, that he is the target of an "internal fraud" perpetrated by unknown persons employed by MMCA who have access to plaintiff's credit information.

Finally, plaintiff contends that defendants' actions with respect to the inaccuracies alleged in *Gaft I* and the instant action "caused [him] to suffer 11 or more acts of fraud committed against him."

Based on these allegations, plaintiff claims that each defendant (i) failed to meet its duties, under the FCRA, to investigate plaintiff's written dispute and correct erroneous information; (ii) engaged in a pattern of "willful noncompliance" with the duties set forth under the FCRA by repeatedly reporting 11 erroneous credit events; (iii) misrepresented debts owed by plaintiff in violation of the FDCPA; (iv) made false statements concerning erroneous debts owed amounting to "Slander of Title"; (v) committed fraud by "accepting a fraudulent credit application" causing plaintiff to be named "as the debtor of the defendant Mitsubishi on 11 or more separate occasions"; (vi) committed negligence *per se* by violating the FCRA; and (vii) acted with gross negligence by violating the FCRA. Plaintiff seeks both a money judgment and injunctive relief against defendants.

Defendants Equifax, Trans Union and Experian each move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendant MMCA moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the sake of judicial economy these motions will be addressed together.

Gaft v. Mitsubishi Motor Credit of America, Not Reported in F.Supp.2d (2009)

2009 WL 3148764

## DISCUSSION

### Legal Standards

*Motions for Judgment on the Pleadings*

The motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure by defendants Experian, Equifax and Trans Union are evaluated under the same standard as a motion to dismiss under Rule 12(b)(6). *See Nicholas v. Goord,* 430 F.3d 652, 658 n. 8 (2d. Cir.2005). On a motion to dismiss, the allegations in the complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998). The court may properly consider any statements or documents which have been incorporated by reference into a complaint, although mere discussion or limited quotation of a document does not constitute incorporation. *See Holmes v. Poskanzer,* No. 08–CV–14750, 2009 WL 2171326, at *1 (2d Cir. July 21, 2009); *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989). However, even "where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders it integral to the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

**\*3** When considering a motion to dismiss, the court "view[s] all reasonable inferences that can be drawn from [the] allegations and [appropriate] documents in the light most favorable to the plaintiff ." *See Dangler v. N.Y.C. Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999) (internal quotations and citations omitted). While a complaint need not include "detailed factual allegations" to survive a motion for judgment on the pleadings, it cannot be a conclusory "recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* ——— U.S. ———, ———, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Rather, a plaintiff must assert enough facts to state a claim to relief that is "plausible" on its face, rather than merely possible. *Id.* at 1950. A document filed *pro se* must be "liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers ." *Boykin v. Keycorp,* 521 F.3d 202, 214 (2d Cir.2008) (internal quotation marks omitted).

*MMCA's Motion for Summary Judgment*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine" issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). MMCA, as the moving party, bears the burden of showing that it is entitled to summary judgment. *Huminski v. Corsones,* 386 F.3d 116, 132 (2d Cir.2004). "When the burden of proof at trial would fall on the nonmoving party, it is ordinarily sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhauser Co.,* 536 F.3d 140, 145 (2d Cir.2008). The burden then shifts to the nonmovant to put forth admissible evidence sufficient to create a genuine issue of material fact for trial. *Id.* A court must draw all "justifiable inferences" in the nonmovant's favor, and construe all of the facts in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In the case of Gaft, who is *pro se,* the court is further obliged to "read his supporting papers liberally, and ... [to] interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Even a *pro se* party, however, "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." *Auguste v. New York Presbyterian Medical Center,* 593 F.Supp.2d 659, 663 (S.D.N.Y.2009) (quoting *Morris v. Lindau,* 196 F.3d 102, 109 (2d Cir.1999)).

### MMCA's 56.1 Statement

**\*4** Local Rule 56.1 provides that a motion for summary judgment is to be accompanied by a "short, concise statement ... of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). The party opposing the motion is to provide a responsive statement of "additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* at (b) (emphasis omitted). Each statement by the movant or the opponent "must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." *Id.* at (d). To the extent a Rule 56.1 statement cites to an affidavit, the affidavit must be a sworn statement of fact based on personal knowledge "that would be admissible in evidence at trial." *Cameron v.*

*Coach Apparel Store,* No. 07–CV–3991, 2009 WL 536068, at *3 (S.D.N.Y. Mar.3, 2009). A court may disregard "portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. Am. Cyanamid Co.,* 172 F.3d 192, 198 (2d Cir.1999).

Plaintiff, who appears *pro se,* did not submit a Rule 56.1 Statement in opposition to MMCA's motion. Although ordinarily a party's failure to oppose an adverse party's Rule 56.1 statement is grounds for admitting all proposed facts in that statement, the court has discretion to overlook failures to conform to the Local Rules, including Rule 56.1, especially where the party is *pro se. See, e.g., Butler v. Potter,* No. 06–CV–3828, 2009 WL 804722, at *1 n. 1 (E.D.N.Y. Mar. 26, 2009). Therefore, the court will not deem MMCA's Rule 56.1 Statement admitted in its entirety; rather, the facts as set forth by MMCA will be deemed admitted only where a statement of fact in MMCA's Rule 56.1 Statement is supported by citations to admissible evidence. *See Alfano v. NGHT,* 623 F.Supp.2d 355, 362 (E.D.N.Y.2009).

Defendant MMCA states in its Rule 56.1 Statement that plaintiff, at an August 27, 2007, conference before the court, produced a "report" listing the false account which serves as the basis of his claims and "it was determined that the account [in the report] was reported prior to the settlement and dismissal of the First Action, and that Gaft knew it was reported." To support this statement, MMCA cites to the sworn affidavit of its counsel, which states,

> A case management conference was conducted in this matter on August 27, 2007.... One question was what was the "new" account that was reported for the first time in 2007. Gaft produced what he claimed was that new report. However, upon examination by counsel, it was determined that the account was reported prior to the settlement and dismissal of the First Action, and that Gaft knew it was reported.

(Affidavit of Kathleen Cavanaugh at ¶ 14.) Notably, in support of its motion for summary judgment, MMCA does not provide a transcript of the case management conference,

offer the report which was presented by plaintiff or specify "who" made the determination that the account was reported prior to the settlement. Without more, these averments by MMCA concerning the content of the "report," and determinations about the "report," are inadmissible evidence barred as hearsay and by the best evidence rule.[4] *See Sarno v. Douglas Elliman Gibbons & Ives, Inc.,* 183 F.3d 155, 160 (2d Cir.1999) (hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit); *New York ex rel. Spitzer v. St. Francis Hosp .,* 94 F.Supp.2d 423, 428 (S.D.N.Y.2000) (disregarding, on summary judgment, statements concerning documents because the documents "themselves are the best evidence of their contents"). Therefore, for the purposes of determining MMCA's motion, this portion of the 56.1 statement will be disregarded by the court.

4      MMCA has made no showing pursuant to Rule 1004 of the Federal Rules of Evidence that the report in question is unavailable.

### Res Judicata

**\*5** Defendants Equifax and Trans Union argue that the Amended Complaint is barred by the doctrine of *res judicata* because it involves claims arising out of the same transactions which were litigated and settled pursuant to the March 6, 2006, settlements in *Gaft I.* Similarly, defendants Experian and MMCA argue that each was voluntarily dismissed from *Gaft I* and, therefore, plaintiff is barred from bringing claims which could have been raised in the prior action.

Under the doctrine of *res judicata,* a "final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). "To prove that a claim is precluded under this doctrine, a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir.2001).

The dismissal with prejudice in *Gaft I,* which arose out of settlement agreements, can "operate[ ] as a final judgment for res judicata purposes." *Marvel Characters v. Simon,* 310 F.3d 280, 286–87 (2d Cir.2002). Further, it cannot be disputed that

defendants Experian, Equifax and Trans Union were parties in *Gaft I.* [5] The only question with respect to these defendants is whether the claims asserted here were, or could have been, raised in *Gaft I.* Of course, claims which are identical to those discontinued with prejudice are barred. *See Boguslavsky v. So. Richmond Securities, Inc.,* 225 F.3d 127, 130 (2d Cir.2000). However, *res judicata* does not bar later "claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Marvel Characters,* 310 F.3d at 287 (internal quotations omitted).

[5]     Defendant MMCA is discussed *infra.*

To determine whether a claim that was not raised in the prior action could have been raised there "depends *in part* on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Id.* (internal quotations omitted) (emphasis in original). A court should also consider "whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action."*Sure–Snap Corp. v. State Street Bank & Trust Co.,* 948 F.2d 869, 874 (2d Cir.1991).

Although plaintiff's claims here concern the same general subject matter as in the prior action, *i.e.,* the improper attribution of an extension credit, stemming from an identity theft, to plaintiff, it is not clear that each fact alleged by plaintiff existed or could have been sued upon at the time of *Gaft I.* Specifically, the Amended Complaint alleges that, following the settlement of *Gaft I,* MMCA reported a *"new debt",* "an 11th ... lease or loan, which the plaintiff once again had no knowledge of." (Am. Compl. ¶ 11 (emphasis added).) In addition, plaintiff states that this "new debt", the Eleventh Account, was "discovered" some time in 2007, which post-dates the settlement and dismissal of *Gaft I.* Accepting these allegations as true, with all reasonable inferences to the plaintiff, the court cannot conclude, based on the pleadings, that the claims here existed at the time of *Gaft I* or are barred by the settlement agreements in that action.

**\*6** Therefore, to the extent plaintiff's claims arose after the dismissal of *Gaft I,* and are not limited by the terms of the settlement agreements in *Gaft I,* those claims are not barred by *res judicata.*

Defendants Equifax and Trans Union argue that the Eleventh Account is "MMCA account number 8500500", that plaintiff previously verified the accuracy of this account as reported by Equifax and Trans Union and that claims based on this account are barred by the March 6, 2006, settlement agreements. While the settlement agreements have been incorporated by reference into the Amended Complaint and are appropriately considered here, *see Poskanzer,* 2009 WL 2171326, at \*1, the court rejects defendants Equifax's and Trans Union's argument. Neither the Amended Complaint nor the settlement agreements identify the disputed account as MMCA account 8500500, and Equifax and Trans Union fail to explain how they identified the Eleventh Account as MMCA account 8500500. [6] In any event, even assuming that the Eleventh Account is MMCA account 8500500, and was subject to the settlement agreements, to the extent plaintiff's allegations concern a *new* misrepresentation of that account, different from what he verified as "accurate and correct," he is not barred by *res judicata* from bringing suit.

[6]     Although plaintiff states, in his opposition papers, that he "concurs" that an erroneously reported outstanding debt "was part of the original settlement agreement," it is unclear whether he is identifying the Eleventh Account as part of the settlement or, alternatively, agreeing that the prior settlements concerned some erroneously reported debts. Further, plaintiff's statement does not preclude the claim that defendants have breached the settlement agreement by publishing0 a new misrepresentation concerning an account that was previously verified as accurate.

Defendant Experian also argues that *res judicata* bars this suit. Experian claims that plaintiff requested, from Experian, a credit report dated May 1, 2007, and argues that this credit report proves that the Eleventh Account existed at the time of *Gaft I* and that the claims raised here could have been raised in the prior action. However, plaintiff's pleadings make no reference to, and do not indicate reliance on, the May 1, 2007, Experian report. Therefore, this document is extrinsic to the pleadings and not appropriately considered on a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Finally, defendant MMCA also argues that *res judicata* bars claims against it by plaintiff. This argument is without merit. First, MMCA, cannot avail itself of the court's Order, dated March 27, 2006, dismissing *Gaft I,* with prejudice, as to the "remaining defendants", because MMCA had not been included in the *Gaft I* amended complaint and was no longer a

2009 WL 3148764

party to that action as of the date of the court's Order. Second, although MMCA was voluntarily dismissed by plaintiff from *Gaft I,* correspondence, dated November 14, 2005, informing the court of plaintiff's dismissal of MMCA does not state whether the dismissal was with or without prejudice and no stipulation of dismissal pursuant to Rule 41(a)(1) of the Federal Rules of Civil procedure was ever filed with, or endorsed by, the court. "In light of Rule 41(a)(2)'s statement that voluntary dismissal by order of the court is without prejudice unless the court orders otherwise, the court assumes that [plaintiff] has agreed only to voluntary dismissal without prejudice." *Pouliot v. Paul Arpin Van Lines, Inc.,* 235 F.R.D. 537, 544 (D.Conn.2006); *see also White v. City of New York,* No 85–CV–8127, 1986 WL 6164, at *1 (S.D.N.Y. May 27, 1986). Where a dismissal is without prejudice, *res judicata* does not apply. *See Camarano v. Irvin,* 98 F.3d 44, 47 (2d Cir.1996); *Elfenbein v. Gulf & Western Industries, Inc.,* 590 F.2d 445, 449 (2d Cir.1978).

 **\*7** It is worth noting, however, that plaintiff is barred, as a matter of law, from seeking damages from Equifax and Trans Union based on allegations that defendants are publishing credit information which plaintiff previously verified as "accurate and correct" pursuant to the March 6, 2006, settlements. Further, plaintiff is similarly barred from seeking damages, in this action, from defendants Equifax, Trans Union and Experian based on allegations which could have been raised in, but were omitted from, *Gaft I.*

### Merits

In addition to arguing that plaintiff's claims are barred by principles of preclusion, defendants also argue that the claims should be dismissed on the merits. In making this argument, defendants rely upon attached credit reports which, as discussed above, cannot be considered incorporated into the complaint or integral to it because it cannot be determined on the existing record whether the attached reports are the reports upon which the plaintiff is relying. Indeed, with respect to the report attached by Equifax, the contents of the report are completely redacted. But, even where the reports attached by the other defendants include a Mitsubishi debt, the court cannot assume that the debt listed is the one plaintiff is suing over. Moreover, as the plaintiff in opposition to the motions argues, either the reported debt he complains of is "new," that is, could not have been the basis for a claim in the prior litigation or, if it could have been included, and was included, in the settlement agreement, as defendants

argue, then its appearance after the conclusion of the prior litigation could be a breach of the settlement agreement. The point is that, on the pleadings, these factual issues cannot be determined.

Nonetheless, most of the claims must be dismissed for legal insufficiency, as discussed below.

### Violations of the Fair Credit Reporting Act

The FCRA mandates certain conduct pertaining to the reporting of accurate consumer credit information and creates a private cause of action for willful non-compliance, *see* 15 U.S.C. § 1681n, and negligent non-compliance, *see* 15 U.S.C. § 1681*o,* with the duties under the statute. *See Casella v. Equifax Credit Info. Svcs.,* 56 F.3d 469, 473 (2d Cir.1995). Plaintiff alleges that all defendants failed to comply, either willfully or negligently, with the duties imposed by the FCRA.

*Furnishers of Credit Information*

MMCA is a "furnisher of information to credit reporting agencies" as defined by the FCRA and its conduct is governed by Section 1681s of that Act. Section 1681s–2(a) relates to MMCA's duty to report information and the ongoing duty to correct inaccurate information. Plaintiff, however, cannot pursue a claim under Section 1681s–2(a) of the FCRA because the plain language of the statute limits enforcement of this subsection to government agencies and officials. *See* 15 U.S.C. § 1681s2–(a); *Ryder v. Wash. Mut. Bank, FA,* 371 F.Supp.2d 152, 154 (D.Conn.2005).

 **\*8** A private right of action may be available to plaintiff against MMCA under Section 1681s–2(b), which provides:

> After receiving notice pursuant to section 611(a)(2) [, 15 U.S.C. § 1681i(a)(2),] of a dispute with regard to the completeness or accuracy of any information provided by a person [7] to a consumer reporting agency, the person shall—(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer agency ...; (C) report the

results of the investigation to the consumer agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies ....

7    "The term 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a.

15 U.S.C. § 1681s–2(b)(1). Section 1681i(a)(2) requires a consumer reporting agency which receives notice of a dispute to provide notification to the provider of the information within five days of receipt. 15 U.S.C. § 1681i(a)(2)(A). Thus, according to the statute, the duties of MMCA are triggered only by notice from the consumer reporting agency and are limited to a duty to investigate the accuracy of the information previously provided. *See Prakash v. Homecomings Financial,* No. 05–CV–2895, 2006 WL 2570900, at *2–*3 (E.D.N.Y. Sept. 5, 2006). Here, plaintiff has not alleged that MMCA failed to complete an investigation with respect to the Eleventh Account—the duty imposed by statute. [8] Therefore, plaintiff's FRCA claims against MMCA must fail. *See Willey v. J.P. Morgan Chase, N.A.,* No. 09–CV–1397, 2009 WL 1938987, at *4 (S.D.N.Y. July 7, 2009) (finding a failure to state a claim where plaintiff did not set forth "factual allegations that describe any insufficiency" in defendant's procedures).

8    Although plaintiff alleges that MMCA failed to conduct an investigation concerning the "previous Identity Theft or fraud" which was "brought before the Court," MMCA's duty under the FCRA is limited to an investigation of the propriety of the Eleventh Account as reported to Equifax. In any event, plaintiff has offered no evidence, beyond reliance on his pleadings, of MMCA's failure to investigate any complaints by plaintiff, as required by Rule 56 of the Federal Rules of Civil Procedure.

*Credit Reporting Agencies*
The FCRA mandates that consumer reporting agencies meet multiple duties with respect to consumers and their credit information, including the duty to perform investigations

of disputed information, 15 U.S.C. § 1681i; the duty to follow reasonable procedures to ensure the accuracy of credit information, 15 U.S.C. § 1681e; and the duty to follow proper procedures in disposing of credit information, 15 U.S.C. § 1681w.

Plaintiff alleges that Experian, Trans Union and Equifax violated the FCRA by failing to "perform a mandatory investigation into plaintiff's written dispute concerning ... erroneous debt." Following a dispute of credit information by a consumer, Section 1681i of the FCRA requires that a consumer reporting agency "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information" within 30 days of receipt of notice of the dispute. 15 U.S.C. § 1681i(1)(A). As stated above, the agency is also required to "provide notification of the dispute to any person who provided any item of information in dispute." *Id.* at § 1681i(2)(A). Then, within five days of completion of the reinvestigation, the agency must "provide written notice ... of the results of a reinvestigation" to the consumer. [9] *Id.* at § 1681i(6)(A). In addition, upon request, an agency is required to provide a description of the procedure used to determine the accuracy and completeness of the credit information. *Id.* § 1681i(7).

9    Specifically, a consumer reporting agency is required to provide to the consumer,
    (i) a statement that the reinvestigation is completed; (ii) a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation; ... (iv) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and (v) a notice that the consumer has the right to request under subsection (d) of this section that the consumer reporting agency furnish notifications under that subsection.
    15 U.S.C. § 16811(6)(B).

**\*9** Plaintiff's claims that defendants have failed to investigate are insufficient. As an initial matter, plaintiff failed to allege that he informed either Experian or Trans Union of any disputed item. Therefore, those defendants had no duty to investigate under the FCRA. *See Caltabiano v. BSB Bank & Trust Co.,* 387 F.Supp.2d 135, 140 (E.D.N.Y.2005).

Gaft v. Mitsubishi Motor Credit of America, Not Reported in F.Supp.2d (2009)

2009 WL 3148764

Plaintiff does allege that he "disputed the accuracy of his Credit Report with Equifax"; however, plaintiff also states that Equifax responded to plaintiff that "Equifax had investigated the matter and was certain that the debt was [ ] that of the plaintiff." Plaintiff fails to allege that Equifax failed to provide any of the information required by Section 1681i(6)(B). *See supra* note 8. Further, plaintiff does not allege that Equifax failed to comply with its statutory duty to inform defendant MMCA of the disputed item. For these reasons, plaintiff's claim concerning Equifax's failure to investigate is deficient.

The FCRA, under Section 1681 e, also mandates that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy" of a credit report. *See* 15 U.S.C. § 1681 e(b). A Section 1681 e claim requires plaintiff to "show that (1) the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury." *Gorman v. Experian Info. Solutions, Inc .,* No. 07–CV–1846, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 18, 2008).

Here, the Amended Complaint alleges that defendant consumer reporting agencies reported inaccurate information causing damage to plaintiff's "reputation, Credit worthiness, and personal health." (Am.Compl.¶ 23.) However, an inaccurate entry of credit information, in and of itself, is not a violation of the FCRA; rather, to state a claim under Section 1681(b), plaintiff must allege that the consumer reporting agencies failed, through negligence or intention, to follow reasonable procedures to ensure the accuracy of the information. *See Gorman,* 2008 WL 4934047, at *4. Plaintiff's Amended Complaint is devoid of any allegations concerning the reasonableness of the procedures used by the defendant consumer reporting agencies. Therefore, plaintiff's claim that defendants failed to comply with their duties under the FCRA, to the extent that claim refers to any duty to follow reasonable procedures to ensure the accuracy of information, must fail. *See Willey,* 2009 WL 1938987, at *4.

Finally, plaintiff makes no mention of, nor does he allege, facts related to any defendants' duty to properly dispose of consumer credit information.

For the reasons stated above, plaintiff has failed to state a claim, as a matter of law, against any defendant for failure to comply with the duties mandated by the FCRA.

### Violations of the Fair Debt Collection Practices Act

**\*10**  Plaintiff also alleges that all defendants have violated the FDCPA which was enacted in order to eliminate abusive practices in the collection of consumer debts. Specifically, plaintiff alleges that defendants violated section 807(2)(A) of the FDCPA by misrepresenting the character, amount and legal status of the debt owed by plaintiff. Section 807(2)(A) prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means *in connection with the collection of a debt."* 15 U.S.C. § 1692e (emphasis added). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* at § 1692a. However, the statute specifically exempts from the definition of "debt collector" any creditor attempting to collect debts it is owed. *Id.*

Plaintiff's allegations under the FDCPA are insufficient for two reasons: first, no defendant, as alleged, is a "debt collector" within the meaning of the FDCPA. Second, plaintiff has not alleged that defendants have engaged in any attempt to collect a debt from plaintiff. Therefore, plaintiff's claims under the FDCPA are dismissed. *See Fashakin v. Nextel Comm'ns,* No. 05–CV–3080, 2006 WL 1875341, at *7 (E.D.N.Y. July 5, 2006).

### State Law Claims

In addition to the FCRA and FDCPA claims, plaintiff also brings four state law claims: (i) slander of title; (ii) fraud; (iii) gross negligence and (iv) negligence *per se.*

#### Limitation on Liability/Preemption

As an initial matter, the court notes that two sections of the FCRA potentially preempt plaintiff's claims. First, Section 1681h(e) provides:

Limitation on liability. Except as provided in sections 1681n and 1681o, no consumer may bring any action for proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency ... or any person who furnishes information to a consumer *except as to false information furnished with malice or willful intent to injure such customer.*

15 U.S.C. §§ 1681h(e) (emphasis added). In addition, Section 1681(b)(1)(F) of the FCRA, which applies only to furnishers of credit information, provides:

No requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section 1681s–2, relating to responsibilities or persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply [to specific sections of the Massachusetts Annotated Laws and the California Civil Code.]

15 U.S.C. § 1681t(b)(1)(F).

Of these two provisions, only Section 1681h(e) might apply to plaintiff's state law claims against the consumer reporting agency defendants. That section "does not preempt every possible action, as it allows plaintiffs to maintain tort actions, including defamation and negligence claims, but requires plaintiffs to prove malice or willful intent for such claims." *Kane v. Guaranty Residential Lending, Inc.,* No. 04–CV–4847, 2005 WL 1153623, at *6 (E.D.N.Y. May 16, 2005).

**\*11** By contrast, both Section 1681h(e) and Section 1681t(b)(1)(F) may apply to claims against MMCA. Because these provisions appear to be contradictory, courts have devised multiple approaches in order to reconcile them. *See Prakash,*

2006 WL 2570900, at *5 ("Though § 1681t(b)(1)(F) appears to preempt all state law claims, Congress did not withdraw § 1681h(e)—which preempts certain state law claims, but impliedly permits others—when it added § 1681t(b)(1)(F) to the code in 1996."); *see also Kane,* 2005 WL 1153623, at *5–*11 (collecting cases). As discussed below, with respect to the claims against MMCA, it is unnecessary for the court to adopt an approach to resolve the tension between these preemption provisions.

*Slander of Title*

Plaintiff alleges that each defendant made "false and malicious statements" amounting to slander of title. Even assuming that this claim is not pre-empted by the FCRA, plaintiff's pleadings are insufficient.

In New York, to state a claim for slander of title a plaintiff must allege that (i) defendant made a "communication falsely casting doubt on the validity of [the] complainant's title"; (ii) which was "reasonably calculated to cause harm; and (iii) "result[ed] in special damages." *39 College Point Corp. v. Transpac Capital Corp.,* 27 A.D.3d 454, 455, 810 N.Y.S.2d 520 (N.Y., 2d Dept., 2006). However, a plaintiff cannot make a claim of slander of title where the plaintiff does not have title to the property about which a communication was made. *See White & Baxter, Inc. v. Jade Square and Tower, Ltd.,* 62 A.D.2d 963, 963, 404 N.Y.S.2d 105 (N.Y., 1st Dept., 1978). The essence of plaintiff's claims are that he has been misattributed an extension of credit, and the associated debt, for something that he never applied for or owned. Because plaintiff makes no allegations that any defendant has disparaged a title that plaintiff actually holds, the slander of title claim must fail as to all defendants.

*Fraud*

Plaintiff alleges that each defendant committed an act of fraud by "acting in concert with one another" and "accepting a fraudulent credit application" which resulted in plaintiff being improperly named "on 11 or more separate occasions as the true debtor for a loan or lease from the defending creditor Mitsubishi." Plaintiff alleges, "on information and belief", that this fraud stemmed from "unknown unidentified employees or agents" of MMCA who have improperly gathered, and misused, plaintiff's credit information. Even assuming that this claim is not pre-empted by the FCRA, plaintiff's pleadings are insufficient.

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 42 of 143
Gaft v. Mitsubishi Motor Credit of America, Not Reported in F.Supp.2d (2009)
2009 WL 3148764

In New York, a claim of fraud requires plaintiff to plead a material false misrepresentation or omission of an existing fact, which defendants made with knowledge of its falsity and intent to defraud, and which plaintiff relies upon to his detriment. *Guilbert v. Gardner,* 480 F.3d 140, 147 (2d Cir.2007). Fraud claims under New York common law are also subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See Steinberg v. Sherman,* No. 07–CV–1001, 2008 WL 2156726, at *5 (S.D.N.Y. May 8, 2008). "The pleadings must adequately specify the statements that were allegedly false or misleading, provide particulars as to the alleged falsity of the statements, state the time and place the statements were made, and identify [of] the persons who made them." *Hunt v. Enzo Biochem,* 530 F.Supp.2d 580, 593 (S.D.N.Y.2008).

**\*12** Here plaintiff's fraud pleading is insufficient. First, plaintiff has failed to plead any reliance on the purportedly false statement of the defendants. Second, plaintiff has failed to state, with particularity, the purportedly false statement (*i.e.,* the Eleventh Account), for example, the account number and any details related to that account. For these reasons, plaintiff's common law fraud claim is dismissed as to all defendants.

*Negligence Actions*

Plaintiff alleges two claims based in negligence; specifically, that each defendant's failure to comply with "a manifest duty imposed upon them by [the FCRA]" constituted (i) "gross negligence", and (ii) "negligence *per se."* As stated above, a negligence action stemming from the reporting of consumer credit information is limited by Section 1681(e) of the FRCA, which requires that the plaintiff allege that defendants published false information "with malice or willful intent to injure" plaintiff. *See*15 U.S.C. § 1681h(e). "Malice," in the context of the FRCA, holds the same meaning as it does in a libel action, in other words, "the speaker knew [the report] was false or acted with reckless disregard for its truth or falsity." *George v. Equifax Mortg. Services,* No. 06–CV–971, 2008 WL 4425299, at *9 (E.D.N.Y. Sept. 30, 2008). "Willful," in the context of the FRCA, "require[s] a showing that the agency knowingly and intentionally committed an act in conscious disregard of the rights of others." *Id.* (internal citations omitted).

Therefore, here, plaintiff's claims "gross negligence"[10] and "negligence *per se"* [11] require plaintiff to allege facts which, if true, demonstrate, with plausibility, rather than the mere

possibility, that defendants knew the Eleventh Account to be false, or that the defendants acted with conscious or reckless disregard for its falsity. *See Marekh v. Equifax, et al.,* No. 00–CV6246, 2001 WL 65602, at *1 (2d Cir. Jan.25, 2001); *Whelan v. Trans Union Credit Reporting Agency,* 862 F.Supp. 824, 834 (E.D.N.Y.1994).

10    In New York, gross negligence "is conduct that evinces a reckless disregard for the rights of others and smacks of intentional wrongdoing." *Sutton Park Development Corp. Trading Co. v. Guerin & Guerin Agency,* 297 A.D.2d 430, 432, 745 N.Y.S.2d 622 (N.Y., 3rd Dept., 2002).

11    In New York, "negligence *per se"* requires that the plaintiff establish "(1) that he or she is among the class of people for whose particular benefit a statute has been enacted; (2) that a private right of action would promote the legislative purpose behind the statute; and (3) that creation of the right would be consistent with the overall legislative scheme." *Fagan v. AmerisourceBergen Corp.,* 356 F.Supp.2d 198, 214 (E.D.N.Y.2004). Under this theory, if a defendant violates a statute it is *per se* negligence and then the plaintiff only need show that the violation of the statute proximately caused injury to the plaintiff. *See German by German v. Fed. Home Loan Mortg. Corp.,* 896 F.Supp. 1385, 1396 (S.D.N.Y.1995). However, this standard is inconsistent with the limitation imposed by Section 1681h(e) requiring a demonstration of willful or malicious intent to injure the plaintiff.

*Consumer Reporting Agencies*

A reading of the Amended Complaint, with all reasonable inferences in favor of the *pro se* plaintiff, leads the court to conclude that plaintiff may be alleging that, although each credit reporting agency defendant knew plaintiff was the victim of identity theft in 2006 resulting in false items appearing on plaintiff's credit report, which was followed by a litigation and settlement, Mitsubishi acted with "gross negligence," in 2007, by reporting a new false item—the Eleventh Account—to Equifax and then, subsequent to the filing of the original Complaint in this action, again reporting that account to Experian and Trans Union. (*See* Am. Compl. ¶ 22.) The credit reporting agencies then allegedly acted with "gross negligence" by incorporating this new, false item into their credit reports.

2009 WL 3148764

Plaintiff has alleged facts which, if true, could show that each of the credit reporting agencies acted with reckless disregard for the reporting of false information on plaintiff's credit reports.

**\*13** Therefore, with respect to defendants Trans Union, Equifax and Experian, to the extent plaintiff is alleging that defendants acted with malice or reckless disregard for the truth of the Eleventh Account because defendants were on notice of a prior identity theft, plaintiff has stated a claim for gross negligence as required by Section 1681h(e) of the FRCA.

*Furnishers of Credit Information*

Unlike the credit reporting agency defendants, which have moved for judgments on the pleadings, MMCA has moved for summary judgment. As discussed above, if the nonmoving party will bear the burden of proof at trial, but there is an absence of evidence in the record as to an essential element of his claim, summary judgment is appropriate. *See Shah v. Kuwait Airways Corp.,* No. 08–CV–7371, 2009 WL 2877604, at \*2 (S.D.N.Y. Sep.9, 2009) (Lynch, J.) Here, MMCA argues that there is no evidence in the record creating an issue of fact as to whether plaintiff suffered damages proximately caused by MMCA. Indeed, Gaft has not identified any evidence, beyond the pleadings, whether through affidavits, documents or deposition testimony, that the law would regard as damages caused by MMCA through reckless or conscious disregard, or malice, concerning the falsity of the Eleventh Account. Therefore, even assuming that the negligence claims against MMCA are not preempted, summary judgment is appropriate.

### Conclusion

For the foregoing reasons, each of plaintiff's federal claims under the Fair Credit Reporting Act and the Fair Debt Collecting Practices Act are dismissed. In addition, plaintiff's state law claims for fraud and slander of title are dismissed. Defendants Experian's, Equifax's and Trans Union's motions to dismiss plaintiff's negligence claims are denied. Defendant MMCA's motion for summary judgment against plaintiff's negligence claims is granted.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 3148764

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

## Filings (6)

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Defendant Equifax Information Services LLC's Answer and Affirmative Defenses to Plaintiff's Amended Complaint** <br> Mark GAFT, Plaintiff, v. MITSUBISHI MOTOR CREDIT OF, America, Equifax; Trans Union; and Experian, Defendants. <br> 2007 WL 4770827 | PDF | E.D.N.Y. | Aug. 16, 2007 | Pleading |
| **2. Answer, and Affirmative Defenses** <br> Mark GAFT, Plaintiff, v. MITSUBISHI MOTORS CREDIT OF AMERICA, INC., Together with Their Employees & Agents; Equifax, Together with Their Employees & Agents; Trans Union, Together with Their Employees & Agents; Experian, Together with Their Employees & Agents, Defendants. <br> 2007 WL 4771052 | PDF | E.D.N.Y. | Aug. 16, 2007 | Pleading |
| **3. Answer Of Defendant, Trans Union Llc To Amended Complaint** <br> Mark GAFT, Plaintiff, v. MITSUBISHI MOTOR CREDIT OF AMERICA; Equifax; Trans Union; and Experian, Defendants. <br> 2007 WL 4771053 | PDF | E.D.N.Y. | Aug. 16, 2007 | Pleading |
| **4. Defendant Experian Information Solutions, Inc.'s Answer and Affirmative Defenses to Amended Complaint** <br> Mark GAFT, Plaintiff, v. MITSUBISHI MOTOR CREDIT OF AMERICA, Together with Its Employees & Agents; Equifax, Together with Its Employees & Agents; Transunion, Together with Its Employees & Agents; Experian Information Solutions, Inc., Together with Its Employees & Agents, Defendants. <br> 2007 WL 4771051 | PDF | E.D.N.Y. | July 31, 2007 | Pleading |
| **5. Defendant Equifax Information Services LLC's Answer and Affirmative Defenses** <br> Mark GAFT, Plaintiff, v. MITSUBISHI MOTOR CREDIT, John/Jane Doe Employee(s) of Mitsubishi Motor Credit, and Equifax, Defendants. <br> 2007 WL 1174640 | PDF | E.D.N.Y. | Mar. 05, 2007 | Pleading |
| **6. Docket 1:07cv00527** <br> GAFT v. MITSUBISHI MOTOR CREDIT ET AL | — | E.D.N.Y. | Feb. 07, 2007 | Docket |

**History (2)**

**Direct History (1)**

1. Gaft v. Mitsubishi Motor Credit of America ☞
   2009 WL 3148764 , E.D.N.Y. , Sep. 29, 2009

**Related References (1)**

2. Gaft v. Transunion
   2010 WL 180933 , E.D.N.Y. , Jan. 14, 2010

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2354308
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Thomas NGUYEN, Plaintiff,

v.

RIDGEWOOD SAVINGS BANK
and Peter Boger, Defendants.
thomas Nguyen, Plaintiff,

v.

Chase Bank USA, N.A. and James Dimon, Defendants.
Thomas Nguyen and Tiffany Nguyen, Plaintiffs,

v.

Santander Bank, N.A., Roman Blanco,
Citibank, N.A., Michael Corbat, Experian
Information Solutions, Inc., Donald Robert,
Trans Union LLC, and Equifax, Inc., Defendants.

Nos. 14–CV–1058 (MKB), 14–CV–
3464 (MKB), 14–CV–3989 (MKB).
|
Signed May 15, 2015.

**Attorneys and Law Firms**

Thomas Nguyen, Brooklyn, NY, pro se.

Tiffany Nguyen, Brooklyn, NY, pro se.

Adam Matthew Marshall, Cullen and Dykman LLP, Garden City, NY, Marianne McCarthy, Cullen and Dykman Bleakley Platt, LLP, Garden City, NY, Christopher B. Turcotte, The Law Office of Christopher B. Turcotte, New York, NY, James A. Kassis, Rahil Darbar, Schenck Price Smith & King LLP, Florham Park, NJ, Raymond Alexander Garcia, Stroock & Stroock & Lavan, New York, NY, Jennifer Kathleen Messina, Jones Day, New York, NY, Matthew Samberg, Jones Day, Pittsburgh, PA, Camille Renee Nicodemus, Schuckit & Associates, P.C., Zionsville, IN, Christina Marie Conroy, Paul Allan Straus, King & Spalding, New York, NY, for Defendants.

### MEMORANDUM & ORDER

MARGO K. BRODIE, District Judge.

**\*1** Plaintiffs Thomas Nguyen ("Mr.Nguyen") and Tiffany Nguyen ("Ms . Nguyen"), proceeding *pro se,* commenced the above-captioned actions against Defendants, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5301 *et seq.* ("CFPA"), particularly the section relating to the Bureau of Consumer Financial Protection, §§ 5481–5620, 42 U.S.C. §§ 1983 and 1985, and the New York State Fair Credit Reporting Act. The three Complaints name different Defendants but raise overlapping claims. [1]

[1]    These actions are three of seven filed by Mr. Nguyen in the Eastern District of New York in the last fifteen months, many of which have been dismissed. *See Nguyen v. Bush,* No. 15–CV–641 (E .D.N.Y. filed Feb. 6, 2015) (*see* Docket Entry No. 6 (dismissing complaint in full without leave to amend)); *Nguyen v. Milliken,* No. 15–CV–587 (E.D.N.Y. filed Jan. 30, 2015) (*see* Docket Entry No. 5 (dismissing complaint in full with leave to amend)); *Nguyen v. Santander Bank,* No. 14–CV–3989 (E.D.N.Y. filed June 26, 2014) (dismissing complaint at September 17, 2014 status conference, with leave to amend); *Nguyen v. JPM Chase Bank,* No. 14–CV–03464 (E.D.N.Y. filed June 2, 2014) (same); *Nguyen v. China Nat'l Offshore Oil Corp. (CNOOC),* No. 14–CV–3327 (E.D.N.Y. filed May 29, 2014) (dismissing complaint at September 17, 2014 status conference, in full with prejudice as any amendment would be futile) *appeal dismissed* No. 14–3871 (2d Cir. Mar. 6, 2015); *Nguyen v. Bank of America,* No. 14–CV–1243 (E.D.N.Y. filed Feb. 26, 2014) (*see* Docket Entry No. 22 (dismissing complaint in full with leave to amend)); *Nguyen v. Ridgewood Savings Bank,* No. 14–CV–1058 (E.D.N .Y. filed Feb. 28, 2014) (*see* Docket Entry No. 22 (dismissing complaint in full with leave to amend)).

Currently before the Court are seven separate motions to dismiss filed by Defendants Ridgewood Savings Bank and Peter Boger, (Ridgewood Mot. to Dismiss, No. 14–CV–1058 Docket Entry ("58DE") No. 37), Chase Bank USA, N.A. and James Dimon, (Chase Mot. to Dismiss, No. 14–CV–3464 Docket Entry ("64DE") No. 19), Santander Bank, N.A. and Roman Blanco, (Santander Mot. to Dismiss, No. 14–CV–3989, Docket Entry ("89DE") No. 46), Citibank, N.A. and Michael Corbat, (Citibank Mot. to Dismiss, 89DE No. 61),

Experian Information Solutions, Inc. and Donald Robert,[2] (Experian Mot. to Dismiss, 89DE No. 54), Trans Union LLC, (Trans Union Mot. to Dismiss, 89DE No. 50), and Equifax, Inc., (Equifax Mot. to Dismiss, 89DE No. 58). Defendants move pursuant to Rules 8, 9, and 12(b)(6) of the Federal Rules of Civil Procedure. Also before the Court is Mr. Nguyen's requests for default judgments against Ridgewood and Boger, (58DE Nos. 32–33), and against Experian and Robert. (*See* Am. Compl. in No. 14–CV–3989 ("3989 Am. Compl.") ¶ 17, 89DE No. 25; *see also* Letter dated Nov. 18, 2014 from Mr. Nguyen seeking default judgments against Experian and Robert, 89DE No. 32.)

[2]     Experian Information Solutions, Inc. submitted a single motion to dismiss, noting that it was incorrectly identified in the Complaint as "Experian Inc." and "CEO Don Robert." (Cover Letter dated January 12, 2015 at 1, 89DE No. 53.) Robert did not join Experian's motion to dismiss, (*see generally* Experian Mot. to Dismiss), though Experian's counsel has entered an appearance on Robert's behalf, (89DE No. 69), and the memorandum of law in support of the motion seeks dismissal as to Robert for failure to state a claim, (Experian Mem., 89 DE No. 55 at 4–5, 12).

For the reasons discussed below, Defendants' motions to dismiss are granted as to Plaintiffs' federal claims, and Mr. Nguyen's motions for default judgments are denied. As Plaintiffs have previously been given the opportunity to amend their complaints in each action, and have failed to correct the deficiencies identified by the Court, the Amended Complaints are dismissed with prejudice as to all of Plaintiffs' federal claims.

### I. Background

#### a. Procedural background

Plaintiff Mr. Nguyen, proceeding *pro se,* filed the above-captioned actions challenging various actions of Ridgewood Savings Bank ("Ridgewood"); Peter Boger, Chairman, President and Chief Executive Officer ("CEO") of Ridgewood; Chase Bank USA, N.A. ("Chase"), incorrectly identified as JPMC Chase Bank in the initial Complaint; James Dimon, Chairman and Chief Executive Officer ("CEO") of JPMorgan Chase & Co., incorrectly identified as Jamie Dimon; Santander Bank, N.A. ("Santander"); Roman Blanco, Chairman and CEO of Santander; Citibank, N.A. ("Citibank"), incorrectly identified as Citibank (Citigroup);

Michael Corbat, CEO of Citigroup; Experian Information Solutions, Inc. ("Experian"), incorrectly identified as Experian, Inc.; Donald Robert, Chairman of Experian plc;[3] Trans Union LLC ("Trans Union"); and Equifax, Inc. ("Equifax"). Mr. Nguyen's daughter, Tiffany Nguyen, is also a Plaintiff in action 14–CV–3989. The three Complaints name different Defendants but raise overlapping claims and frequently contain overlapping allegations. Mr. Nguyen's submissions often reference all three actions, and the Amended Complaints filed in 14–CV–1058 and 14–CV–3989 include reference to the other actions in the captions. In addition, Mr. Nguyen submitted an identical "addendum" to his Amended Complaints in actions 14–CV–3464 and 14–CV–3989.

[3]     Experian plc is the parent company of Experian Information Solutions, Inc. (Corporate Disclosure Statement ¶ 1, No. 14–CV–3989, Docket Entry No. 36.)

**\*2** On September 17, 2014, the Court dismissed the Complaints in 14–CV–3464 and 14–CV–3989 in their entirety pursuant to Rule 8 of the Federal Rules of Civil Procedure, for failure to plead with specificity the violation Plaintiffs allege, and permitted Plaintiffs to file amended complaints. (*See* Nos. 14–CV–3464 and 14–CV–3989, Minute Entry dated Sept. 17, 2014.) By Memorandum and Order dated December 17, 2014, the Court dismissed the Complaint in 14–CV–1058 for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs subsequently filed Amended Complaints, and Defendants now move to dismiss the Amended Complaints in all of the above-captioned actions.

#### b. Factual background

The following facts are taken from Plaintiffs' Amended Complaints, (Am. Compl. in No. 14–CV–1058 ("1058 Am. Compl."), 58DE No. 23; Am. Compl. in No. 14–CV–3464 ("3464 Am. Compl."), 64DE No. 12; 3989 Am. Compl.), an identical Addendum to the Amended Complaint submitted in actions 14–CV–3989 and 14–CV–3464 on October 24, 2014, (Am. Compl. Add., 64DE No. 14 and 89DE No. 27), and a Supplemental Addendum to the Amended Complaint filed in 14–CV–3989 on October 31, 2014, in which Mr. Nguyen "repeats and re-alleges ... the entire amended complaint in 14–[CV]–3464." (Suppl. Am. Compl. Add. ¶ 22, 89DE No. 28).

In sum, Plaintiffs appear to allege that Santander, Chase, Citibank and Ridgewood provided incorrect or inaccurate

information about Mr. Nguyen's accounts to Equifax, Experian and Trans Union, which affected Mr. Nguyen's credit score. Both Plaintiffs also experienced difficulty obtaining credit from Defendant banks at various times.

### i. Allegations against Santander, Blanco, Equifax, Experian and Trans Union

On or about February 19, 2007, Mr. Nguyen was approved for a "GoldOption" credit account with Santander, with a credit line of $15,000, and another "GoldOption" credit account with a credit line of $26,500 held by Bank of America, but serviced by FIA Card Services. (3989 Am. Compl. ¶ 2.) Mr. Nguyen alleges that he attempted to pay down his two credit accounts with his disposable income, but "[D]efendants were using unfair, deceptive, abusive acts or practices ... to drive [Mr. Nguyen] into destitution." In or about June of 2007, Mr. Nguyen went to a Bank of America branch to attempt to make a payment on his Santander credit card account, and alleges that Santander never received his $1000 payment .[4] (Id. ¶ 3.) Mr. Nguyen contacted a manager at one of the banks, and was eventually informed that "they found the money." (Id.) Mr. Nguyen alleges that his "credit-performance" on the Santander account "is considered AAA+++." (Id.)

[4]   It is unclear from the allegations in the Amended Complaint what connection Mr. Nguyen believes that Santander and Bank of America have beyond offering credit accounts with the name "GoldOption."

Mr. Nguyen alleges that from November 19, 2008 to the present, Santander, Bank of America, and FIA Card Services, acting in conspiracy with one another, committed unfair, deceptive, abusive acts or practices "against" his accounts, forcing him "eventually and gradually into a life of hell for so many years until" September 1, 2013, when Mr. Nguyen sustained atrial fibrillation and other heart conditions. (Id. ¶ 4.) At some point, Mr. Nguyen apparently requested that someone examine the "GoldOption portfolio," and "the office of President and CEO represented by Tom Jordan" contacted Experian. (Id. ¶ 5.) Mr. Nguyen was also sent a "suspicious, terrorizing, and threaten [sic ] letter ." (Id.) Plaintiffs allege that from October 16, 2013 through the date the present actions were filed, Experian, Bank of America and Santander "conspired in committed [sic ] a fraudulent act, criminal deception, grossly abusive" practice by "fabricating" the credit utilization ratio reported to Mr. Nguyen. (Id.) Mr. Nguyen recalculated his own credit utilization ratio, based

on a total credit limit of $71,000 [5] and reached a different conclusion, placing him in the "top of .01% tail [sic ] on normal distribution curve of favorable credit rating and credit score." (Id.)

[5]   Plaintiffs allege that this reflects Mr. Nguyen's total credit limit on all of his revolving accounts.

**\*3** In March or April of 2013, Mr. Nguyen alerted Janet Sanders, "Brooklyn Tech's payroll secretary,"[6] "Beth Johnson's UFT chapter leader" and Teresa Samuels, "UFT Brooklyn Rep." that something was wrong "inside." (Id. ¶ 10.) In September of 2013, Mr. Nguyen spent one week in Maimonides hospital in Brooklyn. (Id. ¶ 9.) Plaintiffs allege that Santander and Bank of America's actions with respect to Mr. Nguyen's credit accounts caused financial and psychological damage, and slowed Mr. Nguyen's recovery time. (Id.)

[6]   Exhibits annexed to the Supplemental Addendum to the Amended Complaints in 14–CV–3989 and 14–CV–3464 indicate that in 2012, and perhaps later, Mr. Nguyen was a math teacher at Brooklyn Technical High School. (Letter dated March 1, 2012 from Randy J. Asher, Principal of Brooklyn Technical High School to Mr. Nguyen, annexed to Supp. Am. Compl. Add. at Ex. 2.)

In or about January 2014 through October 2014, Plaintiffs allege that Santander committed a series of deceptive, unfair, and abusive acts or practices including various forms of fraud against Mr. Nguyen's checking account and a separate line of credit. (Id. ¶ 6.) Mr. Nguyen alerted the Consumer Financial Protection Bureau ("CFPB") and sent a letter to Blanco regarding the issue, and received a letter in reply from a bank representative on February 24, 2014.[7] (Id.) On March 29, 2014, Mr. Nguyen attempted to withdraw $20 from his account ending in—1223 at Santander, and received a receipt regarding a different account, ending in –3496, indicating that there was a larger balance in the account than he knew was in his—1223 account.[8] (Id. ¶ 6c; Ex. SF 5.) Plaintiffs allege that this was a "set-up" and a scam. (3989 Am. Compl. ¶ 6c.) Plaintiffs allege that Santander, acting in concert with Bank of America and FIA Card Services, deceptively and fraudulently violated the FCRA and engaged in unfair and deceptive practices in relation to Mr. Nguyen's credit accounts. (Id. ¶ 9.) Mr. Nguyen further states that he "has suffered loss and damages including, but not limited to, financial loss, financial injuries, expenditure

of time and resources, emotional distress, A–Fib, mental anguish, humiliation, and embarrassment, entitling him to actual immediate relief." (*Id.*)

[7]  Plaintiffs state that they have attached the letter to the Complaint, but the copy filed is illegible. (*See* Ex. SF, annexed to 3989 Am. Compl.) Plaintiffs appear to object to computation of balances on Mr. Nguyen's account statements, alleging that the accounting is fraudulent. (3989 Am. Compl. ¶ 6; Ex. SF 3–4.)

[8]  It is not clear from the Complaint what relationship there is between the two accounts, and why Mr. Nguyen would receive a receipt for the account ending in—3496 when he attempted to withdraw $20 from the account ending in—1223.

In January 2014 "and thereafter," Mr. Nguyen contacted Experian, Trans Union and Equifax to "personally address[ ] the issue and offer[ ][an] amicable solution." (*Id.* ¶ 16.) On March 1, 2014, Plaintiffs allege that Experian committed unspecified fraud. (*Id.* ¶ 17.) Mr. Nguyen "gave the evidence to expose Experian [*sic* ] crime to the [Federal Trade Commission ("FTC") ] and CFPB." (*Id.*) Also in March 2014, Trans Union answered Mr. Nguyen's letter with an inaccurate credit report, in which Trans Union "deceptively sandbag[ged]" Mr. Nguyen's credit score by "suppress[ing] my payment's info[rmation] and data with JPM Chase [and] Ridgewood...." (*Id.* ¶ 18.) Plaintiffs also allege that Equifax used unfair practices against Mr. Nguyen for many years, apparently related to reporting a low credit utilization ratio and otherwise using or misusing Mr. Nguyen's FICO credit score. (*Id.*) Mr. Nguyen also apparently received two calls from Equifax's counsel in August, although he does not specify the year. (*Id.*) Plaintiffs complain that one of the calls was unprofessional because it was received at 9:26 PM on a Sunday evening, while Mr. Nguyen was serving food to his brother in a nursing home. (*Id.*)

**\*4**  On April 28, 2014, Santander "and/or" Experian "fraudulently" collected $16.30 "instead of the usual one week prior to the 28th...." (*Id.* ¶ 6d.) Plaintiffs allege that Mr. Nguyen suffered "fears, financial and physical injuries, etc." (*Id.*) Since September 17, 2014, Mr. Nguyen has received more than one hundred "harass[ing] phone call[s]" from Santander. (*Id.* ¶ 6e.) On October 20, 2014, Mr. Nguyen received a telephone call asking him to verify his social security number, and spoke with two different individuals. (*Id.* ¶ 6e.) Mr. Nguyen "politely advised them to ask those [*sic*

] Blanco and [Vice President, Manager of Customer Relations JoAnn] Gruber and then hung up [.]" (*Id.* ¶ 6e.) On another occasion, Mr. Nguyen received a call from "Jeff," on behalf of Santander, at 8:00 AM on a Saturday. (*Id.*)

### ii. Allegations against Citibank and Michael Corbat

At the end of the 3989 Amended Complaint, Plaintiffs allege that Citibank and Corbat "were contacted" and discussed the Plaintiffs' allegations against them including conspiracy to commit murder. (*Id.* ¶ 20.) Plaintiffs refer to the Addendum to the Amended Complaint. (*Id.*) Therein, Plaintiffs allege that Citibank acted with non-party Expedia "et al" in a conspiracy with "several 'State Actors' to committing [*sic* ] murder or committing [*sic* ] to terrorize us in the post 9/11 era, etc. in pursuant to FCRA" and several sections of the United States Code. (Am.Compl.Add .1.)

At or about the time Mr. Nguyen's father passed away in January of 2014, Mr. Nguyen called Citibank "at about 2 3 am" requesting an increase in his credit line, which was refused. (Supp.Am.Compl.Add.¶ 15.) Mr. Nguyen allegedly purchased flights from Expedia to Vietnam to attend his father's funeral. Mr. Nguyen alleges that Citibank acted in conjunction with Expedia to commit unfair and deceptive acts against him, forcing him to extend his credit account over the credit limit. (*Id.*)

At some unspecified time, Mr. Nguyen brought to Citibank's attention an unauthorized charge on his account. (*Id.*) Citibank removed the charge from his account initially, but later recharged the credit account. (*Id.*)

On April 23, 2014, Citibank refused Ms. Nguyen a credit card account "because of terrorist activity," but still sent her a credit card in the mail. (*Id.* ¶ 19.) Plaintiffs allege this constitutes "discrimination, character defamation, abuse of power" and is "criminally fraud [*sic* ]." (*Id.*)

### iii. Allegations against Chase Bank and Dimon

Mr. Nguyen brought a separate action, not joined by Ms. Nguyen, against Chase Bank and Dimon, in which he alleges similar claims for fraud, unfair and deceptive business practices, violations of the FCPA and CFPA, and conspiracy pursuant to 42 U.S.C. § 1985. (3464 Am. Compl. ¶ III.) Mr. Nguyen alleges that Chase Bank engaged in "illegal and deceptive practices" between October 2005 and June 2012, and that on September 13, 2013, the CFPB ordered Chase to pay more than $309 million in damages to credit card

customers. (3464 Am. Compl. ¶¶ 1, 8.) On September 13, 2013, Mr. Nguyen filed a claim in Small Claims Court, Kings County, for "Chase's violation" relating to Mr. Nguyen's credit card account, seeking damages of $5000 ("Small Claims action"). (*Id.* ¶ 2.) In December 2013, Mr. Nguyen sent Dimon a letter regarding his credit card account, because it "was illegally charged and billed with illegal and deceptive practice products." (*Id.* ¶ 3.)

**\*5** Shortly after filing his Small Claims action, Mr. Nguyen received a telephone call requesting his appearance on "People's Court" with Dimon "or his representative." (*Id.* ¶ 4.) Mr. Nguyen alleges that he "smelled something fishy" and determined that the offer was related to fraud and collusion, though he does not allege who colluded and for what end the collusion occurred. (*Id.* ¶ 4.) On January 27, 2014, Mr. Nguyen received a letter from a lawyer stating, *inter alia,* "please contact me to discuss the litigation and whether we can reach an amicable resolution." (*Id* . ¶ 5.) On March 3, 2014, Mr. Nguyen received another telephone call from the "Judge Judy Show," asking if he would appear on the show regarding the small claims case. (*Id.* ¶ 6.) Mr. Nguyen apparently did not appear on either television show, instead appearing before Judge Harriet Thompson in April of 2014, where Mr. Nguyen indicated that he would bring the action in the United States District Court after discontinuing his Small Claims action. (*Id.* ¶ 7.)

Mr. Nguyen alleges that he had a "good if not perfect record with Chase until" July of 2014. (*Id.* ¶ 8.) He states that "Chase broke the law and been ordered to pay [P]laintiff, one of the victims." (*Id.*) He also refers to a "fabricated charge-off" and indicates that this was a "false pretense" for Chase to conspire with Credit Reporting Agencies via "fraud-ridden report(s)." (*Id.*) According to Mr. Nguyen, Chase "knowingly and willingly used false and inaccurate credit information" to cut his credit line—on a different account—from $14,000 to $6700, and to raise the interest rate on his account. (*Id.* ¶ 9.) Mr. Nguyen then stopped "dealing with" Chase. (*Id.* ¶ 8.) He states that the conduct, including cutting his credit line, "changing Court TV shows," and "conspiring" with different lawyers and attorneys, were "unfair and abusive practice[s]" and "pervert[ed] the course justice [*sic* ]." (*Id.* ¶ 10.)

Mr. Nguyen spent a week at Maimonides Hospital in Brooklyn as a result of Defendants' conduct. (*Id.* ¶¶ 10, 15.) He suffered from "financial loss, financial injuries, expenditure of time and resources, emotional distress, A–Fib, mental anguish, humiliation, and embarrassment," which

he argues entitles him to relief. (*Id.* ¶ 14.) At the end of his Complaint, Mr. Nguyen repeats his allegations regarding his March or April 2013 contact with Janet Sanders, Beth Johnson's "UFT chapter leader" and Teresa Samuels. (*Id.* ¶ 15.)

#### iv. Allegations against Ridgewood and Boger

Mr. Nguyen brought a third action, not joined by Ms. Nguyen, against Ridgewood and Boger, in which he alleges similar claims for fraud, unfair and deceptive business practices, violations of the FCRA and CFPA, and conspiracy pursuant to 42 U.S.C. § 1985. (1058 Am. Compl. ¶ III.) The facts alleged in Mr. Nguyen's Complaint are set forth in *Nguyen v. Ridgewood Savings Bank (Nguyen I),* —— F.Supp.3d ——, 2014 WL 7182812 (E.D.N.Y. Dec. 17, 2014), which decision dismissed Mr. Nguyen's initial Complaint, but permitted him to file the instant Amended Complaint.

**\*6** In or about November of 2005, Mr. Nguyen opened a Certificate of Deposit ("CD") account of $8000 with Ridgewood. (1058 Am. Compl. ¶ 1.) In connection with the account, Mr. Nguyen received a television and a camcorder. (*Id.*) On or about October 2007, Mr. Nguyen obtained a secured loan of about 90% of the CD value. (*Id.* ¶ 2.) Sometime between 2005 and 2010, Mr. Nguyen began making monthly payments on his loan at the Ridgewood branch in Brooklyn, NY. (*Id.* ¶ 3.) In 2013, Mr. Nguyen contacted the Federal Deposit Insurance Corporation's "FDIC") Consumer Response Center disputing the accuracy of Ridgewood's records as to the timeliness of twenty two of Mr. Nguyen's payments on his loan. (*Id.* ¶¶ 4–5, 18.) A short time "before or after" December 16, 2013, Mr. Nguyen contacted Ridgewood seeking an additional loan, and appears to allege that he was denied the loan in connection with the gifts he received in 2005. (*Id.* ¶ 7a.) Mr. Nguyen attempted to resolve these issues in person at the branch, but the persons with whom he had direct contact were no longer available. (*Id.* ¶ 7b.) Ridgewood then reported to Trans Union or Experian that Mr. Nguyen had missed payments on his loan. (*Id.*)

Mr. Nguyen alleges that Equifax, Trans Union, Experian, Ridgewood, "and all [D]efendants in all cases" were motivated by a discriminatory animus against him in a conspiracy against him. (*Id.* ¶ 19.)

#### v. Additional allegations

In the Supplemental Addendum to his Amended Complaint on October 31, 2014, Mr. Nguyen includes a number of facts

not related to any of the Defendants in the above-captioned actions. He refers to actions surrounding the September 11, 2001 terrorist attacks in New York City, Mr. Nguyen's former employment at Brooklyn Technical High School, Mr. Nguyen's contact with the United States Embassy in the Republic of Singapore, alleged discrimination perpetrated by Randy Asher, [9] and the death of Mr. Nguyen's father in January of 2014. (Supp.Am.Compl.Add.¶¶ 1–14, 20, 30–31.) Mr. Nguyen also alleges that he "saw the perpetrator attempting or/ and conspiring to kill or/ and to terrorize" him on three separate airline flights, though he does not indicate who "the perpetrator" is or include any other details about what happened. (*Id.* ¶¶ 16–18.) Mr. Nguyen also attached documents relating to teaching evaluations at Brooklyn Technical High School, (*id.* at 12–18), and airline itineraries, (*id.* at 19–21). He did not indicate how any of these additional documents were relevant to the above-captioned cases.

[9]     Randy J. Asher appears to have been the principal at Brooklyn Technical High School in 2012. (*See* Supp. Am. Compl. Add. 12.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must take all of the factual allegations in the complaint as true." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 717 (2d Cir.2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 113 (2d Cir.2013) (quoting *Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir.2009)); *Matson v. Bd. of Educ.,* 631 F.3d 57, 63 (2d Cir.2011) (quoting *Connecticut v. Am. Elec. Power Co.,* 582 F.3d 309, 320 (2d Cir.2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson,* 631 F.3d at 63 (quoting *Iqbal,* 556 U.S. at 678); *see also Pension Ben. Guar. Corp.,* 712 F.3d at 717–18. A complaint need not contain "detailed factual allegations," but a plaintiff must do more than present "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Matson,* 631 F.3d at 63 (internal quotation marks omitted) (quoting *Iqbal,* 556 U.S. at 678). "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Pension Ben. Guar. Corp.,* 712 F.3d at 718 (alteration in original) (quoting *Iqbal,* 556 U.S. at 679). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." [10] *Iqbal,* 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotation marks omitted); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (noting that even after *Twombly,* the court "remain[s] obligated to construe a *pro se* complaint liberally"). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *Shabazz v. Bezio,* 511 F. App'x 28, 31 (2d Cir.2013) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)).

[10]     When deciding a motion to dismiss, a court's review is limited to the four corners of the complaint, as well as (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) any documents deemed integral to the complaint, and (4) public records. *See Nielsen v. Rabin,* 746 F.3d 58, 65 (2d Cir.2014) (Jacobs, J. dissenting) (documents attached to the complaint and those incorporated by reference); *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 156 (2d Cir.2006) (documents integral to the complaint); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004) (public records). For the purposes of this Memorandum and Order, the Court deems Plaintiffs' supplemental submissions in support of the Amended Complaints as part of the Amended Complaints.

### b. Fair Credit Reporting Act claims

**\*7** As observed in *Nguyen I,* the FCRA regulates consumer credit reporting agencies to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumer credit information. 15 U.S.C. § 1681(b); *Nguyen I,* ⸺ F.Supp.3d at ⸺, 2014 WL 7192812, at \*2. Under the statute, "consumer reporting agencies," sometimes referred to as

2015 WL 2354308

"credit reporting agencies," are defined as entities which, for a monetary fee, "regularly engage[ ] in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). The FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies. *Redhead v. Winston & Winston, P.C.,* No. 01–CV–11475, 2002 WL 31106934, at *3–5 (S.D.N.Y. Sept. 20, 2002) (citing 15 U.S.C. § 1681, *et seq.; Aklagi v. Nationscredit Fin. Servs. Corp.,* 196 F.Supp.2d 1186, 1192 (D.Kan.2002); *Thomasson v. Bank One, La., N.A.,* 137 F.Supp.2d 721, 722 (E.D.La.2001))). [11]

[11]    A "furnisher" is "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 16 C.F.R. § 660.2. Plaintiffs do not specifically allege which Defendants they consider to be furnishers, and which they consider to be consumer reporting agencies.

### i. Individual Defendants

Plaintiffs have set forth no allegations as to Blanco, Dimon, Corbat, Robert or Boger ("Individual Defendants") that establish the FCRA applies to them. Plaintiffs' FCRA claims are therefore dismissed as to the Individual Defendants.

### ii. Furnishers of information

Plaintiffs appear to bring claims against all Defendant banks as furnishers of information, similar to those claims Mr. Nguyen brought against Ridgewood in *Nguyen I,* that is, that Defendant banks improperly provided inaccurate information to consumer reporting agencies, or failed to correct inaccurate information that was provided to the consumer reporting agencies. "As part of [its] regulatory scheme, the [FCRA] imposes several duties on those who furnish information to consumer reporting agencies." *Longman v. Wachovia Bank, N.A.,* 702 F.3d 148, 150–51 (2d Cir.2012) (citing 15 U.S.C. § 1681s–2). Among those obligations are the duties to provide accurate information to consumer reporting agencies, to correct inaccurate information, and to correct inaccurate information after receiving notice of a credit dispute directly from a consumer. 15 U.S.C. § 1681s–2(a); *see Longman,* 702 F.3d at 150 ("Among these are duties to refrain from knowingly reporting inaccurate information, *see§* 1681s–2(a)(1), and to correct any information they later discover to be

inaccurate, *see§* 1681s–2(a)(2)."). Furthermore, furnishers of information have a responsibility to conduct an investigation after receiving notice of a credit dispute from a consumer reporting agency. § 1681s–2(b); *see also Redhead,* 2002 WL 31106934, at *4 ("The FCRA imposes two [general] duties on furnishers of information, codified at 15 U.S.C. §§ 1681s–2(a) and (b).").

### 1. Section 1681s–2(a)

 *8  "[T]here is no private cause of action for violations of [Section] 1681s–2(a)." *Longman,* 702 F.3d at 151 (collecting cases); *Barberan v. Nationpoint,* 706 F.Supp.2d 408, 427 (S.D.N.Y.2010); *Trikas v. Universal Card Servs. Corp.,* 351 F.Supp.2d 37, 44 (E.D.N.Y.2005). Therefore, any claims Plaintiffs attempt to bring under Section 1681s–2(a) of the FCRA, including those claims relating to Plaintiff's complaints directly to Defendant banks, are dismissed.

### 2. Section 1681s–2(b)

To state a claim under Section 1681s–2(b) of the statute, Plaintiffs must allege that a furnisher of information received notice from a consumer reporting agency of Mr. Nguyen's credit dispute. *See Markovskaya v. Am. Home Mortg. Servicing, Inc.,* 867 F.Supp.2d 340, 344 (E.D.N.Y.2012) ("Plaintiffs' only claim can be pursuant to Section 1681s–2(b). As noted, such a claim is stated only when [p]laintiff can show that the furnisher received information regarding a consumer's credit directly from a credit reporting agency, and not only from the consumer."); *Dickman v. Verizon Commc'ns, Inc.,* 876 F.Supp.2d 166, 172–74 (E.D.N.Y.2012) ("[U]nder § 1681s–2(b), [a] defendant ha[s] no duty to investigate [a] credit dispute unless defendant received notice of the dispute from a consumer reporting agency." (alterations in original) (internal quotation marks omitted) (quoting *Prakash v. Homecomings Fin.,* No. 05–CV–2895, 2006 WL 2570900, at *3 (E.D.N.Y. Sept. 5, 2006))); *Kane v. Guar. Residential Lending, Inc.,* No. 04–CV–4847, 2005 WL 1153623, at *4 (E.D.N.Y. May 16, 2005) ("[T]he duty to investigate in Subsection (b) is triggered only after a furnisher of information receives notice *from a credit reporting agency* of a consumer's dispute."). "A plaintiff proceeding under [Section] 1681s–2(b) is required to show that the furnisher was told by a credit reporting agency that the consumer's information was disputed, as opposed to being told by the consumer directly." *Mendy v. JP Morgan Chase & Co.,* No. 12–CV–8252, 2014 WL 1224549, at *5 (S.D.N.Y. Mar.24, 2014) (internal quotation marks and citations omitted).

2015 WL 2354308

The majority of Plaintiffs' allegations are conclusory statements that Defendants Santander, Chase, Citibank and Ridgewood engaged in unfair and abusive practices, providing no indication of whether the alleged practice involved information reported to a consumer reporting agency. Plaintiffs appear to allege that Defendant banks forced Mr. Nguyen into destitution by refusing to extend him further credit or reducing his credit limits, which affected his credit utilization ratio and credit score, making it difficult for him to obtain further credit and leading to increased interest rates on his accounts. Plaintiffs also specifically allege certain practices on the part of each Defendant bank: that Santander charged Mr. Nguyen approximately sixteen dollars on the wrong date, and at an unspecified time; Citibank inappropriately dealt with a charge which Mr. Nguyen reported was unauthorized; Citibank "refused" Ms. Nguyen a credit card, though it eventually sent one to her in the mail; Chase billed Mr. Nguyen inappropriately; and Ridgewood improperly reported to Trans Union that Mr. Nguyen had made late payments on his account.

**\*9** Plaintiffs allege that Mr. Nguyen notified the FTC, the CFPB and the FDIC Consumer Response Center regarding his issues with the Defendant banks, and the Amended Complaints allege that Experian, Trans Union and Equifax were involved in "conspiracy" with the Defendant banks. Plaintiffs also allege that Experian may have acted in conjunction with Santander to collect the sixteen dollars, although they are unclear and indeterminate on Experian's involvement, and allege that Mr. Nguyen contacted Experian, Trans Union and Equifax in January 2014, although there is no indication in any of Complaints of what Mr. Nguyen reported to them other than "address[ing] the issue [12] and offer [ing an] amicable solution in the interest of law and in the interest of our mother, America." (3989 Am. Compl. ¶ 16.) Even affording the Complaint a liberal reading, it is difficult to conclude from the allegations that Ridgewood, Chase, [13] Citibank or Santander received or ignored any notice of a dispute regarding the completeness or accuracy of any information provided to a consumer reporting agency. *See Dickman,* 876 F.Supp.2d at 172 ("[U]nder § 1681s–2(b), [a] defendant ha[s] no duty to investigate [a] credit dispute unless defendant received notice of the dispute from a consumer reporting agency." (alterations in original) (quoting *Prakash,* 2006 WL 2570900, at \*3)). Absent any allegation that (a) Plaintiffs notified a consumer reporting agency of a credit dispute or (b) any of the Defendant banks, Ridgewood, Chase, Citibank or Santander, was notified by a consumer reporting agency of a dispute as to the accuracy of the information

furnished to a consumer reporting agency, Plaintiffs fail to state a claim under the FCRA. Plaintiffs' claims are therefore dismissed with prejudice.

[12]    Though it is not clear from the Complaints, Plaintiffs vaguely tie "the issue" to their allegations that the consumer reporting agencies were engaged in fraud of some kind. (*See* 3989 Am. Compl. ¶ 16.)

[13]    Chase also moves for dismissal of Mr. Nguyen's FCRA claim on the ground that claims more than two years old are barred by the statute of limitations. The Court declines to address the statute of limitations, given that Mr. Nguyen has not plausibly identified a factual basis for his claim, including failing to identify when the claim arose.

### iii. Consumer reporting agencies

Plaintiffs allege generally that Equifax, Trans Union and Experian violated the FCRA. "The FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469, 473 (2d Cir.1995) (internal citations omitted). [14] Based on their allegations, Plaintiffs appear to invoke Sections 1681e and 1681i of the FCRA against the Defendant consumer reporting agencies, which require consumer reporting agencies to insure that the reported information is accurate, and to investigate disputes as to the accuracy of reported information. [15]

[14]    Equifax argues that Equifax, Inc., the named Defendant in this action, is a holding company for Equifax Information Services LLC and is not a credit reporting agency subject to the FCRA. (Equifax Mot. to Dismiss 4 n. 1.) Because the Court has determined that Plaintiffs have failed to allege any facts that would support a claim against Equifax, the Court declines to address this argument.

[15]    Plaintiffs also reference 15 U.S.C. §§ 1681*o* and 1681n, which permit civil liability for consumer reporting agencies' negligent or willful noncompliance with the statute. Under Sections 1681*o* and 1681n, a plaintiff is entitled to actual damages as a result of defendants' noncompliance with the statute. "To maintain a claim under the

2015 WL 2354308

FCRA, Plaintiff bears the burden of demonstrating 'actual damages sustained' as a result of the Defendants' activities." *Caltabiano v. BSB Bank & Trust Co.,* 387 F.Supp.2d 135, 141 (E.D.N.Y.2005) (citing *Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469, 473 (2d. Cir.1995)). Defendants argue that Plaintiffs fail to adequately allege actual damages to support their claims under the statute. The Court declines to address Defendants' argument as to damages, as Plaintiff has failed to state a claim for liability under the statute.

**1. Section 1681e(b)**

Section 1681e(b) imposes a duty on consumer reporting agencies "to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b); *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 104 (2d Cir.1997) (same); *Gorman v. Experian Info. Solutions, Inc.,* No. 07–CV–1846, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008) ("[T]he FCRA requires that consumer reporting agencies, such as Experian, 'follow reasonable procedures to assure maximum possible accuracy of the information' contained in the consumer report." (quoting 15 U.S.C. § 1681e(b))). In order to succeed on a claim under Section 1681e(b), a plaintiff must show that:

> **\*10** (1) the consumer reporting agency was negligent [or willful] in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.

*Gorman,* WL 4934047, at *4 (quoting *Whelan v. Trans Union Credit Reporting Agency,* 862 F.Supp. 824, 829 (E.D.N.Y.1994)) (internal quotation marks omitted) (alteration in original); *Selvam v. Experian Info. Solutions, Inc.,* No. 13–CV–6078, 2015 WL 1034891, at *3 (E.D.N.Y. Mar.10, 2015) (same); *Agu v. Rhea,* No. 09–CV–4732, 2010 WL 5186839, at *5 (E.D.N.Y. Dec. 15, 2010) (same) (quoting *Gaft v. Mitsubishi Motor Credit of Am.,* No. 07–CV–527, 2009 WL 3148764, at *9 (E.D.N.Y. Sept. 29, 2009)). Merely

reporting inaccurate information is insufficient to give rise to liability under the FCRA, as the Act is not a strict liability statute. *See* 15 U.S.C. §§ 1681*e*, 1681n; *Ogbon v. Beneficial Credit Servs., Inc.,* No. 10–CV–3760, 2013 WL 1430467, at *6–7 (S.D.N.Y. Apr. 8, 2013) ("[A] credit reporting agency is not held strictly liable under the FCRA merely for reporting [inaccurate information]; rather, the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report." (internal quotation marks and citations omitted)), *appeal dismissed* (Sept. 23, 2013); *Gaft,* 2009 WL 3148764, at *9 ("However, an inaccurate entry of credit information, in and of itself, is not a violation of the FCRA; rather ... plaintiff must allege that the consumer reporting agencies failed, through negligence or intention, to follow reasonable procedures to ensure the accuracy of the information.")

**2. Section 1681i**

Section 1681i sets out procedures consumer reporting agencies must follow to investigate disputes as to the accuracy of reported information. 15 U.S.C. § 1681i. These procedures include reinvestigating a consumer's record within a reasonable period of time after a consumer "directly conveys" a dispute as to the "completeness or accuracy of an item on his credit report" to the consumer reporting agency. *Podell,* 112 F.3d at 101 (citing *id* .§ 1681i(a)); *see also Longman,* 702 F.3d at 151 ("If a dispute is filed with the agency, both the agency and the furnisher of that information have a duty to reasonably investigate and verify that the information is accurate." (citing §§ 1681i(a)(1)(A), 1681s–2(b))). Section 1681i states, in relevant part, that if a consumer notifies a consumer reporting agency—either directly or indirectly—of a dispute as to the accuracy of any item of information contained in his file, within thirty days of notification the consumer reporting agency "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." [16] 15 U.S.C. § 1681i(a) (1)(A); *see Jones v. Experian Info. Solutions, Inc.,* 982 F.Supp.2d 268, 272 (S.D.N.Y.2013) (quoting same). What constitutes a "reasonable" reinvestigation depends on the circumstances of the allegations. *Id.* (citing *Cortez v. Trans Union, LLC,* 617 F.3d 688, 713 (3d

[16]    In full, the relevant section states:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer

notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer....

15 U.S.C. § 1681i(a)(1)(A).

**\*11** Cir.2010)). "Prior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information." *Casella,* 56 F.3d at 474.

### 3. Plaintiffs fail to state a claim

Plaintiffs allege that Trans Union, Equifax and Experian have issued credit reports regarding Mr. Nguyen that contained fraudulent, inaccurate or "deceptive" information, particularly as it relates to Mr. Nguyen's credit utilization ratio and his "FICO" credit score. (*See* Am. Compl. ¶¶ 5, 18.) Plaintiffs also allege that Mr. Nguyen complained to these agencies about "the issue." (*Id.* ¶ 16.) Plaintiffs fail, however, to make any allegations relating to the procedures Trans Union, Equifax or Experian instituted to ensure the accuracy of the information in Mr. Nguyen's credit reports, to support a Section 1681e(b) claim. *See Ogbon,* 2013 WL 1430467, at \*7 (granting summary judgment on Section 1681e claim in favor of Trans Union and Experian because the plaintiff "ha[d] adduced no evidence to suggest that either defendant failed to follow reasonable procedures in preparing her credit report"); *Gaft,* 2009 WL 3148764 (dismissing FCRA claim, noting that the plaintiff's amended complaint was "devoid of any allegations concerning the reasonableness of the procedures used by the defendant consumer reporting agencies").

Plaintiffs also fail to make any allegations regarding either the procedures followed or investigations by Trans Union, Equifax or Experian in response to Mr. Nguyen's complaints, in order to support a Section 1681i claim. Plaintiffs' conclusory and broad allegations of fraud and deceptive practices, without explanation of how Defendants willfully or negligently violated the FCRA, do not suffice to state a claim under the statute. *See Selvam,* 2015 WL 1034891, at \*3–4 (dismissing FCRA claims against consumer reporting agency when plaintiff failed to explain how defendant willfully or negligently violated the statute, and did not set forth

how consumer reporting agency acted unreasonably with respect to disputed information); *Agu,* 2010 WL 5186839, at \*6 (dismissing FCRA claim against consumer reporting agencies because plaintiff "rests his Section 1681e claim on a combination of nonspecific, conclusory allegations about 'false' or 'derogatory' statements, and repetition of his argument that Bank of America incorrectly reported that he 'owe[d] more than once' "). Plaintiffs' FCRA claims against Trans Union, Equifax and Experian are dismissed, with prejudice.

### c. Consumer Financial Protection Act claims

Plaintiffs bring claims pursuant to the CFPA, specifically enumerating Sections 5531, 5536(a), 5563 and 5565. As an initial matter, Plaintiffs provide no facts beyond conclusory statements that Defendants engaged in unfair and abusive practices to support a finding that Defendants may be in violation of the CFPA. Furthermore, Plaintiffs provide no statutory basis, and the Court can find none, for finding a private right of action under these provisions of the statute, which outline duties, authorities and enforcement powers of the CFPB. *See Johnson v. J.P. Morgan Chase Nat'l Corporate Servs., Inc.,* No. 13–CV–678, 2014 WL 4384023, at \*5 (W.D.N.C. Aug. 5, 2014)* ("[T]here is no private right of action under the CFPA.") *report and recommendation adopted,*2014 WL 4384024 (W.D.N.C. Sept.3, 2014); *In re Capital One Derivative S'holder Litig.,* No. 12–CV–1100, 2012 WL 6725613, at \*7 (E.D.Va. Dec. 21, 2012) ("[I]t is true that there are no private causes of action available under ... the Consumer Financial Protection Act ."); *see also Bellikoff v. Eaton Vance Corp.,* 481 F.3d 110, 116 (2d Cir.2007) (A Court "cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided." (citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 571, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979))). A related provision of the statute specifically provides that, "[i]f any person violates a Federal consumer financial law, the *Bureau* may ... commence a civil action against such person to impose a civil penalty or to seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law." 15 U.S.C. § 5564(a) (emphasis added). Therefore, Plaintiffs' claims under the CFPA are dismissed, with prejudice, as to all Defendants.

### d. Sections 1983 and 1985

**\*12** Plaintiffs invoke 42 U.S.C. §§ 1983 and 1985 in relation to vague allegations of conspiracy. Plaintiffs' claims are not cognizable under Section 1983 or 1985. In order to sustain

a claim for relief under Section 1983, a plaintiff must show (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)); *see Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999) ("To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."); *Bartels v. Inc. Vill. of Lloyd,* 751 F.Supp.2d 387, 402 (E.D.N.Y.2010). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citation and internal quotation marks omitted). Similarly, to bring a claim for conspiracy under Section 1985(3), a plaintiff must allege:

> (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

*Finn v. Anderson,* 592 F. App'x 16, 20 (2d Cir.2014) (quoting *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999)) (internal quotation marks omitted).

Plaintiffs have not stated a claim under Section 1983 or 1985 against any Defendant. Plaintiffs have acknowledged that the Defendants are either private corporations or private individuals acting as corporate officers of the Defendant corporations. (1058 Am. Compl. ¶ II; 3464 Am. Compl. ¶ II; 3989 Am. Compl. ¶ II .) However, Plaintiffs have not alleged that any of the Defendants were acting under color of state law, nor have they provided any facts which would support such an allegation beyond the vague and conclusory statement that Defendants conspired with "State

Actors." Furthermore, Plaintiffs allege no specific violation of constitutional or federal rights, other than presenting vague and repeated references to conspiracy. These general allegations are insufficient to state a claim under Section 1983 or 1985(3). *See White v. Monarch Pharm., Inc.,* 346 F. App'x 739, 741 (2d Cir.2009) (noting that conclusory, vague, or general allegations are insufficient to state a claim for conspiracy pursuant to Section 1985 (citing *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983))); *Tekiner v. Dep't of Corr.,* No. 14–CV–1293, 2014 WL 2440671, at *3 (E.D.N.Y. May 30, 2014) ("To state a civil rights claim under § 1983, a complaint must contain 'specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under [§ ] 1983.' " (alteration in original) (quoting *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987))); *Houghton v. Cardone,* 295 F.Supp.2d 268, 273 (W.D.N.Y.2003) (same); *see also TADCO Const. Corp. v. Dormitory Auth. of State of N.Y.,* 700 F.Supp.2d 253, 262 (E.D.N.Y.2010) (noting that § 1983 "does not, however, itself create substantive rights, but 'merely provides a method for vindicating federal rights elsewhere conferred' " (quoting *Rateau v. City of New York,* No. 06–CV–4751, 2009 WL 3148765, at *4 (E.D.N .Y. Sept. 29, 2009))). Plaintiffs' claims pursuant to Sections 1983 and 1985 are dismissed, with prejudice, as to all Defendants.

#### e. Federal criminal statutes

**\*13** Plaintiffs appear to assert that certain Defendants are in violation of 18 U.S.C. §§ 1111, 1113, 1117 and 1119, and have "possibl[y]" violated 18 U.S.C. §§ 2381 and 2382. These statutes, prohibiting murder, attempt to commit murder or manslaughter, conspiracy to commit murder, and foreign murder of United States nationals, and treason and misprision of treason, respectively, do not provide a private right of action. *See Shaughnessy v. New York,* No. 13–CV–271, 2014 WL 457947, at *7 (N.D.N.Y. Feb.4, 2014) (adopting report and recommendation which concluded "even if the claim were not completely conclusory, plaintiff may not sue any of the defendants for treason because there is no private right of action for the crime" (citations omitted)), *appeal dismissed* (May 28, 2014); *Patrick v. Butzbaugh,* No. 08–CV–1075, 2009 WL 311073, at *2 (W.D.Mich. Feb. 6, 2009) (dismissing a claim brought pursuant to section 2381); *Estate of Musayelova v. Kataja,* No.06–CV–881, 2006 WL 3246779, at *2 (D.Conn. Nov. 7, 2006) (denying reconsideration of dismissal of action including claims brought pursuant to 18 U.S.C. §§ 1111 and 1117, noting that there was no private cause of action); *see also Delarosa v. Serita,* No. 14–CV–

737, 2014 WL 1672557, at *2 (E.D.N.Y. Apr. 28, 2014) ("Violations of the Criminal Code do not provide a basis for a civil cause of action, unless the particular provision in question includes an express or implied private right of action." (quoting *Weinstein v. City of New York,* No. 13–CV–06301, 2014 WL 1378129, at *4 (S.D.N.Y. Apr.8, 2014))). Accordingly, Plaintiffs' claims pursuant to these federal criminal statutes are dismissed with prejudice.

Because Plaintiffs have failed to state a claim under the FCRA, CFPA, 42 U.S.C. §§ 1983 and 1985, or the referenced federal criminal statutes, all of Plaintiffs' federal claims are dismissed for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[17]

[17] Defendants also moved for dismissal pursuant to Rules 8 and 9(b) of the Federal Rules of Civil Procedure, arguing that Plaintiffs failed to sufficiently plead their claims, and Rule 12(b)(5) of the Federal Rules of Civil Procedure, arguing that Plaintiffs failed to properly serve certain Defendants, including Corbat, (*see* Citibank Mot. to Dismiss 1 n. 1). Because the Court finds that Plaintiffs have failed to state a claim against any of the Defendants, the Court will not address the alternative grounds for dismissing the Complaints.

### f. New York State Fair Credit Reporting Act claims

Plaintiffs also bring claims pursuant to the New York State Fair Credit Reporting Act, specifically referring to N.Y. Gen. Bus. Law §§ 380–o, 380–*l*,380–m.[18] The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3) ( "District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."). Because Plaintiffs' Complaints do not contain sufficient facts that may fairly be read to state a claim for any violation of Plaintiffs' federal rights, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Plaintiffs' state law claims are dismissed without prejudice.

[18] Defendants argue that Plaintiffs' claims brought pursuant to the New York State Fair Credit Reporting Act are preempted, as outlined in 15 U.S.C. § 1681t(b). While this may be the case in some instances, *see Galper v. JPMorgan Chase, N.A.,* No. 13–CV3449, 2014 WL 1089061, at *3–

6 (S.D.N.Y. Mar.17, 2014) (discussing scope of preemptive effect of Section 1681t(b)(1)(F)), the Court declines to address the issue of federal preemption.

### g. Mr. Nguyen's request for default judgments

By letter dated November 18, 2014, Mr. Nguyen moved for default judgments against Experian and Robert, alleging that Plaintiffs had not received Experian's motion to dismiss or an answer to his Complaint, and arguing that "Experian is the biggest criminal ever in the history of [Mr. Nguyen's] life." (Letter dated Nov. 18, 2014 from Mr. Nguyen seeking default judgment against Experian and Robert 1, 89DE No. 32.) On March 27, 2015, Mr. Nguyen filed a letter renewing his request for default judgments on the grounds that Experian and Robert have failed to defend the action.[19] (Letter dated Mar. 24, 2015, 89DE No. 65.)

[19] By letters dated March 6, 2015 and March 11, 2015, Mr. Nguyen requested default judgments against Ridgewood and Boger, which the Court denied. (*See* No. 14–CV–1058, Order dated Mar. 10, 2015 and Order dated Mar. 17, 2015.)

**\*14** Mr. Nguyen has failed to show a basis for his motion. As an initial matter, it is not clear that Experian and Robert have failed to defend this action. By Order of the Court dated November 6, 2014, Defendants were granted until December 5, 2014 to serve their motions to dismiss. On December 5, 2014, counsel for Experian electronically filed a letter indicating that Experian had served its motion to dismiss on Plaintiffs. (89DE No. 37.) Experian's counsel entered her appearance on the same day. (89DE No. 35.) Experian timely filed a motion to dismiss.[20] (*See* 89DE No. 54.) Second, because Plaintiffs have failed to state a claim against Experian and Robert, Mr. Nguyen cannot show that Experian and Robert are liable to him on the grounds alleged, even if they had defaulted. *See Lopez v. Yossi's Heimishe Bakery Inc.,* No. 13–CV–5050, 2015 WL 1469619, at *3 (E.D.N.Y. Mar.30, 2015) (adopting report and recommendation, which noted that "[w]ith respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiffs' burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action" (citing *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir.2009) and *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 159 (2d Cir.1992))).

20    As discussed *infra* n. 2, Robert did not explicitly join Experian's motion to dismiss, but Experian and Robert are represented by counsel at the same law firm and Experian's memorandum of law in support of the motion to dismiss contains argument as to Robert.

**h. Plaintiffs will not be granted leave to amend**

"Generally, '[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Obot v. Sallie Mae,* —— F. App'x ——, 2015 WL 548202, at *2 (2d Cir. Feb.11, 2015) (alteration in original) (quoting *Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir.2014)). Plaintiffs have been granted leave to amend in all three of their actions, and Mr. Nguyen has been granted leave to file supplemental addenda to the Amended Complaints in 14–CV–3464 and 14–CV–3989. Plaintiffs have failed to address the deficiencies in their Complaints in accordance with the Court's prior orders, and the Court therefore dismisses all of Plaintiffs' federal claims

with prejudice. *See Shabtai v. Levande,* 38 F. App'x 684, 686–87 (2d Cir.2002) (affirming dismissal of *pro se* complaint after failure to file amended complaint that complied with Rule 8 of the Federal Rules of Civil Procedure, in accordance with district court's order). Plaintiffs will not be granted leave to further amend the Complaints.

**III. Conclusion**

For the foregoing reasons, the Court grants Defendants' motions to dismiss, with prejudice, all of Plaintiffs' federal claims and dismisses, without prejudice, Plaintiffs' state law claim. The Court denies Plaintiff's request for default judgments. The Clerk of the Court is directed to close these cases.

SO ORDERED;

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2354308

---

End of Document    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (3)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint**<br>Thomas NGUYEN, Plaintiff, v. RIDGEWOOD SAVINGS BANK and Peter Boger, Defendants.<br>2014 WL 12795457 | — | E.D.N.Y. | Apr. 11, 2014 | Motion |
| **2.  Docket 1:14cv03989**<br>NGUYEN ET AL v. SANTANDER BANK ET AL | — | E.D.N.Y. | June 26, 2014 | Docket |
| **3.  Docket 1:14cv01058**<br>NGUYEN v. RIDGEWOOD SAVINGS BANK ET AL | — | E.D.N.Y. | Feb. 18, 2014 | Docket |

**History (2)**

**Direct History (1)**

1. Nguyen v. Ridgewood Sav. Bank 🖉
   2015 WL 2354308 , E.D.N.Y. , May 15, 2015 , appeal dismissed (2nd Circ. 15-1928) ( Jul 24, 2015 ) , appeal
   dismissed (2nd Circ. 15-1929) ( Jul 28, 2015 ) , appeal dismissed (2nd Circ. 15-1927) ( Jul 29, 2015 )

**Related References (1)**

2. Nguyen v. Ridgewood Sav. Bank
   66 F.Supp.3d 299 , E.D.N.Y. , Dec. 17, 2014

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Phipps v. Experian, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 63 of 143

2020 WL 3268488

2020 WL 3268488
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Derrick PHIPPS, Plaintiff,
v.
EXPERIAN, Defendant.

20-CV-3368 (LLS)
|
Signed 06/15/2020

**Attorneys and Law Firms**

Derrick Phipps, Middletown, NY, pro se.

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

**\*1** Plaintiff brings this *pro se* action, for which the filing fee has been paid, under the Court's federal question jurisdiction, alleging that Defendant Experian, a consumer reporting agency, violated his rights under the Fair Credit Reporting Act ("FCRA"). For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this order.

STANDARD OF REVIEW

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555). But the Court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

BACKGROUND

Plaintiff asserts that Experian "intentionally, willfully, and knowingly" violated the FCRA when it "ignored several certified letters to remove fraudulent names, addresses, information, and inquiries" that appeared on his credit report. (ECF No. 1, at 1.)

The following allegations are taken from the complaint, which is not a model of clarity: On November 10, 2017, Plaintiff sent a letter to Experian requesting that it remove "false and negative information" that appeared on his credit report. (*Id.*) He received a report from Experian on November 29, 2017, stating that the information had been removed, but he maintains that Experian "updated name not addresses." (*Id.*) On December 18, 2017, Plaintiff sent another letter to Experian that included his "[driver's] license, social security card, electric bill and Affidavit with name and address." (*Id.*) On January 5, 2018, he received a report from Experian that "still show[ed] false information." (*Id.*)

**\*2** On February 6, 2020, Plaintiff sent a third letter to Experian, and attached "[p]olice and [i]dentity theft reports" in addition to his driver's license, Social Security card, and affidavit. (*Id.*) On February 27, 2020, he received a report from Experian that included the "same false and negative information" that he had requested it to remove. (*Id.*) Plaintiff sent a fourth letter on March 13, 2020, "stating false and fraudulent accounts and inquiries," and included an identity theft report and the same identifying information that he included in his previous letters. (*Id.*) In a letter dated March 28, 2020, Experian "acknowledg[ed]" the identity theft report and stated that it had "removed negative accounts" from Plaintiff's report. (*Id.*) Plaintiff asserts, however, that

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 64 of 143

Phipps v. Experian, Not Reported in Fed. Supp. (2020)
2020 WL 3268488

Experian's last report still contained "negative and false accounts" and that "previously removed names and addresses have reappeared with wrong birth date." (*Id.*)

Plaintiff seeks compensatory and punitive damages. (*Id.* at 2.)

## DISCUSSION

Congress enacted the FCRA to ensure that consumer reporting agencies "follow fair and equitable procedures in regard to the confidentiality, accuracy, relevancy, and proper utilization of consumer credit information." 15 U.S.C. § 1681(b). The FCRA therefore imposes a variety of requirements on consumer reporting agencies to verify the accuracy of credit information in general and in response to consumer disputes. *See id.* §§ 1681b–1681p. And it creates a private right of action against consumer reporting agencies for "negligent or willful violation of any duty imposed by the statute." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995) (citations omitted) (citing 15 U.S.C. §§ 1681n, 1681*o*).

Plaintiff's complaint implicates the FCRA's requirements that consumer reporting agencies follow reasonable procedures to assure accuracy in a consumer's credit report, § 1681e(b), investigate disputed information, §§ 1681i(a)(1)(A), 1681i(a)(5)(B), and block any information identified as resulting from identity theft, § 1681c-2(a)(1).

### A. Accuracy of Information

The FCRA requires that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer's credit report. 15 U.S.C. § 1681e(b). To succeed on claim that a consumer reporting agency failed to follow proper compliance procedures under § 1681e(b), a plaintiff must show that:

> (1) the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's

negligence proximately caused the plaintiff's injury.

*Gestetner v. Equifax Info. Servs. LLC*, ECF 1:18-CV-5665, 13, 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019) (emphasis and citations omitted); *see also Anderson v. Experian*, ECF 1:19-CV-8833, 9, 2019 WL 6324179, at *3 (S.D.N.Y. Nov. 26, 2019) (same).

If a consumer notifies a consumer reporting agency of an inaccuracy in the information it reports, the agency must conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). If after reinvestigation a consumer reporting agency determines that the disputed information is inaccurate, incomplete, or cannot be verified, the agency must delete or modify the disputed item of information. *Id.* § 1681i(a)(5)(A)(i).

If disputed information is deleted from a consumer's file following reinvestigation, the consumer reporting agency may not reinsert the information "unless the person who furnishes the information certifies that the information is complete and accurate."15 U.S.C. § 1681i(a)(5)(B)(i). And if the agency does reinsert any previously deleted information, it must provide notice to the consumer, within five business days, that the information has been reinserted. *Id.* § 1681i(a)(5)(B)(ii)-(iii).

**\*3** In actions under § 1681e and § 1681i, the threshold question is whether the disputed credit information is inaccurate. *Anderson*, 2019 WL 6324179, at *3; *see also Houston v. TRW Info. Servs., Inc.*, 707 F. Supp. 689, 691 (S.D.N.Y. 1989) ("The threshold question in a § 1681e(b) action is whether the challenged credit information is inaccurate. If the information is accurate no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary."); *Gestetner*, 2019 WL 1172283, at *2 ("[A] plaintiff asserting claims under § 1681i must demonstrate that the disputed information is inaccurate.") (quoting *Jones v. Experian Info. Solutions, Inc.*, 982 F. Supp. 2d 268, 272-73 (S.D.N.Y. 2013)).

A plaintiff must therefore identify the specific information on his credit report that is inaccurate and explain why the identified information is inaccurate. *See Magee v. Am. Express*, ECF 1:19-CV-8476, 6, 2019 WL 6030099, at *4 (S.D.N.Y. Nov. 12, 2019) (holding that plaintiff's

2020 WL 3268488

allegations that "delinquent payments" on his credit report should be removed because of a "mail fraud investigation" were "insufficient to suggest specific information on his reports was inaccurate"); *Gestetner*, 2019 WL 1172283, at *2 (dismissing complaint alleging that credit report "showed erroneous and inaccurate information," without "any explanation as to why" information was false, for failure to state claim under § 1681i and § 1681e(b)).

Here, Plaintiff fails to allege sufficient facts to make the threshold showing that his credit report contained inaccurate information. He asserts that he sent Experian letters requesting that it "remove fraudulent names, addresses, information and inquiries that appear on [his] credit report." (ECF No. 1, at 1.) In response, Experian "updated name not addresses," but subsequent reports still included "false and fraudulent accounts and inquiries." (*Id.*) Plaintiff never identifies the specific names, addresses, accounts, or other information he alleges are inaccurate. Nor does he explain why such information is inaccurate. Absent additional facts explaining why the disputed information and inquiries are false, Plaintiff has failed to plead an essential element of a claim under § 1681e(b) or § 1681i. *SeeGestetner*, 2019 WL 1172283, at *2.

Moreover, Plaintiff does not allege facts indicating that Experian failed to follow reasonable reinvestigation procedures. *See* § 1681i(a)(1)(A); *Jones*, 982 F. Supp. 2d 268, 272. Instead, Plaintiff implies that, on more than one occasion, Experian did reexamine his information, verify its accuracy, and remove inaccurate information, although he disputes its conclusions. (*See* ECF No. 1, at 1) ("[T]he outcome of the investigation by Experian employees was also quite predictable, the employee would incorrectly verify the existence of a continuing debt.").

Plaintiff states that in Experian's March 28, 2020 report, he "noticed previously removed names and addresses have reappeared with wrong birth date." (*Id.*) But the only indication that Experian previously deleted any information from Plaintiff's report is his allegation that in response to his November 10, 2017 letter, Experian "updated name not addresses." (ECF No. 1, at 1) He fails to identify the "name" that was "updated," the "names and addresses" that were later reinserted, and, crucially, whether the information that reappeared was the same information Experian removed in response to his disputes.

**B. Identity Theft**

*4  A consumer reporting agency has a duty to "block the reporting of any information" in a consumer's file that the consumer identifies as resulting from identity theft within four days of the agency receiving from the consumer: (1) proof of the identity of the consumer; (2) a copy of the identity theft report; (3) the identification of the information resulting from the alleged identity theft; and (4) a statement by the consumer affirming that the disputed information does not relate to any transaction by the consumer. 15 U.S.C. § 1681c-2(a). A consumer reporting agency may decline to block or rescind a block under certain circumstances, including if it determines that the block was based on a material misrepresentation by the consumer. *Id.* § 1681c-2(c)(1). If a consumer reporting agency declines a request to block information, it must notify the consumer within five business days. *Id.* § 1681c-2(c)(2) (referencing § 1681i(a)(5)(B)).

Plaintiff alleges that on February 6, 2020, he sent Experian a "[p]olice and [i]dentity theft report, drivers license, social security card," and affidavit. (ECF No. 1, at 1.) On February 27, 2020, he received a report that and "the same false and negative information remained on my report without no written veri[fi]cation or permissible purpose given." (*Id.*) On March 13, 2020, Plaintiff sent another notice to Experian "stating false and fraudulent accounts and inquiries," and again included his driver's license, social security card, police and identity theft reports, and an affidavit. (*Id.*) In a March 28, 2020 report, Experian "acknowledg[ed]" the identity theft and police reports and stated it had "removed negative accounts," but Plaintiff maintains that the reports "had [the] same negative and false accounts." (*Id.*)

Plaintiff's allegations appear to suggest that Experian did not comply with the time frames prescribed by § 1681c-2. But it is also unclear from the complaint whether he provided Experian with the required information. For example, as is the case with his other allegations, Plaintiff does not identify the information on his report that he alleges is the result of identity theft, nor does he plead any of the facts included in the affidavit he sent to Experian.

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *SeeHill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v.*

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 66 of 143

Phipps v. Experian, Not Reported in Fed. Supp. (2020)

2020 WL 3268488

*Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under the FCRA, the Court grants Plaintiff sixty days' leave to amend his complaint to detail his claims.

Should Plaintiff choose to replead his claims, to the greatest extent possible, he must (1) identify the specific information that Experian reported that he alleges is inaccurate; (2) explain why the information is inaccurate; (3) identify the specific pieces of information that Experian removed and reinserted; (4) plead any facts suggesting Experian failed to follow reasonable procedures in verifying information generally or in response to his inquiries; (5) identify the specific information on his credit report that he alleges is the result of identity theft, and plead facts showing that he provided Experian with the information required under § 1681c-2(a) and that it failed to comply with its duties under the statute. **Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.**

## CONCLUSION

**\*5** The Clerk of Court is directed to mail a copy of this order to Petitioner and note service on the docket. Petitioner is directed to file an amended petition that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 20-CV-3368 (LLS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ Civ. _____ ( ___ )

(In the space above enter the full name(s) of the plaintiff(s).)

AMENDED
COMPLAINT

-against-

Jury Trial:  ☐ Yes   ☐ No
                      (check one)

(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)

I.    Parties in this complaint:

A.    List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiff named. Attach additional sheets of paper as necessary.

Plaintiff    Name _____
             Street Address _____
             County, City _____
             State & Zip Code _____
             Telephone Number _____

B.    List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Rev. 12/2009                                                    1

Defendant No. 1    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant No. 2    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant No. 3    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant No. 4    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

II.    Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.    What is the basis for federal court jurisdiction? (check all that apply)
      ☐ Federal Questions          ☐ Diversity of Citizenship

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____
      _____
      _____

C.    If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?
      Plaintiff(s) state(s) of citizenship _____
      Defendant(s) state(s) of citizenship _____

Rev. 12/2009                                                    2

Phipps v. Experian, Not Reported in Fed. Supp. (2020)

2020 WL 3268488

III.   Statement of Claim:

State as briefly as possible the facts of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.   Where did the events giving rise to your claim(s) occur? _____

B.   What date and approximate time did the events giving rise to your claim(s) occur? _____

C.   Facts: _____

What happened to you?

Who did what?

Was anyone else involved?

Who else saw what happened?

IV.   Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____

*Rev. 12/2009*   3

V.   Relief:

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. _____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___ day of _____, 20___.

Signature of Plaintiff _____
Mailing Address _____
_____
_____
Telephone Number _____
Fax Number *(if you have one)* _____

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: _____
Inmate Number _____

*Rev. 12/2009*   4

## All Citations

Not Reported in Fed. Supp., 2020 WL 3268488

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:20-CV-03368**<br>Phipps v. Experian | — | S.D.N.Y. | Apr. 27, 2020 | Docket |

**History (4)**

**Direct History (1)**

1. Phipps v. Experian 👓
   2020 WL 3268488 , S.D.N.Y. , June 15, 2020

**Related References (3)**

2. Phipps v. Experian Information Solutions, LLC
   2022 WL 4280427 , S.D.N.Y. , Sep. 15, 2022

3. Phipps v. Experian Information Solutions, LLC
   2023 WL 6215304 , S.D.N.Y. , Sep. 23, 2023

   *Affirmed by*

4. Phipps v. Experian Information Solutions, LLC
   2024 WL 5001842 , 2nd Cir.(N.Y.) , Dec. 06, 2024

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 7169119

2023 WL 7169119
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Erisa MOORE, Plaintiff,
v.
EXPERIAN and TransUnion, Defendants.

CIVIL ACTION NO. 23 Civ. 673 (PAE) (SLC)
|
Signed October 13, 2023

**Attorneys and Law Firms**

Erisa Moore, Bronx, NY, Pro Se.

Victoria Dorfman, Jones Day, Washington, DC, Justin Harris, Jones Day, New York, NY, for Defendant Experian.

Camille Renee Nicodemus, Schuckit & Associates, P.C., Zionsville, IN, for Defendant TransUnion.

**REPORT AND RECOMMENDATION**

SARAH L. CAVE, United States Magistrate Judge.

**\*1 TO THE HONORABLE PAUL A. ENGELMAYER**, United States District Judge

**I. INTRODUCTION**

Pro se Plaintiff Erisa Moore ("Ms. Moore") asserts claims for "[d]efamation of character" and an "[i]naccurate [c]onsumer report" against Defendants Experian and TransUnion (collectively, "Defendants"). (ECF No. 1-1 (the "Complaint")). Experian moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Experian's Motion"), and TransUnion moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(c) ("TransUnion's Motion," together with Experian's Motion, "Defendants' Motions"). (ECF No. 13). In opposition, Ms. Moore submitted a Proposed Amended Complaint (ECF No. 18 (the "PAC")), which the Court construes to be a cross-motion to amend the Complaint under Federal Rule of Civil Procedure 15(a)(2) ("Ms. Moore's Motion"). (ECF No. 19). The PAC asserts proposed claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. (the "FCRA"), as well as identity theft and frauds and swindles under

federal and New York state criminal statutes. (ECF No. 18 at 3–6). Specifically, Ms. Moore claims that her consumer reports in 2021 and 2023 were "incomplete, inaccurate, and [contained] false information," and that Defendants conducted an "unauthorized investigation" which negatively affected her credit. (Id. at 18 ¶¶ 7–19). Defendants oppose Ms. Moore's Motion. (ECF No. 22).

For the reasons set forth below, the Court respectfully recommends that Defendants' Motions be GRANTED, Ms. Moore's Motion be DENIED, leave to amend be DENIED, and the action be dismissed with prejudice.

**II. BACKGROUND**

**A. Factual Background**[1]

[1]     The following facts are drawn from Ms. Moore's allegations in the Complaint and in the PAC with annexed exhibits, which the Court presumes to be true for purposes of deciding Defendants' Motions. See Spoleto Corp. v. Ethiopian Airlines Grp., Inc., No. 21 Civ. 5407 (PAE), 2022 WL 329265, at *1 n. 1 (S.D.N.Y. Feb. 3, 2022), aff'd, 2022 WL 17574469 (2d Cir. Dec. 12, 2022) (summary order). The Court also considers the credit disclosure Experian sent to Ms. Moore on March 9, 2023 (ECF No. 22-1), as incorporated by reference in the PAC and integral to the PAC because: (i) Ms. Moore discusses its contents in the PAC (ECF No. 18 ¶ 17), (ii) Ms. Moore attaches part of the document to the PAC (compare ECF No. 18-4 at 2–4 with ECF No. 21-1 at 2–5), and (iii) Ms. Moore has not disputed its authenticity. See, e.g., Rosenberg v. Loandepot, Inc., No. 21 Civ. 8719 (PMH), 2023 WL 1866871, at *3 (S.D.N.Y. Feb. 9, 2023) (considering a "statement of dispute" attached to defendant's motion because it was referenced in the complaint and integral to plaintiff's claims); Boyer v. TransUnion, LLC, No. 21 Civ. 918 (KAD), 2023 WL 1434005, at *2 n.1 (D. Conn. Feb. 1, 2023) (considering as integral to the complaint a credit report plaintiff referenced in the complaint and defendant attached to its motion); see also Hello I Am Elliot, Inc. v. Sine, No. 19 Civ. 6905 (PAE), 2020 WL 3619505, at *3 n.3 (S.D.N.Y. July 2, 2020) (considering integral documents submitted in connection with a

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 72 of 143

Moore v. Experian, Not Reported in Fed. Supp. (2023)

2023 WL 7169119

motion to dismiss in the absence of a dispute as to the documents' authenticity) (citing DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010)).

**\*2** At an unspecified time, Ms. Moore "wanted to obtain a car" and was attempting to build her credit to "provide for [her] family." (ECF No. 18 ¶ 7). In 2021, Ms. Moore obtained a copy of her consumer report and determined that it contained "incomplete, inaccurate, and false information." (Id.) In 2021, Ms. Moore disputed the "accuracy of the debt for Capital One." (Id. ¶ 8). In 2023, Ms. Moore lodged disputes regarding her debt with "Victoria Secret" and "Amsher Collections" ("Amsher"). (Id.) Her report, however, remained "incomplete, inaccurate, and with false information." (Id.) Ms. Moore filed a lawsuit against Capital One (the "Capital One Action"),[2] and lodged a dispute with Experian. (Id. ¶ 9).

[2]    The Capital One Action was initially filed in the Supreme Court of the State of New York, County of Bronx, and was subsequently removed to this District. See Notice of Removal, Moore v. Cap. One Bank (USA), N.A., No. 21 Civ. 9654 (S.D.N.Y. Nov. 22, 2021), ECF No. 1. The Honorable Jesse M. Furman dismissed Ms. Moore's complaint and entered judgment in favor of the defendants in the Capital One Action. Moore v. Cap. One Bank (USA), N.A., No. 21 Civ. 9654 (JMF), 2022 U.S. Dist. LEXIS 123221, at \*2 (S.D.N.Y. July 12, 2022).

Experian and TransUnion conducted an investigation, which Ms. Moore characterizes as "[i]dentity theft," "unauthorized," and lacking a "protocol in place to protect [her] credit file." (ECF No. 18 ¶ 10). She claims that Experian and TransUnion "allowed their legal counsel to submit a dispute without [her] consent or request and they accepted it." (Id. ¶ 11). Experian and TransUnion did not "seek [her] participation or permission." (Id.) As part of the investigation, Experian and TransUnion sent "[f]alse and misleading statements" to Capital One, Victoria Secret, and Amsher. (Id. ¶ 12). On February 17, 2023, Ms. Moore mailed a handwritten letter to TransUnion providing "notice of [her] dissatisfaction with the unauthorized dispute and other issues." (Id. ¶ 13; see ECF No. 18-1 at 2–4 (the "Letter")). In the Letter, Ms. Moore informed TransUnion of her belief that her report contained inaccurate information, including with respect to her accounts with Capital One and Victoria Secret. (ECF No. 18-1 at 2–4, 7). In an attachment to the Letter,

Ms. Moore stated that (i) the balance on her Capital One account was too high and that the "fall off date" TransUnion provided was different than that provide by Experian and Equifax, and (ii) her Victoria Secret account reflected an inaccurate "[l]ast payment made" and inaccurate "[p]ayment received," in addition to reporting a different "[f]all off date" than Experian and Equifax. (Id. at 7). In response to the Letter, TransUnion did not submit a dispute or otherwise take action. (ECF No. 18 ¶ 13).

In March 2023, Amsher was "removed from the Plaintiff's credit file ... by [Experian and TransUnion]." (ECF No. 18 ¶ 14). On March 1, 2023, Experian documented that Ms. Moore had submitted an "authorized dispute." (Id. ¶ 15). On March 5, 2023, Ms. Moore asked Experian to provide a "description of the procedure for the results of the authorized dispute, and provided an Affidavit of Truth [(the "Affidavit")] against the unauthorized dispute." (Id. ¶ 16; see ECF No. 18-3 at 5–7). In a February 1, 2023 email to counsel for Experian (the "Email"), Ms. Moore listed purported inaccuracies concerning Capital One in her credit report, including, inter alia, that (i) incomplete data, (ii) inaccurate balances, (iii) inaccurate dates of closure of the account, (iv) an inaccurate credit limit, (v) an incorrect fall off date, and (iv) incorrect comments. (ECF No. 18-3 at 2).

Experian did not respond to the Affidavit. (ECF No. 18 ¶ 16). On March 9, 2023, Ms. Moore received from Experian "[d]ispute results from another unauthorized investigation," which she claims she had not requested and to which she did not consent. (Id. ¶ 17; see ECF No. 18-4 at 2–4 and ECF No. 21-1 at 2–5 (the "Investigation Results")). On the Investigation Results, Ms. Moore hand-wrote that the reported balance of $792 in the investigation results as inaccurate and circled other items as being false or incomplete, although it is unclear the extent to which she communicated these issues to Experian. (ECF No. 18-4 at 2-4).

**\*3** Ms. Moore characterizes Defendants' actions as "identity theft" and "mail fraud," and claims to have suffered damages in the form of "[m]ental and emotional distress, severe humiliation, experiencing low credit expectancy, ruined credit reputation, tampered credit file, prolonging an important purchase, and limiting the Plaintiff's ability to provide [for her] family['s] needs." (ECF No. 18 ¶¶ 18–19).

**B. Procedural Background**

2023 WL 7169119

On or about November 7, 2022, Ms. Moore filed a Summons with Endorsed Complaint in New York State Court, in the Civil Court of the City of New York, County of Bronx. (ECF No. 1-1). The Complaint contained only two allegations: "Other for $10,000.00 with interest from 10/22/2021. Defamation of Character, Inaccurate Consumer report." (Id.) On January 26, 2023, Defendants removed the case to this Court. (ECF No. 1). On February 1, 2023, TransUnion filed an Answer to the Complaint. (ECF No. 11).

On March 6, 2023, Experian moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), and TransUnion moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(c). (ECF No. 13). After Ms. Moore missed the March 20, 2023 deadline to oppose Defendants' Motions, the Court sua sponte extended her deadline to March 29, 2023. (ECF No. 17). On March 30, 2023, rather than opposing Defendants' Motions, Ms. Moore filed the PAC, which asserts eleven claims for relief under the following statutes: 15 U.S.C. § 1681b (first claim) (the "Section 1681b Claim"); 15 U.S.C. §§ 1681i(a)(2), 1681i(a)(4), 1681i(a)(5), 1681i(a)(6)(a), 1681i(a)(6)(b)(iii), and 1681i(a)(7) (second through seventh claims) (the "Section 1681i Claims"); New York General Business Law § 380-s (eighth claim) (the "Identity Theft Claim"); and 18 U.S.C. §§ 1028(a)(7), 1028A, and 1341 (ninth through eleventh claims) (the "Federal Criminal Claims"). (ECF No. 18 ¶¶ 20–66).[3] The PAC omitted a defamation claim that Ms. Moore had asserted in the Complaint (the "Defamation Claim"). (See ECF No. 18).

[3]  The Court notes that the PAC is not signed (or dated), and therefore does not comply with Federal Rule of Civil Procedure 11(a). Should this Report and Recommendation not be adopted such that the PAC would survive Defendants' Motions, in whole or in part, Ms. Moore should be directed to file a signed copy of the PAC.

Because, under Federal Rule Civil Procedure 15, Ms. Moore could not amend as of right and without leave of the Court or consent of the parties, the Court: (i) construed the PAC as a motion to amend the Complaint, (ii) deemed Defendants' Motions as directed to the allegations in the PAC, and (iii) ordered Defendants to file a reply by April 14, 2023. (ECF No. 19). On April 14, 2023, Defendants filed a reply. (ECF No. 22). The Honorable Paul A. Engelmayer has referred this matter to the undersigned for general pretrial supervision

and to issue a Report and Recommendation on Defendants' Motions. (ECF No. 16).

## III. DISCUSSION

### A. Legal Standards

**1. Motions to Dismiss under Rules 12(b)(6) and 12(c)**
In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013); Blackson v. City of N.Y., No. 14 Civ. 452 (VEC), 2014 WL 6772256, at *2 (S.D.N.Y. Dec. 2, 2014).[4] "[T]he Court must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " Blackson, 2014 WL 6772256, at *2 (quoting Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); see Myers v. City of N.Y., No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *2 (S.D.N.Y. Aug. 29, 2012) (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937). A complaint "cannot withstand a motion to dismiss unless it contains factual allegations sufficient to raise a 'right to relief above the speculative level.' " Blackson, 2014 WL 6772256, at *2 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. For purposes of Rule 12(b)(6), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

[4]  Internal citations and quotation marks are omitted unless otherwise indicated.

*4 "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Palin v. N.Y. Times Co., No. 17 Civ. 4853 (JSR), 2020 WL 353455, at *2 (S.D.N.Y. Jan. 21, 2020) (quoting Hogan v. Fischer, 738 F.3d 509, 514–15 (2d Cir. 2013)).

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 74 of 143

Moore v. Experian, Not Reported in Fed. Supp. (2023)

2023 WL 7169119

### 2. Motion to Amend

Federal Rule of Civil Procedure 15 provides that a court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities." Monahan v. NYC Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000) ("Rule [15] reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, and 'mere technicalities' should not prevent cases from being decided on the merits").

The Second Circuit has explained that "district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000). This District has held that a Court should deny a motion to amend where "(1) the movant is guilty of undue delay, (2) the movant has acted in bad faith, (3) the amendment would be futile, or (4) the amendment would prejudice the opposing party." Procter & Gamble Co. v. Hello Prods., LLC, No. 14 Civ. 649 (VM) (RLE), 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015) (citing State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see also Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam) (reiterating Supreme Court precedent that finds proper grounds for denying a motion to amend as "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment") (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). "Consistent with the liberal principles underlying Rule 15(a)(2), the party opposing the amendment has the burden of establishing that leave to amend would be unduly prejudicial or futile." Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am., No. 18 Civ. 8152 (JFK), 2021 WL 4991422, at *5 (S.D.N.Y. Oct. 27, 2021).

"Where a plaintiff seeks to amend [her] complaint while a motion to dismiss is pending, a court 'may either deny the pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading.' " Cotto v. Fed. Nat'l Mortg. Ass'n, No. 20 Civ. 6487 (MKV), 2021 WL 4340668, at *4 (S.D.N.Y. Sept. 22, 2021) (quoting Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d 299, 303 (2d Cir. 2020)). Accordingly, here, the Court

analyzes Defendants' arguments against the sufficiency of the PAC. (ECF No. 19). See MB v. Islip Sch. Dist., No. 14 Civ. 4670 (SJF) (GRB), 2015 WL 3756875, at *4 (E.D.N.Y. June 16, 2015) (collecting cases); Conforti v. Sunbelt Rentals, Inc., 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016) ("[F]or the purpose of procedural efficiency, the Court, in its discretion, considers the Defendants' sufficiency arguments, along with their futility arguments, in light of the [proposed amended complaint]").

### 3. The FCRA

**\*5** "The FCRA regulates consumer credit reporting agencies ["CRAs"] to ensure accuracy, confidentiality, relevancy, and proper utilization of consumer credit information." Perez v. Experian, No. 20 Civ. 9119 (PAE) (JLC), 2021 WL 4784280, at *5 (S.D.N.Y. Oct. 14, 2021) ("Perez I"), adopted by 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021). "The FCRA creates a private right of action against [CRAs] for the negligent or willful violation of any duty imposed under the statute." Braun v. United Recovery Sys., LP, 14 F. Supp. 3d 159, 165 (S.D.N.Y. 2014).

Section 1681b "generally specifies the circumstances under which a consumer report may be furnished and used[,]" Braun, 14 F. Supp. 3d at 165, and "protects consumer privacy by limiting access to consumer credit reports." Perl v. Am. Express, No. 12 Civ. 4380 (ER), 2012 WL 2711270, at *2 (S.D.N.Y. July 9, 2012). As distinguished from many other provisions of the FCRA regulating CRAs, liability under Section 1681b typically attaches to "third parties who willfully or negligently 'use or obtain' a consumer report for an impermissible purpose." Rajapakse v. Shaw, No. 20 Civ. 10473 (VEC) (OTW), 2022 WL 1051108, at *5 (S.D.N.Y. Feb. 18, 2022), adopted by 2022 WL 855870 (S.D.N.Y. Mar. 23, 2022). A CRA may be liable where a third party accessed or used a consumer report for an impermissible purpose if the CRA "either willfully or negligently fail[ed] to maintain reasonable procedures designed to avoid violations of" Section 1681b.[5] Pietrafesa v. First Am. Real Estate Info. Servs., No. 05 Civ. 1450 (LEK) (RFT), 2007 WL 710197, at *3 (N.D.N.Y. Mar. 6, 2007); see Podell v. Citicorp Diners Club, 859 F. Supp. 701, 705 (S.D.N.Y. 1994) (noting that Section 1681b "limits the purposes and uses of a credit report," and that the FCRA "imposes civil liability upon [CRAs] ... who willfully or negligently violate the [FCRA]"). To determine whether the CRA maintained reasonable procedures, "the standard of

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 75 of 143

Moore v. Experian, Not Reported in Fed. Supp. (2023)

2023 WL 7169119

conduct is what a reasonably prudent person would do under the circumstances." Hines, 2022 WL 2841909, at *23.

5    The provision of the FCRA providing that CRAs must maintain reasonable procedures to avoid violations of Section 1681b is Section 1681e(a), which provides that "[e]very [CRA] shall maintain reasonable procedures designed to ... limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). The Court construes the Section 1681b Claim as if brought pursuant to both Sections 1681b and 1681e(a), and, as other courts have done, analyzes these claims together. See Hines v. Equifax Info. Servs., LLC, No. 19 Civ. 6701 (RPK) (RER), 2022 WL 2841909, at *23 (E.D.N.Y. July 16, 2022) (report and recommendation).

Section 1681i outlines the "procedures [CRAs] must follow to investigate disputes as to the accuracy of reported information," including "reinvestigating a consumer's record within a reasonable period of time after a consumer 'directly conveys' a dispute as to the 'completeness or accuracy of an item on his credit report' to the [CRA]." Khan v. Equifax Info. Servs., LLC, No. 18 Civ. 6367 (MKB), 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019) (quoting Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997)). If a consumer files a dispute with the CRA, Section 1681i imposes on "both the [CRA] and the furnisher of the disputed information [ ] a duty to reinvestigate the dispute." Nguyen v. Ridgewood Sav. Bank, 66 F. Supp. 3d 299, 304 (E.D.N.Y. 2014); see also Fashakin v. Nextel Commc'ns, No. 5 Civ. 3080 (RRM), 2009 WL 790350, at *10 (E.D.N.Y. Mar. 25, 2009) ("Where credit information is disputed, § 1681i(a) requires [CRAs] to 'conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.' " (quoting 15 U.S.C. 1681i(a)(1)(A))). CRAs have thirty days to conduct a reinvestigation after receiving "notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a) (1)(A). "If after reinvestigation a [CRA] determines that the disputed information is inaccurate, incomplete, or cannot be verified, the agency must delete or modify the disputed item of information." Phipps v. Experian, No. 20 Civ. 3368 (LLS), 2020 WL 3268488, at *2 (S.D.N.Y. June 15, 2020). To state a claim under Section 1681i, "the plaintiff must [ ] plausibly allege that the disputed information is inaccurate." Thompson v. Equifax Info. Servs. LLC, No. 20 Civ. 6101 (RPK) (ST), 2022 WL 2467662, at *8 (E.D.N.Y. Feb. 24, 2022); see Gestetner v. Equifax Info. Servs. LLC, No. 18 Civ. 5665 (JFK), 2019 WL 2343659, at *1 (S.D.N.Y. June 3, 2019)

(same). A credit report is inaccurate "either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." Perez I, 2021 WL 4784280, at *9.

### 4. Pro Se Considerations

*6    "It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to 'raise the strongest arguments that they suggest.' " Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Courts undertake to "ensure that inexperienced pro se litigants do not inadvertently forfeit rights or winning arguments," Tartt v. City of N.Y., No. 12 Civ. 5405 (VEC), 2014 WL 3702594, at *2 (S.D.N.Y. July 16, 2014), and therefore apply "a more flexible standard to evaluate the[ ] sufficiency [of their complaints] than ... when reviewing a complaint submitted by counsel." Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 140 (2d Cir. 2000); see Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

## B. Application

### 1. FCRA Claims

#### a. Section 1681b Claim

Ms. Moore claims that Defendants violated Section 1681b by failing to certify that Amsher (i) had legal or lawful authority to procure her consumer report, and (ii) would use the consumer report lawfully. (ECF No. 18 ¶¶ 20–21). Defendants argue that the Section 1681b Claim fails because (i) Ms. Moore does not plausibly allege that Defendants sent the consumer report to Amsher, and (ii) the PAC fails to plausibly allege that Amsher obtained her credit report for an impermissible purpose. (ECF No. 22 at 6–7).

As an initial matter, Section 1681b primarily imposes liability upon users of consumer reports who obtain them for an impermissible purpose, rather than the CRAs who furnish consumer reports. (See § III(A)(3), supra). Here, the Section 1681b Claim against the CRAs fails because the PAC does not allege that Defendants provided Ms. Moore's consumer report to the alleged user, Amsher. With respect to Amsher, the PAC merely alleges that (i) Ms. Moore disputed the accuracy of her debt with Amsher in 2023, (ii) Defendants sent unidentified

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 76 of 143

Moore v. Experian, Not Reported in Fed. Supp. (2023)

2023 WL 7169119

"[f]alse and misleading information/statements" to Amsher at an unspecified time, and (iii) Amsher was removed from Ms. Moore's file in March 2023. (ECF No. 18 ¶¶ 8, 12, 14). The PAC does not allege that Defendants provided Ms. Moore's consumer report to Amsher, which is fatal to any claim that Defendants impermissibly shared her report.[6]

[6]     To the extent that the PAC can be read to allege that Amsher requested, procured and/or used Ms. Moore's credit report for an impermissible purpose (see ECF No. 18 at ¶ 20), that claim would fail because Amsher is not a party to this litigation and Ms. Moore does not allege any basis for imputing liability for Amsher's actions to Defendants.

Even if the PAC could be read to allege that Defendants furnished a consumer report to Amsher or that the allegedly "[f]alse and misleading" information (ECF No. 18 ¶ 12) was sufficient to constitute a consumer report, the Section 1681b Claim would still fail because Ms. Moore does not plausibly allege that Amsher sought or used the information for an impermissible purpose or that Defendants "either willfully or negligently fail[ed] to maintain reasonable procedures" to prevent an improper furnishing of information. Pietrafesa, 2007 WL 710197, at *3; see Selvam v. Experian Info. Sols., Inc., No. 13 Civ. 6078 (DLI)(JO), 2015 WL 1034891, at *4 (E.D.N.Y. Mar. 10, 2015) (granting motion to dismiss where plaintiff failed to allege how the CRA acted unreasonably). The statement that "Defendants Experian and TransUnion have done so either negligently and/or willfully" (ECF No. 18 ¶ 23) is conclusory language that simply tracks the statute in a formulaic manner and is insufficient to state a claim. See Selvam, 2015 WL 1034891, at *3 (holding that statements that "Defendants 'willfully failed to comply' and 'negligently failed to comply' with the FCRA ... are conclusory and amount to nothing more than the formulaic recitation of the elements of a cause of action").

**\*7**  Accordingly, I respectfully recommend that the Section 1681b Claim be DISMISSED.

### b. Section 1681i Claims

Ms. Moore claims that Defendants' investigation of her disputes violated Section 1681i. (ECF No. 18 ¶¶ 25-48).[7] Defendants argue that the PAC fails to plausibly allege that (i) the reported information was inaccurate, and (ii) their reinvestigations were unreasonable. (ECF No. 22 at 7–11).

[7]     Specifically, Ms. Moore alleges that both Defendants violated 15 U.S.C. §§ 1681i(a)(2), 1681i(a)(4), and 1681i(a)(5); Experian violated 15 U.S.C. §§ 1681i(a)(6)(b)(iii) and 1681i(a)(7); and TransUnion violated 15 U.S.C. § 1681i(a)(6)(a). (Id.)

### i. Inaccurate Information

A threshold requirement for Ms. Moore's Section 1681i Claims is the inaccuracy of the information in her credit report. (See § III(A)(3), supra). Here, the PAC alleges that Ms. Moore's consumer report in 2021 and 2023 contained "incomplete, inaccurate, and false information." (ECF No. 18 ¶¶ 7–8). Ms. Moore's Letter to TransUnion in 2023 informed TransUnion of her belief that her report contained inaccurate information, specifically with respect to her accounts with Capital One and Victoria Secret. (ECF No. 18-1 at 2–7). In the Letter, Ms. Moore disputed the balance and "fall off dates" on her Capital One and Victoria's Secret accounts. (Id. at 7). In the Affidavit, Ms. Moore informed Experian of her dispute. (ECF No. 18-3 at 2–7). In the Email to counsel for Experian, Ms. Moore also listed purported inaccuracies concerning Capital One in her credit report. (Id. at 2). Finally, Ms. Moore disputed the results of Experian's investigation, as indicated in her handwritten comments on the Investigation Results. (ECF No. 18-4 at 2–3).

While the allegation in the PAC that Ms. Moore's consumer reports contained "incomplete, inaccurate, and false information" (ECF No. 18 ¶¶ 7–8) is conclusory (ECF No. 22 at 9), when considered together with the Letter, the Affidavit, the Email, the Investigation Results, and the other documents attached to the PAC, Ms. Moore has met her minimal burden at the pleading stage to plausibly allege that Defendants reported inaccurate information about her credit. See Perez I, 2021 WL 4784280, at *10 (where plaintiff alleged that "the CRAs reported inaccurate information in his trade lines, including his Capital Bank balance, Verizon Wireless balance, Best Buy balance, as well as other accounts," holding that, "the Court finds that [plaintiff] satisfies the threshold requirement as he has alleged his credit information is not accurate"). Ms. Moore has therefore satisfied the first element of her Section 1681i Claims.

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 77 of 143

Moore v. Experian, Not Reported in Fed. Supp. (2023)

2023 WL 7169119

#### ii. Manner of Investigations

Ms. Moore's Section 1681i Claims falter, however, because the PAC does not plausibly allege that Defendants failed to conduct reinvestigations or that those reinvestigations were unreasonable. Indeed, Ms. Moore's chief complaint seems to be that, although she lodged disputes with Defendants as to the accuracy of certain information contained in her consumer reports, Defendants investigated those complaints, but somehow lacked authorization. (See ECF No. 18 ¶¶ 10–17). Ms. Moore's allegations, taken as true, therefore demonstrate that Defendants did conduct an investigation at her request. The gravamen of Ms. Moore's Section 1681i Claims—that Defendants should not have investigated her disputes and that doing so constituted identity theft and fraud—belies her assertion that different or more thorough investigations were required under Section 1681i. Because most of the allegations on the PAC pertain to Ms. Moore's theory that the investigations should not have been initiated in the first place—despite her admission that she lodged the disputes—she has not plausibly alleged facts to support an inference that Defendants' investigations into her disputes violated Section 1681i. The PAC otherwise contains conclusory recitals of the elements of each subsection of Section 1681i (ECF No. 18 ¶¶ 25–48), which is insufficient to state Section 1681i Claims. See Perez I, 2021 WL 4784280, at *10–11 (granting motion to dismiss for lack of allegations plausibly supporting willful or negligent noncompliance with Section 1681i); Nguyen v. Ridgewood Sav. Bank, No. 14 Civ. 1058 (MKB), 2015 WL 2354308, at *11 (E.D.N.Y. May 15, 2015) (granting motion to dismiss where plaintiff failed to allege deficiencies in "the procedures followed or investigations by [the CRAs] in response to [plaintiff's] complaints" and offered only "conclusory and broad allegations of fraud and deceptive practices").

**\*8** Accordingly, I respectfully recommend that the Section 1681i Claims be DISMISSED.

#### 2. Remaining Claims

#### a. Federal Criminal Claims

Ms. Moore claims that Defendants' actions violated federal criminal statutes and constituted mail fraud (18 U.S.C. § 1028), aggravated identity theft (18 U.S.C. § 1028A), and frauds and swindles (18 U.S.C. § 1341). (ECF No. 18 ¶¶

53–66). None of these statutes, however, provides a private right of action. See Pharr v. Evergreen Garden, Inc., 123 F. App'x 420, 422 (2d Cir. 2005) (summary order) (explaining that "[t]he law in this circuit is clear that" 18 U.S.C. § 1341 "does not support any private right of action"); Chance v. Selip & Stylianou, LLP, No. 22 Civ. 3314 (LTS), 2022 WL 1556038, at *4 (S.D.N.Y. May 16, 2022) (explaining that "there is no private right of action authorizing an individual to bring suit under [18 U.S.C. § 1028A]"); Clark v. Student Loan Fin. Corp., No. 18 Civ. 9354 (JPO), 2019 WL 4412571, at *2 (S.D.N.Y. Sept. 16, 2019) (explaining that "[s]ection 1028 also does not supply a private right of action").

Accordingly, I respectfully recommend that the Federal Criminal Claims be DISMISSED.

#### b. Identity Theft Claim

Ms. Moore claims that Defendants' actions constitute identity theft under New York General Business Law § 380-s. (ECF No. 18 ¶¶ 49–52). Defendants argue that the PAC fails to state a prima facie claim for identity theft. (ECF No. 22 at 12).

Sections 380-i and 380-s "create[ ] a cause of action for a victim of identity theft to sue any person who engages in identity theft if the theft results in the transmission of certain information about the consumer to a [CRA]." Abergel v. Santander Bank, No. 19 Civ. 6535 (CM), 2019 WL 4141668, at *3 (S.D.N.Y. Aug. 30, 2019) (citing Galper v. JP Morgan Chase Bank, N.A., 802 F.3d 437, 441 (2d Cir. 2015) (citing N.Y. Gen. Bus. L. §§ 380-i, 380-s)). In this context, identity theft is defined to include "the knowing and intentional fraudulent use of something of value in the name of another person without that person's consent." Prignoli v. Bruczynski, No. 20 Civ. 907 (MKB), 2021 WL 4443895, at *9 (E.D.N.Y. Sept. 28, 2021) (citing Galper, 802 F.3d at 442). New York law "authorizes a civil action only if the identity theft 'resulted in the transmission or provision to a [CRA] of information that would otherwise not have been transmitted or provided.' " Galper, 802 F.3d at 442 (quoting N.Y. Gen. Bus. L. § 380-i). [8]

---

[8]  The statutes in question provide a right of action against an identity thief whose actions result in the transmission of information to a CRA, see Galper, 802 F.3d at 442, as opposed to a right of action against a CRA. See N.Y. Gen. Bus. L. §§ 380-I,

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 78 of 143

*Moore v. Experian*, Not Reported in Fed. Supp. (2023)

2023 WL 7169119

380-s. The Court therefore doubts whether Sections 380-l and 380-s create a private right of action against CRAs for identity theft.

Here, the PAC does not plausibly allege that Defendants engaged in identity theft. Ms. Moore offers only nonspecific and conclusory allegations, i.e., that "[Defendants] both took part in [i]dentity theft to conduct an unauthorized investigation," and "[t]he identity theft committed also involved mail fraud." (ECF No. 18 ¶¶ 10, 18). These allegations are insufficient to plausibly support that Defendants knowingly and intentionally engaged in fraudulent use of Ms. Moore's credit information. See Prignoli, 2021 WL 4443895, at *9 (granting motion to dismiss because "conclusory allegations that ... Defendants engaged in an 'illegal scheme' to 'misappropriate' Plaintiff's funds and 'participated in identity theft' are insufficient to state a claim under GBL § 380-s"); Abergel, 2019 WL 4141668, at *3 (holding that plaintiff failed to state a claim under Section 380-s because "Plaintiff does not allege that Defendant [ ] or its employees engaged in identity theft"); see also Bisceglia v. Recovery Racing, LLC, No. 654335/2022 (LEF), 2023 WL 2113337, at *2 (Sup. Ct. N.Y. Cnty. Feb. 17, 2023) (dismissing Section 380-s claim where complaint lacked any factual allegations of identity theft).

**\*9** Accordingly, I respectfully recommend that the Identity Theft Claim be DISMISSED.

### c. Defamation

Ms. Moore asserted a Defamation Claim against Defendants in the original Complaint (see ECF No. 1-1), but omitted that claim in the PAC (see ECF No. 18). Therefore, Ms. Moore has abandoned this claim. See Gifford v. United N. Mortg. Bankers, Ltd., No. 18 Civ. 6324 (PAE) (HBP), 2019 WL 2912489, at *3 (S.D.N.Y. July 8, 2019) (finding that pro se plaintiff abandoned certain claims by failing to include them in a proposed amended complaint submitted in lieu of opposition to a motion to dismiss); Leary v. Warnaco, Inc., 251 B.R. 656, 659 (S.D.N.Y. 2000) (finding that, "by omitting [the claim] from the proposed amended complaint, this Court deems it abandoned"). [9]

[9] The Court would still recommend that the Defamation Claim be dismissed as preempted by the FCRA. See 15 U.S.C. § 1681h(e) ("no consumer may bring any action or proceeding in the nature of defamation ... with respect to the reporting of information against any [CRA], any user of information, or any person who furnishes information to a [CRA] ..."); see also Macpherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45, 47–48 (2d Cir. 2011) (per curiam). Indeed, Judge Furman dismissed a similar claim brought by Ms. Moore in the Capital One Action. See Moore, 2022 U.S. Dist. LEXIS 123221, at *2 (holding that "common-law defamation claim [was] preempted by the FCRA").

Accordingly, I respectfully recommend that the Defamation Claim be DISMISSED.

### C. Leave to Amend

"Leave to amend should be 'freely give[n] ... when justice so requires.' " Trujillo v. City of N.Y., No. 14 Civ. 8501 (PGG), 2016 WL 10703308, at *21 (quoting Fed. R. Civ. P. 15(a)(2)); see Bloomberg v. N.Y.C. Dep't of Educ., 410 F. Supp. 3d 608, 628 (S.D.N.Y. 2019) (permitting amended complaint after granting motion to dismiss). The Second Circuit recognizes that "the 'liberal spirit' of the Federal Rule of Civil Procedure 15 embodies a 'strong preference for resolving disputes on the merits.' " Davis v. Goodwill Indus. of Greater N.Y. & N.J., Inc., No. 15 Civ. 7710 (ER), 2017 WL 1194686, at *14 (S.D.N.Y. Mar. 30, 2017) (quoting Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190–91 (2d Cir. 2015)). Thus, "[d]istrict courts 'ha[ve] broad discretion in determining whether to grant leave to amend.' " Trujillo, 2016 WL 10703308, at *21 (quoting Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000)). Courts "ordinarily recommend that a pro se plaintiff be given leave to amend h[er] complaint to replead all factually insufficient claims." Huggins v. Schriro, No. 14 Civ. 6468 (GBD) (JLC), 2015 WL 7345750, at *9 (S.D.N.Y. Nov. 19, 2015); see Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013) ("[a] pro se complaint generally should not be dismissed without granting the plaintiff leave to amend at least once"). The Court may deny an opportunity to amend "when amendment would be futile." Fulton v. Goord, 591 F.3d 37, 45 (2d Cir. 2009).

Here, Ms. Moore has already had an opportunity amend her claims, with the benefit of having seen Defendants' arguments why her claims were deficient. Because the PAC "gives no indication that [she] has a colorable claim under federal law and [she] has already had one opportunity to amend the complaint[,] any further attempt to amend the complaint would be futile." Selvam, 2015 WL 1034891, at *4 (citing

Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)); see Moore, 2022 U.S. Dist. LEXIS 123221, at *2 (denying Ms. Moore leave to further amend in the Capital One Action where she had previously had an opportunity to amend, and finding that, "[h]ere, leave to amend is not warranted because the problems with Moore's claims are substantive, so better pleading will not cure them"); Ingram v. Premier Bankcard, Inc., No. 15 Civ. 2205 (PGG), 2017 U.S. Dist. LEXIS 112636, at *14–15 (S.D.N.Y. July 18, 2017) (denying pro se plaintiff leave to amend a second time where plaintiff "did not add sufficient factual allegations to demonstrate either a willful or negligent violation of the FCRA," and where "it appears that any further attempt to amend the complaint would be futile").

**\*10**  Accordingly, I respectfully recommend that further leave to amend be DENIED.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court respectfully recommends that Defendants' Motions be GRANTED, Ms. Moore's Motion be DENIED, leave to amend be DENIED, and the action be DISMISSED WITH PREJUDICE.

Defendants shall promptly serve a copy of this Report and Recommendation on Ms. Moore, and, by **October 17, 2023**, file proof of service on the docket.

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). If Ms. Moore does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, she may request copies from Defendants' counsel. See Loc. Civ. R. 7.2.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 7169119

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:23-CV-00673**<br>Moore v. Experian et al | — | S.D.N.Y. | Jan. 26, 2023 | Docket |

**History (4)**

**Direct History (3)**

1. Moore v. Experian
2023 WL 3005746 , S.D.N.Y. , Mar. 31, 2023

*Subsequent Determination*

2. Moore v. Experian ☞
2023 WL 7169119 , S.D.N.Y. , Oct. 13, 2023

*Report and Recommendation Adopted by*

3. Moore v. Experian
2023 WL 7166158 , S.D.N.Y. , Oct. 31, 2023

**Related References (1)**

4. Moore v. Experian
2023 WL 7491515 , S.D.N.Y. , Nov. 09, 2023

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 83 of 143

Pietrafesa v. First American Real Estate Information..., Not Reported in...

2007 WL 710197

KeyCite Yellow Flag
Distinguished by  Ritchie v. Northern Leasing Systems, Inc.,  S.D.N.Y.,
March 28, 2016

2007 WL 710197
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Anthony J. PIETRAFESA, Plaintiff
v.
FIRST AMERICAN REAL ESTATE
INFORMATION SERVICES, INC., d/b/a First
American Credco, Aegis Lending Corporation,
Aegis Mortgage Corporation, "SCOTT DOE,"
being a person whose real name is unknown to
plaintiff now, Jointly and Severally, Defendants.

No. 1:05-CV-1450.
|
March 6, 2007.

**Attorneys and Law Firms**

Anthony J. Pietrafesa, Albany, NY, pro se.

Bartlett, Pontiff, Stewart & Rhodes, P.C., Glens Falls, NY,
Eileen M. Haynes, Esq., for Defendant Credco.

***MEMORANDUM-DECISION AND ORDER***

LAWRENCE E. KAHN, United States District Judge.

*\*1*  Plaintiff Anthony Pietrafesa ("Plaintiff") commenced
the instant action against Defendants alleging violations of
federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §
1681, *et seq.,* the New York Fair Credit Reporting Act
("NYFCRA"), N.Y. Gen. Bus. Law § 380*et seq.,* and the New
York Consumer Protection Act, N.Y. Gen. Bus. Law § 349.
Plaintiff alleges that Defendants obtained a copy of his credit
report for an improper purpose. Presently before the Court is
Defendant Credco's Motion, and Plaintiff's Cross-Motion, for
summary judgment pursuant to FED. R. CIV. P. 56. Dkt. Nos.
8, 11.

**I. FACTS**

Credco is an entity engaged in the business of furnishing
credit information from the three major credit bureaus.
Credco does not maintain credit history information on
individual consumers. Rather, at the request of its clients,
Credco compiles credit scores from the three credit bureaus
into a single, merged report.

Prior to offering services to its clients, Credco requires
its clients to sign an agreement and certification providing
that the client will not seek credit reports for an improper
purpose and only in connection with a "credit transaction
involving the consumer on whom the information is to
be furnished and involving the extension of credit to, or
review or collections of an account of the consumer ." In
approximately 1999, Defendant Aegis applied to Credco to
receive the merged reports. As part of the application, Aegis
supplied Credco with its business address, identified itself
as a wholesale lender, listed the number of employees and
its annual revenue, named its officers, and supplied three
references. Credco checked the references, ensured that Aegis
was in good standing with the Office of the Comptroller
in the State of Texas (where Aegis is located), interviewed
one of Aegis's senior vice presidents, conducted a physical
inspection of Aegis's offices to ensure that it was a bona fide
lending institution, and, as a result, determined that Aegis was
authorized to obtain credit reports and requested such reports
for a legitimate purpose.

Up through August 2005, Aegis had requested that Credco
provide "thousands of credit reports." Def.'s Stmnt. of Mat.
Facts at ¶ 12. From 1999 through August 2005, Credco had
been obtaining credit reports for Aegis for approximately
six years and "had received no information that Aegis was
requesting reports for improper purposes." *Id.* at ¶ 13. On or
about August 26, 2005, Aegis requested that Credco provide
a merged report on Plaintiff. Credco provided the report.

On or about September 9, 2005, Credco received a notice
from Aegis that it improperly requested Plaintiff's credit
report. Aegis asked that the inquiry be removed from all
credit reporting bureaus. Credco investigated Aegis's request.
Credco then wrote to each of the three credit bureaus and
requested that they remove the inquiry from Plaintiff's credit
report. Credco also received notice from Plaintiff that he did
not authorize the release of his credit information. Although
Credco had already asked the three credit bureaus to remove
the inquiry from Plaintiff's credit report, Credco responded to
Plaintiff that he should address the matter directly with Aegis.

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 84 of 143
Pietrafesa v. First American Real Estate Information..., Not Reported in...
2007 WL 710197

**\*2** Plaintiff then commenced the instant action alleging that Credco violated the FCRA, the NYFCRA, and the New York Consumer Protection Laws by obtaining his credit report from the three bureaus, providing that information to Aegis, and failing to provide adequate notice to Plaintiff. Presently before the Court is Credco's Motion for summary judgment pursuant to FED.R.CIV.P. 56 seeking dismissal of the Complaint in its entirety and Plaintiff's Cross-Motion seeking a determination of liability as a matter of law. Dkt. Nos. 8, 11.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In applying this standard, courts must " ' resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.' " *Brown v. Henderson,* 257 F.3d 246, 251 (2d Cir.2001) (quoting *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir.2001)). Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (citations omitted). Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown,* 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990).

## III. DISCUSSION

### a. FCRA

Credco contends that it is entitled to summary judgment because the undisputed facts demonstrate that, as a consumer reporting agency, it complied with the applicable provisions of the FCRA. Plaintiff responds that he is entitled to summary judgment because Credco is not a "consumer reporting agency," but a "user" of credit reports that obtained a report for an improper purpose. Thus, the initial inquiry is whether

Credco is a user of credit reports or a consumer reporting agency.

> The phrase "consumer reporting agency" is statutorily defined to mean any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

**\*3** 15 U.S.C. § 1681a(f). As it is ordinarily used, the term "assemble" means "to bring together; to gather into one place." The Random House Dictionary of the English Language, 1979, at p. 89; *see also* Oxford English Dict. (2d Ed.1989) ("To bring together (things) into one place or mass, to collect."). The nature of Credco's business is gathering credit information

> maintained by the three credit bureaus and providing that information in a single merged report to its clients. As such, its conduct constitutes "assembling." *See Morrissey v. TRW Credit Data,* 434 F. Supp 1107, 1108 (E.D.N.Y.1977). Credco also qualifies as a "reseller" of consumer reports. *See Credit Chequers Info, Servs., Inc. v. CBA, Inc.,* NO. 98 CIV. 3868(RPP), 1999 WL 253600, at \*2 (S.D.N.Y. Apr. 29, 1999) (an entity that provides merged credit reports identical to the reports provided by Credco here is a "reseller of credit reporting services."). The FCRA defines the terms "reseller" to mean "a consumer reporting agency that (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party ...; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced." 15 U.S.C. § 1681 a(u). Thus, to be a reseller, one must be: (1) a consumer reporting agency, *see Poore v. Sterling Testing Sys.,*

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 85 of 143

Pietrafesa v. First American Real Estate Information..., Not Reported in...

2007 WL 710197

*Inc.,* 410 F.Supp.2d 557, 566-67 (E.D.Ky.2006), (2) that assembles and merges information maintained in the databases of other consumer reporting agencies, and (3) that does not maintain its own databases of consumer information. 15 U.S.C. § 1681 e(e),

As a consumer reporting agency, Credco is obligated to comply with, among other things, the requirements of 15 U.S.C. §§ 1681 b and 1681e(a)-(d). As is relevant hereto, § 1681 b(a)(3) permits a consumer report to be furnished only "[t]o a person which it has reason to believe-(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." Section 1681 e requires consumer reporting agencies to "maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681 b of this title." 15 U.S.C. § 1681e(a). These reasonable procedures must include a requirement that the prospective users of information: (1) identify themselves; (2) certify the purposes for which the information is sought; and (3) certify that the information will be used for no other purpose. *Id.* Consumer reporting agencies also are required to "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report." *Id.* Consumer reporting agencies are prohibited from furnishing a report "to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681 b...." *Id.* Civil liability can be imposed upon someone who is negligent in failing to comply with the requirements of the FCRA. 15 U.S.C. § 1681*o*. "The fact that a consumer report is furnished for an impermissible purpose ... does not result in automatic liability. Liability is imposed only when the consumer reporting agency either willfully or negligently fails to maintain reasonable procedures to avoid violations of, i.e., § 1681 b." *Dobson v. Holloway,* 828 F.Supp. 975, 977 (M.D.Ga.1993) (internal citations omitted).

**\*4** The undisputed evidence before the Court demonstrates that Credco complied with all of these requirements. Before accepting Aegis as a client, Credco verified Aegis's identity by requiring a completed application, verifying its status with the Office of the Comptroller of the State of Texas, checking into its line of business, conducting a physical inspection of Aegis's business, and checking Aegis's references. Credco learned that Aegis was a real estate loan company. These

actions by Credco constitute reasonable efforts to verify Aegis's identity and the use for which Aegis intended to use the consumer reports. The evidence in the record further demonstrates that Credco complied with § 1681 e by requiring Aegis to: identify itself, certify the purpose for which the information was sought, and certify that the information would be used for no other purpose. Plaintiff offers no evidence upon which it reasonably can be concluded that Credco had reason to believe that Aegis would obtain a consumer report for an improper purpose. To the contrary, the record evidence demonstrates that Credco had supplied Aegis with thousands of credit reports over an approximately six (6) year period without incident. Thus, Credco had no reason to believe that Aegis sought a credit report for a improper purpose.

Plaintiff has failed to identify any deviations from the standard of care to be used by credit reporting agencies in maintaining reasonable procedures to comply with §§ 1681 b and 1681c. *See*15 U.S.C. § 1681*o*; *Dobson,* 828 F.Supp. at 977 ("To determine whether the consumer reporting agency maintained reasonable procedures, the standard of conduct is what a reasonably prudent person would do under the circumstances."); see also *Obabueki v. Int'l Bus. Machines Corp.,* 145 F.Supp.2d 371, 395-96 (S.D.N.Y.2001) (liability may be imposed upon a credit reporting agency for failing to act reasonably in complying with the FCRA). It would be unreasonable to require credit reporting agencies processing a high number of requests to independently investigate each and every request to determine its legitimacy. See *Boothe v. TRW Credit Data,* 557 F.Supp. 66, 71 (S.D.N.Y.1982).

Because Credco also qualifies as a reseller of consumer reports, it had additional obligations imposed upon it pursuant to § 1681 e(e). Under § 1681 e(e)(1), Credco was required to disclose to the "consumer reporting agency that originally furnish[ed] the report-(A) the identity of the end-user of the report (or information); and (B) each permissible purpose under section 1681 b of this title for which the report is furnished to the end-user of the report." Section 1681 e(e)(2) further required Credco to:

(A) establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under section 1681 b of this title, including by requiring that each person to which the report (or information) is resold and that resells or provides the report (or information) to any other person-

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 86 of 143

Pietrafesa v. First American Real Estate Information..., Not Reported in...

2007 WL 710197

**\*5** (I) identifies each end user of the resold report (or information);

(ii) certifies each purpose for which the report (or information) will be used; and

(iii) certifies that the report (or information) will be used for no other purpose; and

(B) before reselling the report, make reasonable efforts to verify the identifications and certifications made under subparagraph (A).

The evidence discussed above concerning Credco's compliance with § 1681 b equally applies to demonstrate Credco's compliance with § 1681e(e)(2). As noted, Credco had a reasonable procedure to ensure that Aegis was using credit reports for a proper purpose and had information that Aegis was the end user of the resold report. Moreover, Aegis, as the end user, certified the purpose for which the report was used, and certified that the report would not be used for any other purpose.

There is, however, an absence of evidence in the record concerning whether Credco complied with § 1681e(1)(B). It is unknown whether Credco informed the three credit bureaus from which it obtained the credit information concerning Plaintiff of "each permissible purpose under section 1681 b of this title for which the report is furnished to the end-user of the report." See 15 U.S.C. § 1681 e(e)(1)(B). Accordingly, the Court cannot determine on the present record whether: (1) Credco negligently failed to comply with § 1681e(e)(1)(B); and, if so, (2) Plaintiff sustained any actual damages as a result of the failure. See 15 U.S.C. § 1681 o(a). Credco's Motion for summary judgment on the FCRA claim must, therefore, be denied.

### b. NYFCRA

The Court will now turn to Plaintiff's claims under N.Y. Gen. Bus. Law Art. 25. As is relevant hereto, the requirements of Article 25 are substantially similar to those under the FCRA. See Scott v. Real Estate Fin. Group, 183 F.3d 97, 100 (2d Cir.1999). There is a difference between the two statutes, however, insofar as Article 25 does not contain additional requirements applicable to resellers as does the FCRA. For the reasons previously discussed with respect to Credco's compliance with §§ 1681 b and 1681e(a)-(d) of the FCRA, because Credco maintained "reasonable procedures to designed to avoid violations of sections three hundred eighty-

b and three hundred eighty-j of this article and to limit the furnishing of consumer reports to the purposes listed under said section three hundred eighty-b," the claims under N.Y. Gen. Bus. Law §§ 380-b(a), 380-k must be dismissed.

N.Y. Gen. Bus. Law § 380-b(b) further provides that:

> No person shall request a consumer report ... in connection with an application ... for credit, ... unless the applicant is first informed in writing or in the same manner in which the application is made that (I) a consumer report may be requested in connection with such application, and (ii) the applicant upon request will be informed whether or not a consumer report was requested, and if such report was requested, informed of the name and address of the consumer reporting agency that furnished the report.

**\*6** N.Y. Gen. Bus. Law § 380-b(b). There is no evidence in the record that Credco complied with this requirement. Indeed, looking at the evidence in the light most favorable to the nonmovant, it appears that Credco did not inform Plaintiff that it intended to request a consumer report.

That being said, the Court concludes that § 380-b(b) is inapplicable here. By its plain terms, § 380-b(b) applies to requests for a consumer report "in connection with an application ... for credit." When such a request is made, notice must be given to "the applicant" that a consumer report may be requested "in connection with such application." It is arguable that Aegis's request for a consumer report was "in connection with an application for credit." After all, this was the purported basis for Aegis's request for the credit report. Nevertheless, as Plaintiff states, he "did not initiate any business transaction, or apply for credit ... by or through Credco" or any other Defendant. Pl.'s Stmnt. of Mat. Facts at ¶¶ 11-12 (emphasis added); Compl. at ¶ 8. As such, strictly adhering to the text of the statute, Plaintiff cannot be an "applicant" to whom notice is required to be given. See N.Y. STAT. LAWW § 73 ("A statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all of the problems and complications which

Case 1:25-cv-01393-MAD-MJK   Document 5   Filed 02/20/26   Page 87 of 143

Pietrafesa v. First American Real Estate Information..., Not Reported in...

2007 WL 710197

might arise in the course of its administration; and no matter what disastrous consequences may result from following the expressed intent of the Legislature, the Judiciary cannot avoid its duty.... Under the foregoing principle ... courts may not ... change the scope of a legislative enactment"); N.Y. STAT. LAWW § 94 ("The Legislature is presumed to mean what it says.... In the construction of statutes, each word in the statute must be given its appropriate meaning.... Words will not be expanded so as to enlarge their meaning to something which the Legislature could easily have expressed but did not...."); N.Y. STAT. LAWW § 230 ("[E]ach word or phrase in the enactment must be given its appropriate meaning.).

The conclusion that § 380-b(b) does not apply to the situation where, as here, there is no actual application is supported by comparing § 380-b(b) (requiring notice for consumer reports) with §§ 380-c(a) and 380-c(b) (requiring notice for investigative consumer reports). Section 380-b(b) specifically refers to providing notice to the "applicant," whereas § 380-c(a) requires that notice be given to "the consumer." It must be assumed that when enacting Article 25, the legislature intentionally used two different terms in the two different sections. N.Y. STAT. LAWW § 98 ("[T]he court must assume that the Legislature did not deliberately place in the statute a phrase intended to serve no purpose, but must read each word and give to it a distinct and consistent meaning."); N.Y. STAT. LAWW § 97 ("Statutory words must be read in their context, and words ... of a statutory section should be interpreted with reference to the scheme of the entire section.... The different parts of the same act, though contained in difference sections, are to be construed together as if they were all in the same section.").

*7 Furthermore, § 380-c(b) expressly contemplates the type of notice to be provided in the situation where no application is made. That section provides that "[t]he notice required by this section shall be in writing *if a written application is made by the consumer,* or may be in writing or orally *in all other circumstances.*" § 380-c(b)(emphasis added). By contrast, § 380-b(b) does not provide for situations where there is no application. In light of the fact that the Legislature expressly considered the situation where there is no application with respect to investigative consumer reports, the failure to include a similar provision in § 380-b(b) cannot be considered a legislative oversight but, rather must be presumed to be an intentional omission. *See* N.Y. STAT. LAWW § 74 ("[W]hen from the language of an act and circumstances surrounding its enactment it appears that the Legislature has specified the cases to which it shall apply, the failure to specify a particular

case indicates that the Legislature did not intend the act to cover such a case...."). This conclusion is even more forceful considering that, under the NYFCRA, the term "consumer" is a statutorily defined term, *see* § 380-a(b), that is purposefully and intentionally used throughout Article 25, but was not used in § 380-b(b). Because Plaintiff was not an "applicant," he was not entitled to notice under § 380-b(b).

Furthermore, the Court finds that § 380-b(b) was not intended to apply to every person or entity involved in the process of obtaining a consumer report. See *Scott v. Real Estate Fin. Group,* 956 F.Supp. 375, 385 (E.D.N.Y.1997) ( "[T]he Court finds that the language contained in the statute does not require notice from everyone involved in obtaining the consumer report."), *aff'd in part, rev'd in part,*183 F.3d 97 (2d Cir.1999). Without question, the end-user of the consumer report is subject to § 380-b(b)'s requirements. The purpose of § 380-b(b) is to require the end-user (that is, those who intend to use the credit report for making determinations concerning employment, the extension of credit, the provision of insurance, or the rental or leasing of a residence) to inform the applicant that end-user may request a consumer report as part of the decision-making process. It is the end-user who ordinarily has a direct relationship with the consumer and, therefore, is in a position to provide notice concerning the intention to obtain a consumer report. By requiring the end-user to provide this information at the time of the application for credit, employment, insurance, or the rental or lease of an apartment, the consumer is in a position to determine whether to proceed with the application. This would appear to satisfy the policy reasons behind the notice provision-to enable consumers to know under what situations consumer reports concerning them will be obtained and to permit the consumer to discontinue the application process if they do not want their consumer report to be disclosed. Taking into consideration these purposes of § 380-b(b), the question is whether § 380-b(b) also was intended to apply to require resellers (those who obtain the consumer report from another consumer reporting agency or multiple consumer reporting agencies) to provide notice to the consumer where the end-user seeks to obtain a consumer report through that reseller.

*8 It is common practice for the end-users of consumer reports to obtain the reports through a middleman or reseller. As previously discussed, the FCRA expressly contemplates this situation. By the time a request for a consumer report is made to a reseller, the requirements of § 380-b(b) already should have been complied with by the end-user. Under such circumstances, it makes little sense to require the middleman,

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 88 of 143

Pietrafesa v. First American Real Estate Information..., Not Reported in...

2007 WL 710197

or reseller, to also provide notice to the consumer before obtaining the report that has already been requested by the end-user. Such notice would be superfluous. It also would be extremely onerous on resellers to require that they notify every consumer about whom they receive a request to obtain a consumer report.

Most significantly, perhaps, the statute prohibits requesting a consumer report "unless the applicant is first informed" that a consumer report may be requested. § 380-b(b). The required notice informs the "applicant" that "a consumer report *may* be requested in connection with such application." § 380-b(b) (emphasis added). By the time the matter gets to a reseller, a consumer report already *has* been requested (at least by the end-user) and, thus, any notice provided by the reseller would be after the time contemplated by the statute. Notice provided by a reseller would not fulfill the above-discussed policy reasons of affording the applicant an opportunity to discontinue the application process and preventing the request and/or disclosure of his or her consumer report. For these reasons, the Court finds that § 380-b(b) is inapplicable here. The NYFCRA claims are, therefore, dismissed.

### c. New York Consumer Protection Law

Plaintiff also asserts a claim under N.Y. Gen. Bus Law § 349, which makes it unlawful to engage in deceptive acts or practices in the conduct of any business or in the furnishing of any service in New York state. See N.Y. GEN. BUS LAW § 349 To recover under this section, Plaintiff must demonstrate that he suffered actual injury as a result of a practice that was objectively misleading or deceptive. *Pelman ex rel. Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 n. 4 (2d Cir.2005). As the New York Court of Appeals has stated, "[a] plaintiff under section 349 must prove three elements: first, that the

challenged act or practice was consumer oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered actual injury as a result of the deceptive act." *Stutman v. Chemical* Bank, 95 N.Y.2d 24, 29 (2000).

Defendant moves for summary judgment on the ground that there is no evidence that it engaged in any materially misleading or deceptive acts. In response, Plaintiff merely contends that a violation of the NYFCRA or FCRA can sustain a claim under § 349. While certain acts may constitute a violation of both the FCRA and § 349, *see, e.g., Wegmans Food Markets Inc. v. Scrimpsher (In re Scrimpsher),* 17 B.R. 999 (Bankr.N.D.N.Y.1982), here, Plaintiff has failed to identify any consumer oriented, misleading acts by Credco. Accordingly, the § 349 claim must be dismissed.

### IV. CONCLUSION

**\*9** Accordingly, it is hereby

**ORDERED,** that Defendants' Motion for summary judgment (Dkt. No. 8) is **GRANTED IN PART** and **DENIED IN PART.** Defendants' Motion is **GRANTED** insofar as all of Plaintiff's claims are **DISMISSED** with the exception of the claim under § 1681 e(1)(B) of the FCRA; and it is further

**ORDERED,** that Plaintiff's Cross-Motion for summary judgment (Dkt. No. 11) is **DENIED;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties by regular mail. **IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2007 WL 710197

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Pietrafesa v. First American Real Estate Information Services, Inc.

**Filings (2)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Memorandum of Law in Support of Defendant Credco's Motion for Summary Judgment**<br>Anthony J. PIETRAFESA, Plaintiff, v. FIRST AMERICAN REAL ESTATE INFORMATION SERVICES, INC., d/b/a First American Credco Aegis Lending Corporation, Aegis Mortgage Corporation, ""Scott Doe," being a person whose real name is unknown to plaintiff now, Jointly and Severally, Defendants.<br>2006 WL 1468334 | PDF | N.D.N.Y. | Apr. 14, 2006 | Motion |
| **2. Docket 1:05cv01450**<br>PIETRAFESA v. FIRST AMERICAN REAL ESTATE INFORMATION SERVICES, INC. ET AL | — | N.D.N.Y. | Nov. 18, 2005 | Docket |

**History**

There are no History results for this citation.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909


KeyCite Yellow Flag

Report and Recommendation Adopted as Modified by  Hines v. Equifax Information Services LLC,  E.D.N.Y.,  September 10, 2024

2022 WL 2841909
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Duane A. HINES, on behalf of himself
and all others similarly situated, Plaintiff,

v.

EQUIFAX INFORMATION
SERVICES, LLC, Defendant.

No. 19-CV-6701 (RPK) (RER)
|
Signed July 16, 2022

**Attorneys and Law Firms**

James A. Francis, Pro Hac Vice, John Soumilas, Pro Hac Vice, Jordan M. Sartell, Pro Hac Vice, Francis Mailman Soumilas P.C., Philadelphia, PA, Micah S. Adkins, Pro Hac Vice, The Adkins Firm, P.C., Dallas, TX, Robert S. Sola, Pro Hac Vice, Robert S. Sola, P.C., Portland, OR, Kevin Christopher Mallon, Mallon Consumer Law Group, PLLC, New York, NY, for Plaintiff.

Edward Bedard, Pro Hac Vice, Robbins Alloy Belinfante Littlefield LLC, Atlanta, GA, Zachary A. McEntyre, Pro Hac Vice, Billie Pritchard, Pro Hac Vice, Carley Hawkins Thompson, Pro Hac Vice, King & Spalding LLP, Atlanta, GA, Jessica Kristen Shook, King & Spalding, New York, NY, for Defendant.

### REPORT & RECOMMENDATION

RAMON E. REYES, JR., UNITED STATES MAGISTRATE JUDGE:

**\*1**

### TO THE HONORABLE RACHEL P. KOVNER
### UNITED STATES DISTRICT JUDGE

Duane A. Hines ("Hines" or "Plaintiff") brings this action on behalf of himself and similarly situated consumers against Equifax Information Services, LLC ("Equifax" or "Defendant"), a Georgia-based consumer reporting agency,

seeking monetary, injunctive, and declaratory relief for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, and the New York Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. Law §§ 380–380-v. (ECF No. 1 ("Compl.")). Plaintiff has moved pursuant to Rule 23 of the Federal Rules of Civil Procedure to certify a nationwide FCRA class and three claim-based subclasses as described in further detail below. (ECF No. 43 ("Mot. for Class Cert."); ECF No. 42-2 SEALED ("Pl.'s Mem.") at 3–4). Your Honor has referred the motion to me for a report and recommendation. (Order dated 03/22/2022).

For the reasons set forth below, I respectfully recommend that the motion be granted in part and denied in part. The Court should (1) grant Plaintiff's request for certification of the New York Subclass and the Capital One Subclass under Rule 23(b)(3); (2) deny Plaintiff's request for certification of the nationwide FCRA Class for failure to satisfy the superiority requirement of Rule 23(b)(3), or alternatively order further briefing from the parties on the issue of whether a stay, consolidation, or transfer of proceedings is warranted in light of the pending *Rivera* Action; (3) deny Plaintiff's request for certification of the Post-Dispute Publication Subclass for failure to satisfy the predominance requirement of Rule 23(b)(3); (4) deny Plaintiff's request for certification under Rule 23(b)(2) with respect to the New York Subclass; (5) appoint Plaintiff as the class representative and Francis Mailman Soumilas, P.C., Robert S. Sola, P.C., Skaar & Feagle, LLP, The Adkins Firm, P.C. as class counsel; and, (6) direct the parties to submit to the Court within thirty days proposed forms and schedules for providing notice to the certified classes.

### BACKGROUND

I. Consumer Reporting Agencies, the Fair Credit Reporting Act, and the NYFCRA

As "one of the 'Big Three' [consumer] reporting agencies," Equifax "compiles personal and financial information about individual consumers to create consumer reports" and "sells those consumer reports [also known as credit reports] for use by entities such as banks, landlords, and car dealerships [*i.e.*, Equifax's customers] that request information about the creditworthiness of individual consumers." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2201 (2021); *see also* (Compl. ¶ 7 (explaining that "Equifax prepares consumer report[s] (commonly called 'credit report[s]' )")). Consumer reports may include up to two years' worth of "inquiry information,"

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 92 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

which is comprised of notations on the consumer's credit file that identify the entities or individuals who requested information about the consumer from the reporting agency and the date such information was delivered. (Compl. ¶¶ 7–8; Pl.'s Mem. at 1; ECF No. 42-3 SEALED ("Def's Opp.") at 4 (citing ECF No. 42-24 SEALED) ("Gobin Depo. Excerpts") 30:24–31:1; 16 C.F.R. § 660.2(c)); *see also* ECF No. 42-25 SEALED ("Gobin Decl.") ¶ 3).

**\*2** An inquiry may be considered either "soft" or "hard." An inquiry is "soft" when it is made as part of an ongoing relationship between the inquirer and the consumer, relates to employment screening, or will otherwise leave the consumer's credit score unaffected. Conversely, an inquiry is "hard" when it is associated with a consumer-initiated application for credit and may therefore impact the consumer's credit score. (*See* Pl.'s Mem. at 1; ECF No. 42-22 SEALED) ("Hendricks Expert Rep.") at 1 n.1 [Redacted]; *id.* at 1 [Redacted]; ECF No. 42-32 SEALED ("Hines Depo. Exhibits") at 15 [Redacted] Compl. ¶ 9 ("Inquiries have a negative impact on a consumers credit score because scoring programs view each inquiry as an application for credit[.]"); ECF No. 42-34 SEALED ("Turner Expert Rep.") ¶ 2 n.1 (describing difference between hard and soft inquiries); ECF No. 42-5 SEALED ("Gobin Depo. Tr.") at 12:7–20, 17:2–11 (same); Equifax Knowledge Ctr., *Understanding Hard Inquiries on Your Credit Report*, EQUIFAX (last visited May 24, 2022) (indicating that hard inquiries "tell a lender that you are currently shopping for new credit[;]" "may be meaningful to a potential lender when assessing your creditworthiness[;]" and "usually impact credit scores.").[1] *But see* (Def's Opp. at 8–9) ("Inquiries have varying impacts on individual consumers —if they have any impact at all—depending on factors that are unique to each consumer and each credit score ... [Redacted] (citing Turner Expert Rep. ¶¶ 27–45; ECF No. 45-2 ("Hendricks Depo. Tr.") at 63:5–17, 66:22–69:4)").

[1]    https://www.equifax.com/personal/education/
    credit/report/understanding-hard-inquiries-on-
    your-credit-report/.

"[T]o promote 'fair and accurate credit reporting' and to protect consumer privacy," the FCRA "regulates the consumer reporting agencies that compile and disseminate personal information about consumers" and " 'imposes a host of requirements concerning the creation and use of consumer reports.' " *Ramirez*, 141 S. Ct. at 2200 (first quoting 15 U.S.C. § 1681(a), then quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 335 (2016)). As relevant here, the

Act requires that consumer reporting agencies: (1) properly reinvestigate or remove incomplete or inaccurate information contained in a consumer's file upon direct notice of a dispute from the consumer, 15 U.S.C. § 1681i(a); (2) "maintain reasonable procedures designed ... to limit the furnishing of consumer reports to the [permissible] purposes" specifically enumerated in the Act, 15 U.S.C. §§ 1681b, 1681e(a); and (3) refrain from furnishing records of non-consumer-initiated inquiries to third parties, 15 U.S.C. § 1681b(c)(3). "The Act creates a cause of action for consumers to sue and recover damages for certain violations," including actual, statutory, or punitive damages for willful noncompliance with its requirements, and actual damages for negligent noncompliance. *Ramirez*, 141 S. Ct. at 2201; 15 U.S.C. §§ 1681n(a), 1681o.

The NYFCRA deals with the same subject matter and contains substantially similar provisions to the FCRA. Like its federal counterpart, the NYFCRA directs consumer reporting agencies to reinvestigate information that is directly disputed by a consumer, requires that they adopt procedures to limit the furnishing of consumer reports to a set of enumerated permissible purposes, and provides for civil liability for negligent or willful noncompliance with its provisions. N.Y. Gen. Bus. Law §§ 380-f(a), 380-k, 380-m, 380-l. Because of these substantial similarities, the provisions of the FCRA and the NYFCRA are generally "construed in the same way." *Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999); *see also Abdallah v. LexisNexis Risk Sols. FL, Inc.*, No. 19-CV-3609 (MKB), 2021 WL 6197060, at \*6 (E.D.N.Y. Dec. 30, 2021); *Grayson v. Equifax Credit Info. Servs.*, No. 18-CV-6977 (MKB), 2021 WL 2010398, at \*7 (E.D.N.Y. Jan. 29, 2021).

## II. Hines' Hard Inquiry Dispute

Equifax reported a November 27, 2018 "hard" inquiry by Capital One Bank USA N.A. on Hines' consumer report (the "Capital One Inquiry") in connection with a transaction that Hines claims he did not initiate or authorize. (Compl. ¶¶ 30–31; *see also* Pl.'s Mem. at 4; ECF No. 42-7 SEALED ("12/7/2018 Consumer Report") at 8; ECF No. 44-2 ("Hines Depo. Tr.") at 12:14–18; 33:10–21; Gobin Depo. Tr. at 18:19–19:3). Concerned that it would negatively impact his credit score, Hines disputed the Capital One Inquiry to Equifax twice through a Consumer Financial Protection Bureau ("CFPB") complaint portal in early December 2018. (Compl. ¶ 32; *see also* Hines Depo. Tr. at 12:14–18, 33:10–21; Hines Depo. Exhibits at 2–9 (CFPB Complaint 181204-3669026); *id.* at 10–12 (CFPB Complaint 181204-3669303); ECF No.

2022 WL 2841909

42-33 SEALED ("Pl.'s Resps. to Def's First Interrogs.") at 9–10 (listing CFPB complaints)). [2]

[2]    The FCRA specifically contemplates the submission of complaints to consumer reporting agencies through the CFPB. *See* 15 U.S.C. § 1681i(e).

**\*3** On December 7, 2018, Equifax responded to Hines' complaints with a form letter [Redacted] (ECF No. 42-8 SEALED ("Dec. 7, 2018 Equifax Resp. Ltr.") at 2). In this letter, Equifax explained that [Redacted]. (*Id.*). Equifax reported the formal "results of [its] reinvestigation" into the Capital One Inquiry as follows: "Inquiries are a factual record of file access. If you believe this was unauthorized, please contact the creditor. If you have additional questions about this item please contact [Capital One]." (*Id.* at 5–6; *see also* Pl.'s Mem. at 4).

In July 2019, Hines submitted a third complaint through the CFPB portal—this time directed at Capital One—disputing the Capital One Inquiry as unauthorized, and demanding either an affidavit from a bank representative affirming its accuracy or the removal of the inquiry from his credit file. (Hines Depo. Exhibits at 13–14 (CFPB Complaint 190724-4249764)). Capital One responded the following month, noting that it "was unable to locate any previous disputes of this inquiry" and had "received an application for credit using [Plaintiff's] information" on November 17, 2018, but that after reviewing his complaint, it "made a business decision to ask the Consumer Reporting Agencies" to remove the inquiry. (Hines Depo. Exhibits at 15–16). In light of that business decision, Capital One reported that on August 5, 2019, it "sent a request to the Consumer Reporting Agencies (CRAs) asking them to remove the hard inquiry." (Compl. ¶ 34; Hines Depo. Exhibits at 15–16). In its letter, Capital One indicated that those agencies would ultimately determine how the change would be reflected in his credit file, that the inquiry could be changed to a soft inquiry, and that it could take up to sixty days for the agency to update its records. (Hines Depo. Exhibits at 15–16).

In September 2019, Hines submitted a fourth complaint through the CFPB portal to Equifax, arguing that Capital One's reported inability to locate previous disputes of the inquiry demonstrated that Equifax never performed a reasonable reinvestigation in response to his initial disputes and expressing dissatisfaction that Equifax had not yet complied with the bank's request to delete the Capital One

Inquiry from his consumer report. (Hines Depo. Exhibits at 17–21, 32–37 (CFPB Complaint 190908-4376677); *see also* Pl.'s Mem. at 5). Days later, Equifax responded with the same formulaic response as in December 2018: "Inquiries are a factual record of file access. If you believe this was unauthorized, please contact the creditor." (Compl. ¶ 42; Hines Depo. Exhibits at 22–25, 38–73). In October 2019, Hines submitted a fifth complaint to Equifax directly via certified mail, and received the same form response three weeks later. (Compl ¶¶ 36–39, 42; Hines Depo. Exhibits at 27–31).

Hines alleges that, despite his repeated complaints, Equifax included the disputed Capital One Inquiry in certain reports to his potential and existing creditors. (Pl.'s Mem. at 8–9; *see also* Compl. ¶ 44 ("Notwithstanding ample notice that Hines had not initiated nor authorized [the] Capital One inquiry, Equifax reported it to Hines' potential and existing creditors on numerous occasions, including to Digital Federal Credit Union on December 10, 2018 and March 30, 2019, to Factual Data on December 31, 2018."); Hines Depo. Tr. at 14:17–16:10 (alleging that Digital Credit Union and Paypal were provided with Hines' consumer information, including the disputed Capital One Inquiry); ECF No. 42-17 SEALED ("Leslie Depo. Tr.") at 50:13–51:3, 57:7–58:7 (discussing post-dispute June 2019 inquiry by Synchrony Bank/Paypal)).

**\*4** Ultimately, Equifax removed the Capital One Inquiry approximately four months after receiving Capital One's request and shortly after this suit was filed in November 2019. (*See* Gobin Depo. Tr. at 20:17–21:5, 48:13–52:4; *see also* Hines Depo. Tr. at 18:1–5). Nevertheless, Hines alleges that as a result of Equifax's failure to adequately reinvestigate his disputes and its delay in removing the Capital One Inquiry, he has been subjected to a number of injuries, including: a reduced credit score; "deprivation of the information that Equifax had not reinvestigated his dispute or contacted Capital One which, at a minimum, would have armed him with additional information concerning his creditworthiness; [t]he invasion of his privacy when Equifax provided a consumer report about him to Capital One without a permissible purpose; [d]istress from getting the run around from Equifax concerning his disputes and what Equifax would actually do to investigate them; and [l]ost time and resources in association with making multiple ignored disputes[.]" (Compl. ¶ 45; *see also* Hines Depo. Tr. at 62:2–15, 118:19–119:1).

III. Equifax Policies and Class Members' Disputes

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 94 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

The nature of Hines' hard inquiry dispute is not uncommon, and similar complaints are contemplated by Equifax's standardized policies and procedures. According to Equifax, [Redacted] (Gobin Decl. ¶ 20). In general, Equifax [Redacted] (Gobin Decl. ¶¶ 3, 5). Nevertheless, Equifax maintains that [Redacted] (Gobin Decl. ¶¶ 5, 6, 9). In such cases, [Redacted] (Gobin Decl. ¶ 9). The form letter that consumers receive in these circumstances, and which Hines received here, is known internally at Equifax as "[Redacted]." (Gobin Depo. Tr. at 28:19–29:11, 39:18–22; ECF No. 42-13 SEALED ("Equifax Dispute Policy Manual v. 17") at 37; ECF No. 42-14 SEALED ("Equifax Dispute Policy Manual v.22") at 35; ECF No. 42-20 SEALED ("Equifax Training & QA) at 3; Pl.'s Mem. at 6). [Redacted]. (ECF No. 42-15 SEALED ("Def's Resps. to Pl.'s First Set of Interrogs.") at 6). According to the agency, [Redacted] (*Id.* at 8).

In the two years preceding Hines' class action complaint, Equifax received hard inquiry disputes from, and sent [Redacted] to, [Redacted] consumers nationwide, and [Redacted] consumers in New York. (ECF No. 42-19 SEALED ("Def's Suppl. Resps. to Interrog. Nos. 1 and 8") at 3; Leslie Depo. Tr. at 42:12–18, 48:4–8); (Pl.'s Mem. at 11). Further, while [Redacted] (Gobin Decl. ¶ 22), the agency has identified records indicating that, for [Redacted] of the New York consumers, Equifax delivered some information about the consumer to a third party after it had received a hard inquiry dispute from the consumer. (ECF No. 42-35 SEALED ("Def's Suppl. Resp. to Pl.'s Interrog. No. 6") at 2; Leslie Depo. Tr. at 47:3, 59:9–19, 64:1–15, 82:14–83:3). These records—internally known as "Log F" or "MDB records"—contain a "snapshot" of the consumer's credit file at the time that a product containing information about that consumer was delivered to an Equifax customer. (Leslie Depo. Tr. at 17:19–24, 19:19–25, 20:3–6). These [Redacted] consumers' files contained a combined [Redacted] disputed hard inquiries. (Pl.'s Mem. at 8 n.5 (citing Leslie Depo. Tr. at 59:17–61:3); *see also* Def's Suppl. Resp. to Pl.'s Interrog. No. 6 at 2). However, some Equifax products contain only a subset of the information included on a consumer's full credit file, and because of the nature of Equifax's record keeping practices, the agency cannot specifically determine whether the products sold regarding these [Redacted] individuals included a disputed hard inquiry or contained disputed information. (Def's Opp. at 20 n.12; Def's Suppl. Resp. to Pl.'s Interrog. No. 6 at 3; Leslie Depo. Tr. at 67:19–69:1, 82:14–83:24).

Equifax has also produced letters from [Redacted] consumers disputing hard inquiry information, approximately [Redacted] contain the phrase "Capital One." (ECF No. 42-21 SEALED) ("Sartell Decl." ¶¶ 3–5). In addition to these letters, Equifax has reproduced [Redacted] similar letters containing disputes of hard inquiries which were provided to the named plaintiffs in a substantially similar class action currently pending in the Northern District of Georgia, *Rivera v. Equifax Info. Servs., LLC*, No. 1:18-CV-4639 (AT) (CCB) (the "*Rivera* Action"). (*See* ECF No. 42-26 SEALED ("Pritchard Decl.") ¶ 2). Among the [Redacted] total letters produced in both actions, Equifax has identified [Redacted] "exemplars" which it argues [Redacted] and [Redacted] rather than directly from the consumers themselves. (*Id.* ¶ 2; *see also* ECF Nos. 42-27–42-31 SEALED ("Def's Exemplar Dispute Letters")).

## IV. Procedural History

 **\*5** Plaintiff filed his class action complaint on November 27, 2019. (Compl.). Early in the case, the parties agreed to bifurcate the proceedings, such that "[a]ny dispositive motion practice may be filed only after the court's ruling on class certification." (ECF No. 22 ¶ 11). After a number of discovery disputes, court interventions, and concomitant deadline extensions (ECF Nos. 26–28, 30–35, Minute Entry dated 12/03/2020; Orders dated 01/26/2021, 02/04/2021, 03/18/2021, 04/12/2021), Plaintiff filed the motion for class certification on January 26, 2022. (*See* ECF No. 43–46). Your Honor referred the motion to me on March 22, 2022. (Order dated 03/22/2022). Shortly after the motion was referred, Plaintiff filed a notice directing the Court's attention to an order recently issued in the *Rivera* Action, which certified a nationwide class that overlaps with the nationwide FCRA class sought in this case. (ECF No. 47); *Rivera v. Equifax Info. Servs., LLC*, No. 1:18-CV-4639 (AT) (CCB), 2022 WL 986443, at \*5 (N.D. Ga. Mar. 30, 2022).

## V. Proposed Nationwide Class and Subclasses

Plaintiff seeks to certify one nationwide class and three claim-based subclasses. With respect to his "reinvestigation claims" under 15 U.S.C. § 1681i, Plaintiff seeks to certify a nationwide "FCRA Class," defined as:

> During the period beginning two years prior to the filing of this action and through the time of final judgment, all consumers with an address in the U.S. and its Territories to whom Equifax sent a document containing [Redacted] (*i.e.*, a letter that includes the language, "inquiries are a factual

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 95 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

record of file access" in response to a written dispute of one or more hard inquiries).

(Pl.'s Mem. at 3). [3] Plaintiff also seeks to certify three claim-based subclasses: a "New York Subclass" with respect to claims under the NYFCRA, N.Y. Gen. Bus. Law §§ 380 *et seq.*:

> During the period beginning two years prior to the filing of this action and through the time of final judgment, all consumers with an address in the State of New York to whom Equifax sent a document containing [Redacted] (i.e., a letter that includes the language, "inquiries are a factual record of file access" in response to a written dispute of one or more hard inquiries).

(*Id.*); a "Capital One Subclass" with respect to "unreasonable procedures" and "permissible purpose" claims under 15 U.S.C. § 1681e(a):

> During the period beginning two years prior to the filing of this action and through the time of final judgment, all consumers with an address in the U.S. and its Territories (1) to whom Equifax sent a document containing [Redacted] (i.e., a letter that includes the language, "inquiries are a factual record of file access" in response to a written dispute of one or more hard inquiries), which (2) corresponds to the consumer's dispute of a hard inquiry associated with Capital One.

(*Id.*); and a "Post-Dispute Publication Subclass" with respect to "improper furnishing" claims under 15 U.S.C. § 1681b(c) (3):

> During the period beginning two years prior to the filing of this action and

through the time of final judgment, all consumers with an address in the U.S. and its Territories (1) to whom Equifax sent correspondence containing [Redacted] (i.e., a letter that includes the language, "inquiries are a factual record of file access" in response to a written dispute of one or more hard inquiries) and (2) about whom Equifax has a "MDB record" (e.g., a "Log F" or "Frozen Scan") that postdates the [Redacted] correspondence and contains the disputed hard inquiry.

(*Id.* at 4). [4]

3   As noted above, a similar and overlapping nationwide class definition was proposed and recently certified in the *Rivera* action. *See Rivera v. Equifax Info. Servs., LLC*, No. 1:18-CV-4639-AT-CCB, 2022 WL 986443, at *5 (N.D. Ga. Mar. 30, 2022) ("During the period beginning two years prior to the filing of this action [on October 4, 2018] and *through the time of class notice*, all persons residing in the U.S. and its Territories to whom Equifax sent a document containing [Redacted] (i.e., a statement that 'inquiries are a factual record of file access') in response to a written dispute of one or more hard inquiries.") (emphasis added), *leave to appeal denied*, (11th Cir. June 14, 2022). This definition is substantially identical to the class definition that was certified in a similar case against TransUnion in the Eastern District of Pennsylvania. *See Norman v. TransUnion, LLC*, 479 F. Supp. 3d 98 (E.D. Pa. 2020), *leave to appeal denied*, 2020 WL 6393900 (3d Cir. Sept. 15, 2020).

As a result of the overlapping class definitions, Hines is a member of the nationwide class certified in the *Rivera* action. Notably, the *Rivera* plaintiffs are also represented by Hines' attorneys. (*See* ECF No. 27 at 2 n.2) ("Counsel for Plaintiff and Defendant in this matter and the *Rivera* matter are the same.").

4   The classes sought in Plaintiff's motion are different from those described in the complaint.

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 96 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

(*Compare* Compl. ¶¶ 51–53 *with* ECF No. 43-2 ("Proposed Order") at 1–2).

## DISCUSSION

I. Standing

**\*6** As a threshold matter, the Court must determine whether Hines has standing to pursue his claims on his own behalf and on behalf of absent class members. Equifax argues that a class may not be certified because Hines has not demonstrated that absent class members have standing. (Def's Opp. at 11–12). Specifically, it argues that "Hines has not identified any concrete harms suffered by the class members beyond alleged technical violations of the FCRA and the NYFCRA, let alone that he could prove any such harms with common evidence." (*Id.* at 12). For the reasons explained below, Hines has standing to pursue damages on his own behalf and on behalf of absent class members for each claim.

### A. Standing in the Class Action Context

Article III standing is a "threshold question in every federal case" that "determine[s] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.,* 433 F.3d 181, 198 (2d Cir. 2005)). In the class action context in particular, "[s]tanding to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made. Without standing, one cannot represent a class[.]" *Cassese v. Washington Mut., Inc.*, 262 F.R.D. 179, 183 (E.D.N.Y. 2009) (quoting *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 694 (E.D. Pa. 1973)). Contrary to Equifax's position, courts in the class action context focus on the class representative's standing, rather than that of the absent class members. "To establish Article III standing in a class action for every named defendant there must be *at least one named plaintiff* who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012) (alterations omitted) (emphasis added) (quoting *Cent. States*, 504 F.3d at 241).

Where a class opponent challenges a named plaintiff's standing to bring claims on behalf of absent class members, courts engage in a "bifurcated inquiry." *Gold v. Eva Nats., Inc.*, No. 21-CV-2842 (GRB) (AYS), 2022 WL 566230, at \*1 (E.D.N.Y. Feb. 16, 2022) (quoting *Petrosino v. Stearn's Prod., Inc.*, No. 16 Civ. 7735 (NSR), 2018 WL 1614349, at \*5 (S.D.N.Y. Mar. 30, 2018)). "First, the representative plaintiff must establish that she has Article III standing.... Second, the plaintiff must establish that she has 'class standing.' " *Gold*, 2022 WL 566230, at \*1. This requires that the plaintiff show "(1) that he 'personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant,' and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (alteration in original) (first quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982), then quoting *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)).

While Equifax's assertion that plaintiff's failure to demonstrate absent class members' standing precludes class certification is incorrect, its objection underscores the importance of the Court's "independent obligation to assure that standing exists." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Accordingly, I will examine whether Hines has demonstrated Article III standing on each of his claims and for each form of relief sought, and whether he has satisfied the *NECA-IBEW* test for class standing.

### B. Hines Has Article III Standing to Pursue Monetary Relief

#### 1. Article III Standing — Legal Standard

**\*7** To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Ramirez*, 141 S. Ct. at 2203 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004) ("It is a long-settled

Case 1:25-cv-01393-MAD-MJK   Document 5   Filed 02/20/26   Page 97 of 143
Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)
2022 WL 2841909

principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record. And it is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.") (internal quotation marks and citations omitted). "At the class certification stage, a named plaintiff must prove standing by a preponderance of the evidence." *Pryce v. Progressive Corp.*, No. 19-CV-1467 (RJD) (RER), 2022 WL 1085489, at *13 (E.D.N.Y. Feb. 17, 2022) (citing *Calvo v. City of New York*, No. 14 Civ. 7246 (VEC), 2017 WL 4231431, at *3 (S.D.N.Y. Sept. 21, 2017)), *adopted as modified by* 2022 WL 969740 (Mar. 31, 2022); *see also Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists.") (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)). "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Ramirez*, 141 S. Ct. at 2208 (citing *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008); *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). "[W]hen evaluating standing, courts 'must assume that the party asserting federal jurisdiction is correct on the legal merits of his claim, that a decision on the merits would be favorable and that the requested relief would be granted.' " *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 7584728, at *14 (E.D.N.Y. Nov. 20, 2019) (quoting *Cutler v. U.S. Dep't of Health & Human Servs.*, 797 F.3d 1173, 1179 (D.C. Cir. 2015)).

With respect to the injury-in-fact requirement, the Supreme Court has recently emphasized in cases involving the FCRA that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court," *Ramirez*, 141 S. Ct. at 2205 (emphasis in original), and that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation," since "[a] violation of one of the [statute's] procedural requirements may result in no harm." *Spokeo*, 578 U.S. at 342. Accordingly, where Congress has created "a statutory prohibition or obligation and a cause of action," as it has in the case of the FCRA, a Court must "independently decide whether a plaintiff has suffered a concrete harm under Article III." *Ramirez*, 141 S. Ct. at 2205. This may be a "traditional tangible harm" such as

physical or monetary damage, or an "intangible harm" that bears "a close relationship to harms traditionally recognized as providing a basis for lawsuits," such as reputational damage, the disclosure of private information, or intrusion upon seclusion. *Id.* at 2204.

In *Ramirez*, a class representative brought suit under the FCRA on behalf of more than eight thousand consumers who had been flagged by TransUnion as potential matches to individuals identified on a list of terrorists and serious criminals maintained by the Treasury Department, based solely on their shared names. *Id.* at 2201–02. The class representative alleged that the agency failed to use reasonable procedures as required by § 1681e(b) to assure that class members' credit reports would not inaccurately label them as potential criminals, and failed to adhere to specific requirements under the Act when providing those consumers with a copy of their credit file that confirmed the error. *Id.* at 2207. Of the eight thousand-plus class members, "the parties stipulated that TransUnion did not provide [more than six thousand class members'] credit information to any potential creditors during the class period." *Id.* at 2209.

**\*8** The *Ramirez* Court held that, for the minority of class members whose credit reports were shared, the dissemination of a credit report bearing misleading information to a third party constituted an injury in fact under Article III because the harm exacted by the publication of such misleading statements "bears a sufficiently close relationship to the harm from a false and defamatory statement." *Id.* at 2209. However, likening inaccurate but undisclosed notations of a potential terrorist match on a consumer's credit file to a "defamatory letter ... stored ... in [a] desk drawer," the Court determined that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* at 2210. Accordingly, the Court found that the remaining majority of class members whose files were not disseminated lacked standing to sue for damages on the reasonable procedures claim. *Id.* The Court also found that the risk of future harm, without some demonstration that exposure to such risk caused an independent harm (such as emotional or psychological distress), or that the harm itself materialized, is insufficient to confer standing to pursue retrospective damages. *See id.* at 2211–13. With respect to the remaining claims, the Court held that TransUnion's conduct—mailing one copy of the consumer credit file upon request that omitted the alert, and mailing a second, corrected copy to the consumer without attaching a statutorily required summary-of-rights—caused no traditionally recognized harm to any

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 98 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

class members, such as confusion, distress, or reliance on the improperly formatted information, such that plaintiffs demonstrated only " 'bare procedural violations, divorced from any concrete harm.' ... [t]hat [did] not suffice for Article III standing." *Id.* at 2213 (quoting *Spokeo*, 578 U.S. at 341).

In interpreting *Ramirez*, the Second Circuit has reiterated that "plaintiffs must show that the statutory violation caused them a concrete harm, regardless of whether the statutory rights violated were substantive or procedural." *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 n.2 (2d Cir. 2021). Accordingly, courts in this District have held in FCRA cases that "[w]here a plaintiff claims that an improper notation on his credit report resulted in a credit score reduction that could cause him reputational and financial harm, the absence of allegations of dissemination to third parties requires dismissal" for lack of standing. *Zlotnick v. Equifax Info. Servs., LLC*, No. 21-CV-7089 (GRB) (JMW), 2022 WL 351996, at *3 (E.D.N.Y. Feb. 3, 2022) (citing *Grauman v. Equifax Informational Services, LLC*, 549 F. Supp. 3d 285, 291–92 (E.D.N.Y. July 16, 2021); *Cohen v. Experian Information Solutions, Inc.*, No. 20-CV-3678 (BMC), 2021 WL 413494, at *2 (E.D.N.Y. Feb. 4, 2021)).

## 2. Reinvestigation Claims

With respect to his reinvestigation claims under § 1681i and its New York analogue, Hines contends that Equifax fails to reinvestigate consumer disputes regarding unauthorized inquiries as a matter of course, and that their failure to do so results in "lost time and money submitting a doomed dispute, the deprivation of the results of a reasonable reinvestigation, and the diminution of [his] credit score[.]" (Pl.'s Reply at 2). Hines' argument that a plaintiff's loss of the "benefit of the reasonable reinvestigation into the accuracy of her credit report to which he was statutorily entitled [was] an actual, concrete injury which is particularized to Plaintiff" (*Id.*) (quoting *Jones v. Experian Info. Sols., Inc.*, 982 F. Supp. 2d 268, 272 (S.D.N.Y. 2013)) is unavailing in light of *Spokeo* and *Ramirez*, which caution that an agency's failure to adhere to the procedural obligations imposed by the FCRA is, in and of itself, insufficient to establish an injury in fact. *See Spokeo*, 578 U.S. at 342; *Ramirez*, 141 S. Ct. at 2213.

However, courts in other circuits "have routinely found that wasted time resulting from a defendant's FCRA violation is a sufficiently concrete and particularized injury to establish standing." *Healy v. Milliman, Inc.*, No. C20-1473 (JCC), 2022

WL 1061921, at *3 (W.D. Wash. Apr. 8, 2022) (citing *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021); *Nelson v. Experian Info. Sols., Inc.*, 21-CV-894 (CLM), 2022 WL 193010, at *2–3 (N.D. Ala. Jan. 10, 2022)). For example, in *Nelson*, a court in the Northern District of Alabama found that the lost time and money spent sending successive dispute letters to an agency that unlawfully failed to conduct a reasonable reinvestigation after an initial request constituted an injury in fact sufficient to confer standing. *Nelson*, 2022 WL 193010, at *3. Here, Hines has similarly demonstrated that he made multiple futile attempts via the CFPB portal and via certified mail to dispute and obtain a reasonable reinvestigation of the unauthorized inquiry. (*See, e.g.*, Hines Depo. Exhibits 2–37; Pl.'s Resps. to Def's First Interrogs. at 9–10). This wasted time and expense is a traditional monetary harm that is fairly traceable to Equifax's policy of summarily categorizing and handling such disputes without a thorough investigation and without contacting the creditor responsible for the inquiry (Gobin Decl. ¶ 9; Gobin Depo. Tr. at 29:5–22), and is redressable by judicial relief.

**\*9** Further, although without dissemination "neither an incorrect notation on plaintiff's credit report nor the diminution in his credit score are sufficient to confer standing," *Zlotnick*, 2022 WL 351996 at *3; *cf. Shimon v. Equifax Info. Servs. LLC*, 431 F. Supp. 3d 115, 122 (E.D.N.Y. 2020) (dismissing reinvestigation claims under § 1681i on the merits where disputed information was disseminated but was ultimately confirmed to be accurate), *aff'd*, 994 F.3d 88 (2d Cir. 2021), Hines' Capital One Inquiry was, in fact, shared with at least one third party creditor in June 2019—after it was disputed but before it was removed from his credit file. (*See* Hines Depo. Tr. at 14:17–16:10; Leslie Depo. Tr. at 50:13–51:3, 57:7–58:7). [5] As recognized in *Ramirez* and its progeny, sharing inaccurate or misleading information about a consumer may cause traditionally recognized reputational harm that is actionable at law. *See, e.g.*, *Ramirez*, 141 S. Ct. at 2209; *Maddox*, 19 F.4th at 65; *Grauman*, 549 F. Supp. 3d at 291–92. Assuming that Hines is correct on the merits of his claim, *see Barry's Cut Rate Stores*, 2019 WL 7584728, at *14, such harm would not have occurred had Equifax performed a reasonable reinvestigation into the inquiry pursuant to its statutory obligations. Accordingly, Hines has sufficiently demonstrated a second concrete harm that is fairly traceable to Equifax's alleged violations of § 1681i and N.Y. Gen. Bus. Law § 380-f, which is sufficient to confer Article III standing to pursue damages.

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 99 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

5       Although the nature of Equifax's products and record-keeping practices preclude a finding with certainty at this time that the Capital One Inquiry was, in fact, shared with any third-party creditors, the Court finds that the post-dispute inquiries by Synchrony Bank evidenced by MDB records generated after he disputed the inquiry are sufficient to demonstrate by a preponderance of the evidence that such a harm likely occurred.

3. Reasonable Procedures and Permissible Purpose Claims

In connection with his § 1681e(a) and related state claims, Hines alleges that Equifax failed to adopt reasonable procedures to assure that consumer information is furnished only for the permissible purposes defined on the exhaustive list in § 1681b of the statute. Specifically, he alleges that, because the Capital One Inquiry represents an inquiry made in connection with a transaction that he did not initiate, disclosure of the inquiry was prohibited by the "permissible purpose" provision of § 1681b(c)(3). Further, he argues that the high volume of disputes regarding inquiries by Capital One should have put Equifax on notice that the bank was routinely acquiring reports for impermissible purposes. (Pl.'s Reply at 10). In his complaint, he alleges that "Equifax's procedures are clearly broken," as "[t]hey fail to limit the disclosure of sensitive personal and financial information about millions of consumers to FCRA and NYFCRA permissible purposes and fail to reign [sic] in repeat offenders who illegally obtain sensitive personal and financial consumer information without authorization." (Compl. ¶ 29). Although not specifically articulated by Plaintiff, the injuries caused by violations of these provisions bear a close relationship to two of the "traditionally recognized" harms identified by the *Ramirez* Court: "reputational harm" and "intrusion on seclusion." *Ramirez*, 141 S. Ct. at 2204 (citing *Meese v. Keene*, 481 U.S. 465, 473 (1987); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020)).

Because New York does not recognize a common-law right to privacy, courts sitting in this District look to traditional tort concepts and to the Restatement of Torts to carry out the historical common law analysis contemplated by *Spokeo* and *Ramirez*. *See, e.g.*, *Devitt v. Portfolio Recovery Assocs., LLC*, No. 21-CV-5657 (ARR) (ARL), 2022 WL 1460278, at *6 (E.D.N.Y. May 9, 2022). The Restatement recognizes as a "general principle" that "one who invades the right of privacy of another is subject to liability for the

resulting harm to the interests of the other." Restatement (Second) of Torts § 652A. "The traditional tort comprises four separate privacy causes of action: public disclosure of private facts, false light, intrusion upon seclusion, and appropriation of likeness." *Devitt*, 2022 WL 1460278, at *6. (quoting Restatement (Second) of Torts § 652A). Under the Restatement, a defendant may be liable for intrusion on seclusion where he "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B. Such intrusion "may be by some ... form of investigation or examination into his private concerns," and it is "[t]he intrusion itself [that] makes the defendant subject to liability, even though there is no publication or other use of any kind of the ... information outlined." *Id.* cmt. b. "The defendant is subject to liability under the rule ... only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* cmt. c. In line with these common law principles, the Supreme Court has recognized that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763–64 (1989).

*10 Legislative history indicates that the FCRA was adopted to vindicate these general rights to privacy, and to protect the public from harms similar to those redressable by common law claims for intrusion on seclusion. According to the "[c]ongressional findings and statement of purpose" section of the FCRA, the Act was in part adopted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a *respect for the consumer's right to privacy*." 15 U.S.C. § 1681a(a)(4) (emphasis added). Courts across the country have therefore interpreted the FCRA in general, and the permissible purposes section in particular, as protecting the public from intrusions upon seclusion and from invasions upon the right to privacy. *See, e.g.*, *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 489–93 (9th Cir. 2019) (comparing the harm attending a violation of the permissible purposes section of the FCRA as "closely related to—if not the same as—a harm that had traditionally been regarded as providing a basis for a lawsuit: intrusion upon seclusion."); *Browner v. Am. Eagle Bank*, 355 F. Supp. 3d 731, 737 (N.D. Ill. 2019) ("The claim here is ... simple[ ]: unauthorized access for no permissible purpose. The clear intent of Congress to preclude such access, taken in connection with the long legal history of protecting the

Case 1:25-cv-01393-MAD-MJK   Document 5   Filed 02/20/26   Page 100 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

privacy of confidential information, makes clear that the complaint alleges enough to carry the plaintiff's burden of alleging standing, including injury in fact."); *Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510, 522 (S.D.N.Y. 2017) (finding standing under FCRA and noting that "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue.") (quoting *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 636 (E.D. Va. 2016)); *Gillison v. Lead Express, Inc.*, No. 3:16-CV-41, 2017 WL 1197821, at *5 (E.D. Va. Mar. 30, 2017) (denying motion to dismiss permissible purpose claims for lack of standing, noting that "not only has Congress defined the invasion of one's privacy as an injury in fact, but courts traditionally have recognized statutory violations rooted in privacy invasions as a basis for suit").

Section 1681b of the FCRA in particular illustrates Congress' judgment that the collection and dissemination of certain personal information for certain purposes violates a consumer's right to privacy. As relevant here, Section 1681b(c)(3) prohibits a credit reporting agency from furnishing "to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer." 15 U.S.C. § 1681b(c)(3). This section implicitly acknowledges some limitations on the right to privacy by permitting agencies to collect and disclose certain personal information for specified purposes, but ensures that when an agency permissibly intrudes upon a consumer's seclusion by disclosing his personal information in response to an unsolicited request, additional damage to the consumer's privacy and reputational interests is not done by disseminating a record of that intrusion to other third parties. In tandem, Section 1681b and Section 1681e(a) mandate that agencies adopt reasonable procedures to prevent such disclosures; define as a matter of public policy the scope of an individual's right to privacy to credit-related information; and, with Sections 1681n and 1681o, make actionable any willful and negligent invasions upon that right which bear a close relationship to harms traditionally recognized at common law.

Here, Hines reportedly opted out of receiving prescreened offers of credit with the expectation that doing so would prevent his personal information from being disseminated without his authorization. (Hines Depo. Tr. at 32:17–23). Voicing his preference to be free from unsolicited offers of credit can be viewed as an attempt to "throw [a private seclusion] about his affairs," and Equifax's initial

unauthorized disclosure of his information, if considered "highly offensive," could itself be an actionable intrusion at common law. Restatement (Second) of Torts § 652B cmt. c. Even if Equifax's initial intrusion upon Hines' seclusion in disclosing his information in connection with a transaction that he did not initiate was permissible, reporting the inquiry constitutes a second, impermissible intrusion and allegedly caused reputational harm. (*See* Hines Depo. Tr. at 14:17–16:10; Leslie Depo. Tr. at 50:13–51:3, 57:7–58:7). At this stage, Hines has sufficiently demonstrated a likelihood that Equifax's failure to adopt reasonable procedures to prevent the furnishing of the Capital One Inquiry resulted in invasions upon his right to privacy and caused reputational harm. Both harms bear a sufficient relationship to harms traditionally recognized at common law, such that he has Article III standing to pursue damages on his § 1681e(a) and § 1681b claims.

### 4. Post-Dispute Publication Claims

 **\*11**  With respect to his Post-Dispute Publication claims under § 1681b(c), Hines argues that the distribution of disputed hard inquiry information to creditors caused reputational injuries sufficient to confer standing independently. (Pl.'s Reply at 3). As noted above, Hines alleges, and Equifax has confirmed, that his credit information was disseminated to at least one third party in June 2019, after the Capital One Inquiry was disputed but before it was removed from his credit file. (*See* Hines Depo. Tr. at 14:17–16:10; Leslie Depo. Tr. at 50:13–51:3, 57:7–58:7). The reputational harm that results from the disclosure of inaccurate or misleading credit information to third parties, as alleged here, has clearly been recognized as sufficient to confer standing. *See, e.g., Ramirez*, 141 S. Ct. at 2210; *Grauman*, 549 F. Supp. 3d at 292. Such harms are fairly traceable to Equifax's conduct and are redressable by monetary relief. Hines has therefore sufficiently demonstrated standing to pursue his § 1681b(c) claims.

### 5. Injunctive and Declaratory Relief

"[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *Ramirez*, 141 S. Ct. at 2208. Accordingly, Hines must independently demonstrate Article III standing to obtain injunctive and declaratory relief. (*See* Compl. at 16–17

2022 WL 2841909

(seeking orders declaring that Defendant's actions are in violation of the FCRA and NYFCRA and orders enjoining Equifax to comply with the relevant provisions of the NYFCRA)).

"Although past injuries may provide a basis to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Pryce*, 2022 WL 1085489, at *7 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)); *see also Pres. at Connetquot Homeowners Ass'n, Inc. v. Costco Wholesale Corp.*, No. 17-CV-7050 (JFB) (AYS), 2019 WL 337093, at *5 (E.D.N.Y. Jan. 28, 2019) ("When standing is premised on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that it will be wronged in a similar way.' ") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1982)); *Barry's Cut Rate Stores Inc.*, 2019 WL 7584728, at *19 (E.D.N.Y. Nov. 20, 2019) ("In seeking prospective relief like an injunction, 'a plaintiff must show that he can reasonably expect to encounter the same injury again in the future— otherwise there is no remedial benefit that he can derive from such judicial decree.' ") (quoting *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 222 (E.D.N.Y. 2015), *aff'd*, 630 F. App'x 61 (2d Cir. 2015)); *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ("The Supreme Court has 'repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.' ") (emphasis in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)).

Setting aside his concession that "[i]t is less than clear that injunctive relief is available under the FCRA,"[6] Plaintiff argues injunctive relief is appropriate under the NYFCRA "because Equifax engaged in a standardized, common course of conduct," (Pl.'s Mem. at 18) and because the agency "has not changed its uniform policy concerning disputes of hard inquiry information." (Pl.'s Reply at 3). However, " 'the existence of an official policy, on its own, is not sufficient to confer standing to sue for injunctive and declaratory relief on any individual who had previously been subjected to that policy,' unless the individual can also show a sufficient likelihood of future harm." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (quoting *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) (alterations omitted)). While Hines has alleged past injuries, and alleges that Equifax continues to willfully violate the requirements outlined by FCRA and NYFCRA (Compl ¶¶ 46–49), he has neither alleged nor

demonstrated any facts that suggest he is personally subject to ongoing harm or is likely to suffer the same harm again in the future if injunctive relief is not granted. The theoretical possibility that Equifax's improper reinvestigation practices will be applied to Hines detriment again at some unknown point in the future is insufficient to give him standing to sue for injunctive relief.[7]

6      Equifax argues that injunctive relief is not expressly authorized by either the FCRA or the NYFCRA, and is therefore unavailable. (Def's Opp. at 24). While it is well-settled that "injunctive relief is unavailable in suits brought by private parties" under the FCRA, *Grauman*, 549 F. Supp. 3d at 292 n.4 (citing *Ramirez*, 141 S. Ct. at 2197; *George v. Equifax Mortg. Servs.*, No. 06-CV-971 (DLI) (LB), 2010 WL 3937308, at *3 (E.D.N.Y. Oct. 5, 2010); *White v. First Am. Registry, Inc.*, 378 F. Supp. 2d 419, 424 (S.D.N.Y. 2005)); *see also Owoyemi v. Credit Corp Sols. Inc.*, No. 21 Civ. 8021 (GHW) (RWL), 2022 WL 993011, at *4 (S.D.N.Y. Mar. 31, 2022) ("The FCRA ... does not provide for injunctive relief to consumers."), the availability of injunctive relief under the NYFCRA is less clear, *compare Owoyemi*, 2022 WL 993011, at *6 (dismissing claim for injunctive relief with prejudice because such relief "is not available under either the FCRA or the NYFCRA") *and Sloan v. TransUnion, LLC*, No. 21-CV-769 (MAD) (ML), 2022 WL 2237639, at *3 (N.D.N.Y. June 16, 2022) (denying default judgment seeking injunctive relief pursuant to the FCRA and NYFCRA) *with White*, 378 F. Supp. 2d at 425 (noting that "while the NYFCRA expressly authorizes monetary damages, the absence of any mention of injunctive relief or an affirmative grant of power to seek injunctive relief does not necessarily and inescapably lead to the conclusion that the Legislature meant to preclude such relief for private plaintiffs"). Because there are independent grounds for denying injunctive relief, the Court need not determine whether such relief is available under the NYFCRA at this time.

7      Equifax also notes that the injunctive relief Plaintiff seeks would impermissibly amount to an order that Equifax "obey the law." (Def's Opp. at 24). Plaintiff responds that a more detailed injunctive order would be available upon further merits discovery

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 102 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

and is unnecessary at this time. (Pl.'s Reply 14). On this score, Plaintiff is correct. While Equifax is correct that an "obey the law" order similar to that described in the generalized prayer for relief of Hines' complaint would be invalid, *see S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232, 240 (2d Cir. 2001), should Hines prevail on the merits and should the Court find that he is entitled to injunctive relief, he would "have the opportunity to submit a proposed order of injunction for the Court's review." *See, e.g., Kaganovich v. McDonough,* 547 F. Supp. 3d 248, 279 (E.D.N.Y. 2021) (citing *Equal Emp. Opportunity Comm'n v. AZ Metro Distributors, LLC,* No. 15-CV-5370 (ENV) (PK), No. 15-CV-5370 (ENV) (PK), 2020 WL 7404432, at *14 (E.D.N.Y. Dec. 16, 2020)).

**\*12** Plaintiff similarly has not established standing to pursue declaratory relief. Under the Declaratory Judgment Act: "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "A court will generally decline to exercise its discretion to entertain a request for declaratory relief where such relief would serve 'no useful purpose.' " *Pryce,* 2022 WL 1085489, at *8 (quoting *Intellectual Capital Partner v. Inst. Credit Partners LLC,* No. 08 Civ. 10580, 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009)). "Declaratory relief serves 'no useful purpose' where 'legal issues will be resolved by litigation' of the underlying claims." *Id.* (quoting *Intellectual Capital Partner,* 2009 WL 1974392, at *6); *see also Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC,* No. 16-CV-6370 (SJF) (AYS), 2017 WL 6729854, at *12 (E.D.N.Y. Oct. 31, 2017), *aff'd* 736 F. App'x 274 (2d Cir. 2018) (same).

Here, Plaintiff seeks "[a]n order declaring that Defendant's actions are in violation of the FCRA" and "[a]n order declaring that Defendant's Actions are in violation of the NYFCRA." (Compl. at 16). The legal issues implicated by these requests will be resolved through litigation on the underlying claims, such that declaratory relief is unnecessary. Further, relief under the Declaratory Judgment Act is "intended to operate prospectively." *Guan v. Mayorkas,* 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021) (quoting *Storms v. United States,* No. 13-CV-811 (MKB), 2015 WL 1196592, at *21 (E.D.N.Y. Mar. 16, 2015)). As noted above, Plaintiff has not alleged or established that Equifax's policy will likely be

enforced against him again in the future such that prospective relief is appropriate.

Given the adequacy of remedies at law and Plaintiff's failure to allege prospective harm, the Court finds that Plaintiff has not established standing to seek injunctive or declaratory relief.

### C. Hines Has Class Standing

A named plaintiff in a putative class action has "class standing" to pursue claims on behalf of absent class members "if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW,* 693 F.3d at 162 (internal quotation marks and citations omitted). "When this standard is satisfied, the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf." *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon,* 775 F.3d 154, 161 (2d Cir. 2014).

The application of the *NECA-IBEW* test is straightforward here. As explained above, Hines has adequately demonstrated that he has personally suffered actual injuries as a result of Equifax's putatively illegal conduct; namely, Hines lost time and money in pursing doomed disputes of unauthorized hard inquiries, and suffered harms to his privacy and reputational interests as a result of Equifax's failure to adopt reasonable procedures to prevent the disclosure of personal information for impermissible purposes. Equifax's uniform conduct with respect to disputes of unauthorized inquiries is alleged to have caused the same injuries to absent class members and implicates the same set of concerns. Thus, Hines' litigation incentives are sufficiently aligned with the absent class members, and he may pursue claims on their behalf.

## II. Personal Jurisdiction

**\*13** As a second threshold issue, the Court must determine whether it has personal jurisdiction over the defendant and over out-of-state claims. Equifax correctly notes that the Court lacks general personal jurisdiction to adjudicate claims brought against it, since Equifax is a Georgia LLC with a principal place of business in Georgia, and therefore is not "at home" in New York. (*See* Def's Opp. at 25); *see also Daimler*

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 103 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

*AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Equifax also argues that the Court lacks specific personal jurisdiction to hear the claims of putative class members that arose outside of New York, because they lack a sufficient connection to the forum. (Def's Opp. at 25) (citing *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780–81 (2017)). I disagree.

In *Bristol-Myers*, the Supreme Court held that a California court lacked specific personal jurisdiction over non-California residents' mass tort claims in a consolidated products liability action because the conduct giving rise to their claims did not occur in the state. *Bristol-Myers*, 137 S. Ct. at 1781–82. However, that case "involved a state-court consolidated mass action, not a class action in federal court," *Cox v. Spirit Airlines, Inc.*, No. 17-CV-5172(EK) (VMS), 2022 WL 939732, at *18 (E.D.N.Y. Mar. 29, 2022), and thus was more limited in its holding than Equifax argues. Indeed, both the majority and the dissenting opinions explicitly acknowledged the limited nature of the Court's ruling. *See Bristol-Myers*, 137 S. Ct. at 1783–84 ("[S]ince our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."); *see also id.* at 1789 n.4 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there.").

"In the wake of the *Bristol-Myers* decision, lower federal courts have split on whether its rationale applies to federal nationwide class action under Rule 23 of the Federal Rules of Civil Procedure." *Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780 (MKB), 2019 WL 2088609, at *5 (E.D.N.Y. May 13, 2019), *adopted by* 2019 WL 3940846 (Aug. 19, 2019) (collecting cases). Only two circuit courts have directly addressed the applicability of *Bristol-Myers* to federal class actions—both held that it does not apply. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1126 (2021); *Lyngaas v. Ag*, 992 F.3d 412, 435 (6th Cir. 2021).

In *Mussat*, the Seventh Circuit explained that "absent class members are not full parties to the case for many purposes," such as determining whether diversity jurisdiction exists or whether venue is proper, and found "no reason

why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." *Mussat*, 953 F.3d at 447; *see also Devlin v. Scardelletti*, 536 U.S. 1, 9–10 (2002) ("Nonnamed class members ... may be parties for some purposes and not for others."). The court also noted that the superiority requirement of Rule 23(b)(3) and its corresponding committee notes advise courts considering whether to certify a class to consider " 'the desirability or undesirability of concentrating the litigation of the claims in the particular forum,' " in recognition of the fact that "a class action may extend beyond the boundaries of the state where the lead plaintiff brings the case." *Mussat*, 953 F3d at 448 (quoting Fed. R. Civ. P. 23(b)(3)). Accordingly, the *Mussat* court held that in a class action, "the absentees are more like nonparties, and thus there is no need to locate each and every one of them and conduct a separate personal-jurisdiction analysis of their claims." *Id.* at 448.

**\*14** In *Lyngaas*, the Sixth Circuit "follow[ed] their lead in holding that *Bristol-Myers Squibb* does not extend to federal class actions" for the same reasons. *Lyngaas*, 992 F.3d at 435. Succinctly distinguishing mass actions where *Bristol-Myers Squibb* clearly applies from class actions where it does not, the Sixth Circuit explained that in the class action context

> [t]he defendant is presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense. In this sense, the only suit before the court is the one brought by the named plaintiff. Thus, when the court considers whether the suit arises out of or relates to the defendant's contacts with the forum, the court need analyze only the claims raised by the named plaintiff, who in turn represents the absent class members.

*Id.* at 435 (internal quotation marks and citations omitted).

The Second Circuit has not specifically taken up the issue, but other courts in this Circuit have followed this majority rule and found that *Bristol-Myers* does not apply to federal

Case 1:25-cv-01393-MAD-MJK   Document 5   Filed 02/20/26   Page 104 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

class actions. *See Cox*, 2022 WL 939732, at *18 (granting motion for class certification over defendant's personal jurisdiction objections, adopting the reasoning in *Mussat* and *Lyngaas*); *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 317 (N.D.N.Y. 2019) ("This Court therefore does not believe that *Bristol-Myers Squibb* stands for the point of law that all putative class members in a class action must meet the requirements of personal jurisdiction imposed on plaintiffs in ordinary (non-class action) cases."); *see also Bank v. CreditGuard of Am.*, No. 18-CV-1311 (PKC) (RLM), 2019 WL 1316966, at *12 n.11 (E.D.N.Y. Mar. 22, 2019) (noting that "most district court decisions have held that *Bristol-Myers* does not apply to federal class actions" and collecting cases, but declining to decide the issue before class certification was sought). *But see In re Dental Supplies Antitrust Litig.*, No. 16-CV-696 (BMC) (GRB), 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (holding that *Bristol-Myers* applies to class actions in federal court and dismissing plaintiff's claims for lack of personal jurisdiction); *Spratley v. FCA US LLC*, No. 17-CV-0062, 2017 WL 4023348, at *6–7 (N.D.N.Y. Sept. 12, 2017) (same).

I agree with the majority of district courts that have addressed the issue, and with the Sixth and Seventh Circuits, and find that *Bristol-Myers* does not apply to federal class actions. Because absent class members are non-parties for jurisdictional purposes—including as explained above for the purposes of determining standing to litigate—there is no reason to treat them as parties for the purposes of determining personal jurisdiction. Rather, the Court can be satisfied that personal jurisdiction exists by examining only the claims of the named plaintiff, who represents the absent class members. In this case, it is enough that the Court unquestionably has personal jurisdiction over the claims of named plaintiff, a resident of Brooklyn, New York, which arise out of or relate to Equifax's conduct in and contacts with New York. (Compl. ¶ 4; Hines Depo. Tr. at 10:4–10). The Court's foregoing examination of the requirements of Rule 23 will ensure that absent class members' claims are sufficiently similar to Hines' such that concentrating the litigation in this forum is appropriate.

III. Class Action Certification Requirements

**\*15** Having determined that Plaintiff has sufficiently established standing and personal jurisdiction to pursue claims against Equifax, the Court now decides whether it is appropriate to certify the Plaintiff's proposed class and subclasses.

A. Legal Standards

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). As a result, the party seeking class certification must affirmatively demonstrate compliance with the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 11 (E.D.N.Y. 2020). In the Second Circuit, a party seeking class certification must also satisfy an implied requirement of ascertainability which requires that "a proposed class is defined using objective criteria that establish a membership with definite boundaries" and does not permit certification where "a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). In addition to the Rule 23(a) requirements and the implied requirement of ascertainability, a party seeking class certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp.*, 569 U.S. at 33. "[T]o certify a class pursuant to Rule 23(b)(3), a plaintiff must establish (1) predominance—'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority—'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.' " *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23(b)(3)). [8]

[8]   Although Plaintiff's class action complaint contains conclusions of law that repeat the requirements of Rule 23(b)(1) (Compl. ¶ 59), his memorandum of law in support of class certification addresses only certification of an injunctive relief class under Rule 23(b)(2) and certification of a class under the predominance and superiority requirements of Rule 23(b)(3). (Pl.'s Mem. at 15–18). Further, as described above, Plaintiff has not demonstrated Article III standing to pursue injunctive relief. "Courts cannot permit injunctive relief ... when plaintiffs would otherwise lack standing to seek such relief under Article III. Where there is no likelihood of future harm, there is no standing to seek an injunction, and so no possibility of being certified as a Rule 23(b)(2) class." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 148–49 (2d

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 105 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

Cir. 2020) (collecting cases); *see also Allegra v. Luxottica Retail N. Am.,* No. 17-CV-5216 (PKC) (RLM), 2022 WL 42867, at *18 (E.D.N.Y. Jan. 5, 2022) ("[T]he Second Circuit has made clear that there is no equitable or policy exception to the Article III standing requirements that would allow past purchasers like Plaintiffs to nonetheless maintain an injunctive class under Rule 23(b)(2)."). Accordingly, the Court will focus exclusively on the requirements of Rule 23(b)(3).

**\*16**  "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Id.; see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir. 2008) ("Today, we dispel any remaining confusion and hold that the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."). Importantly here, the same requirements and burden apply to the certification of subclasses. *See B & R Supermarket, Inc. v. MasterCard Int'l Inc.,* No. 17-CV-02738 (MKB), 2018 WL 1335355, at *3 n.7 (E.D.N.Y. Mar. 14, 2018) ("When establishing subclasses, each subclass must meet the Rule 23 class certification requirements.... The movant bears the burden of constructing the subclasses based on the requirements of Rule 23.") (citations omitted).

"Rule 23 should be construed 'liberally rather than restrictively' " and "[t]he 'general preference' of the Court of Appeals for the Second Circuit is 'granting rather than denying class certification.' " *Belfiore v. Procter & Gamble Co.,* 311 F.R.D. 29, 60 (E.D.N.Y. 2015) (quoting *Gortat v. Capala Bros.,* 257 F.R.D. 353, 361–62 (E.D.N.Y. 2009)). Nevertheless, "[a] court may certify a class action only if it concludes, after a 'rigorous analysis,' that the proposed class meets the requirements of Rule 23(a) and (b)." *In re Restasis,* 335 F.R.D. at 11 (quoting *Comcast Corp.* 569 U.S. at 33–34). This rigorous "analysis may 'entail some overlap with the merits of the plaintiff's claim' .... [b]ut courts may decide merits issues at class certification 'only to the extent they are relevant to' the application of Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011), then quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 466 (2013)).

B. Rule 23(a) Requirements and Ascertainability

1. Ascertainability

Although not an enumerated requirement under Rule 23, courts in the Second Circuit must find that "a proposed class is defined using objective criteria that establish a membership with definite boundaries" and will not certify the class where "a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Sec.,* 862 F.3d 250, 269 (2d Cir. 2017). This is not meant to be a demanding standard; rather, "it is designed only to prevent certification of classes whose membership is actually indeterminable." *Harte v. Ocwen Fin. Corp.,* No. 13-CV-5410 (MKB) (RER), 2018 WL 1830811, at *31 (E.D.N.Y. Feb. 8, 2018) (citing *Gomez v. Lace Enters., Inc.,* No. 15 Civ. 3326 (CM), 2017 WL 129130, at *8 (S.D.N.Y. Nov. 24, 2015)), *adopted in part by* 2018 WL 1559766 (E.D.N.Y. Mar. 30, 2018). While "membership of the class must be ascertainable 'at some point in the case,' it does not necessarily have to be determined prior to class certification." *Id.* (quoting *Sykes v. Mel Harris & Assocs., LLC,* 285 F.R.D. 279, 287 (S.D.N.Y. 2012)).

Here, Equifax raises no objections to the ascertainability of Hines' proposed class and subclasses. As they are described above, Hines' proposed class and subclass definitions use clear, objective criteria and establish class membership with definite temporal and geospatial boundaries such that class membership can be readily determined. Indeed, membership in the nationwide FCRA Class, New York Subclass, and Capital One Subclass can be ascertained simply by examining records of dispute correspondence, and the Post-Dispute Publication Subclass can be identified by examining a combination of dispute correspondence and the "Log F" or "MDB records" of consumer credit files created when Equifax distributed its products.[9] Accordingly, the Court finds that the ascertainability requirement is satisfied as to the nationwide FCRA Class and as to each of the three subclasses.

9    Although Equifax has raised no direct objections to this factor, its objections to the Post-Dispute Publication Subclass may bear on ascertainability. Specifically, Equifax argues there is no way to determine whether it disseminated a consumer report about a putative class member that included a disputed inquiry because Equifax does not maintain a copy of the reports it issues or a record reflecting the contents of those reports. (Def's Opp. at 20 (citing Def's Suppl. Resp. to Interrog.

2022 WL 2841909

No. 6; Leslie Depo. Tr 65:19–66:7; Gobin Decl. ¶ 22)). While Equifax does not retain copies of the reports it provides to its customers, MDB records provide a snapshot of the consumers' credit file at the moment an Equifax product containing their personal information is delivered, and Equifax's billing records describe the product that a customer ordered, the data that was included in the product, and the date the product was delivered. (Leslie Depo. Tr. at 15:18–17:24, 19:19–20:6). Cross referencing these documents could accordingly identify those individuals who suffered the harm alleged. Further, as the subclass is defined, membership is ascertainable by examining only correspondence and MDB records; it is liability, rather than class membership, that hinges on additional evidence proving that disputed hard inquiry information stemming from a non-consumer initiated transaction was disseminated to a third party.

## 2. Numerosity

**\*17** Rule 23(a)(1) requires a finding that the class is "so numerous that joinder of all members is impracticable." *Fed. R. Civ. P. 23(a)(1)*. "In the Second Circuit, numerosity is presumed for classes of [forty] or more." *In re Restasis,* 335 F.R.D. at 11 (citing *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995)); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 252 (2d Cir. 2011) (same). "[I]n assessing numerosity a court may make common sense assumptions without the need for precise quantification of the class." *Chime v. Peak Sec. Plus, Inc.* 137 F. Supp. 3d 183, 207 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). "There is no requirement to specify an exact class size in order to demonstrate numerosity," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 293 F.R.D. 287, 300 (E.D.N.Y. 2013), and "numerosity may be fulfilled by extrapolating from a sample," *Harte,* 2018 WL 1830811 at \*27. "However, if 'the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails.' " *Pryce,* 2022 WL 1085489, at \*13 (quoting *Edge v. C. Tech Collections, Inc.,* 203 F.R.D. 85, 89 (E.D.N.Y. 2001)).

According to interrogatories produced by Equifax and the testimony of Equifax representatives, [Redacted] consumers nationwide received [Redacted], including [Redacted] consumers in New York. (Def's Suppl. Resps. to Interrog.

Nos. 1 and 8 at 3; Leslie Depo. Tr. at 42:12–18, 48:4–8). This is more than sufficient to satisfy the numerosity requirement for the nationwide FCRA Class and the New York Subclass. With respect to the Capital One Subclass, Equifax has produced [Redacted] hard inquiry dispute letters that mention "Capital One," (Sartell Decl. ¶¶ 3–5), which gives rise to a common sense assumption that at least forty class members, if not the full [Redacted], disputed a hard inquiry associated with Capital One. Those class members would have received [Redacted] pursuant to Equifax's internal policies. (Gobin Decl. ¶ 20). Finally, with respect to the Post-Dispute Publication Subclass, MDB records indicate that for New York consumers alone, Equifax delivered information regarding more than [Redacted] of the New York consumers to third parties after it had already received a hard inquiry dispute from the consumer. (Def's Suppl. Resp. to Pl.'s Interrog. No. 6 at 2; Leslie Depo. Tr. at 47:3, 59:9–19, 64:1–15, 82:14–83:3). Extrapolating from this sample, it is reasonable to assume that an even greater number of consumers received similar treatment nationwide, and that Equifax disseminated disputed hard inquiry information stemming from a non-consumer initiated transaction to a third party in more than forty of those cases. Accordingly, the court finds that the numerosity requirement is satisfied for the nationwide FCRA Class and for each of the three subclasses.

## 3. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." *Fed. R. Civ. P. 23(a)(2)*. "Even a single common question will do." *Dukes,* 564 U.S. at 359 (alterations and citations omitted). To show commonality, a movant must demonstrate that the class claims "depend upon a common contention" that "is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "[W]hat matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (internal quotation marks and citations omitted). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson,* 780 F.3d at 137–38 (quoting *Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750, 756 (7th Cir. 2014)).

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 107 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

**\*18**  Hines asserts that commonality is satisfied here because the nationwide FCRA class and the subclasses raise common factual and legal questions with respect to Equifax's "standard policies and practices" for processing and reinvestigating hard inquiry disputes, for preventing its customers, including Capital One, from obtaining consumer reports for impermissible purposes without authorization, and for preventing disputed hard inquiries from being disseminated in subsequent consumer reports. (Pl.'s Mem. at 12–13). Equifax generally raises concerns regarding predominance that are more adequately evaluated under the framework of Rule 23(b), but briefly notes that Hines' common questions "all reduce to the same inquiry: Did Equifax violate the FCRA and NYFCRA?" which "does little to advance the resolution of this case" and renders the commonality requirement unsatisfied. (Def's Opp. at 12–13, 13 n.9). I disagree. Because common factual questions regarding the uniform application of Equifax's policies and practices and common legal questions regarding the reasonableness of those policies and practices sit at the core of this action and apply to all class and subclass members, the Court finds that Plaintiff has sufficiently demonstrated compliance with Rule 23's commonality requirements.

### 4. Typicality

Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "While the commonality inquiry establishes the existence of a certifiable class, the typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions." *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997). Typicality is found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 121 (E.D.N.Y. 2019) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)); *see also Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 82 (E.D.N.Y. 2007) ("The typicality requirement is generally satisfied 'as long as plaintiffs assert that defendants committed the same wrongful acts in the same manner against all members of the class.' ") (quoting *In re Medical X-ray Film Antitrust Litigation*, No. 93-CV-5904, 1997 WL 33320580 at \*4 (E.D.N.Y. Dec. 26, 1997)). "Minor variations in the fact patterns underlying individual claims" will not preclude typicality. *Robidoux*, 987 F.2d at 936–37. But while "the mere

existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir. 2000) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017)).

Hines asserts that his "claims are typical of those of other class members." (Pl.'s Mem. at 13). In particular, he contends that he and all other nationwide FCRA class members disputed a hard inquiry in writing and received Equifax's [Redacted] form response pursuant to Equifax's inadequate reinvestigation policy (Pl.'s Mem. at 13). He contends that his claims are typical of the New York Subclass members as he is a New York resident who suffered the same injury from the same course of conduct as other New York resident subclass members (Pl.'s Mem. at 14), that his claims are typical of the Capital One Subclass because he and all other subclass members disputed the unauthorized dissemination of private information to Capital One (Pl.'s Mem. at 14), and that his claims are typical of the Post-Dispute Publication subclass because he suffered the same harm from the same course of conduct when Equifax included a disputed, unauthorized hard inquiry in credit products that it disseminated to customers (Pl.'s Mem. 14). Equifax does not oppose class certification on typicality grounds, and has identified no defenses which uniquely apply to Hines' claims that threaten to become a focus of the litigation. Because each class and subclass member's claim depends on the same legal arguments and the same underlying course of conduct by Equifax, and because no unique defenses applicable only to Hines are apparent from the record, the Court finds that the typicality requirement of Rule 23(a)(3) is satisfied.

### 5. Adequacy of Representation

**\*19**  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing adequacy of representation, courts consider "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) [whether] plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons*, 502 F.3d 91, 99

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 108 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

(2d Cir. 2007) (quoting *Baffa,* 222 F.3d at 60). "This process 'serves to uncover conflicts of interest between named parties and the class they seek to represent.' " *Id.* (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613 (1997)). "Courts rarely deny class certification on the basis of the inadequacy of class representatives, doing so only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." *Bayne,* 2021 WL 4822426, at *7 (quoting *In re Pfizer Inc. Sec. Litig.,* 282 F.R.D. 38, 51 (S.D.N.Y. 2012)). Indeed, "the requirement that the class representative have knowledge of the facts of the case is a 'modest one.' " *Vergara v. Apple REIT Nine, Inc.,* No. 19-CV-2027 (DLI) (RML), 2021 WL 1103348, at *3 (E.D.N.Y. Feb. 5, 2021) (quoting *Decastro v. City of New York,* No. 16 Civ. 3850, 2019 WL 4509027, at *12 (S.D.N.Y. Sept. 19, 2019)).

Defendant here does not challenge the adequacy of Plaintiff or his chosen counsel. Plaintiff contends that he holds no conflicts of interest, and Defendant has not uncovered any such conflicts in deposing him. (Pl.'s Mem. at 14–15; Hines Depo. Tr. at 119:16–124:15). Further, Hines has demonstrated sufficient familiarity with the suit, his claims, and his role as class representative to meet the "modest" requirements of Rule 23(a)(4). (Pl.'s Mem. at 14; *see also* Hines Depo. Tr. at 117:9–23, 119:2–123:23). With respect to counsel: Hines is represented by five law firms, four of which have demonstrated experience in pursuing complex FCRA and consumer protection claims in individual representations and in the class action context. (Pl.'s Mem. at 14 n.10 (discussing the experience of Francis Mailman Soumilas, P.C., Skaar & Feagle, LLP, Robert Sola, P.C., and The Adkins Firm, P.C.); *see also* ECF Nos 44-23–44-26 (collectively, "Firm Bios") (same)). Indeed, these same four firms are counsel of record in the *Rivera* Action. (ECF No. 27 at 2 n.2).[10] Because Defendant has not challenged the adequacy of the Plaintiff or his chosen counsel, because Plaintiff's interests are not antagonistic to the class, and because his counsel have sufficient qualifications to represent the class, the Court concludes that the Plaintiff has satisfied his burden of establishing adequacy under Rule 23(a)(4).

[10]    The omission of the Mallon Consumer Law Group, PLLC is discussed further below. *See infra* Section III.D.

## C. Rule 23(b)(3) Requirements—Predominance and Superiority

Having found that Plaintiff satisfies Rule 23(a)'s requirements, the Court must consider whether he has satisfied the requirements of Rule 23(b)(3). A court may only certify a class under Rule 23(b)(3) if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

In the Second Circuit, "[p]redominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.' " *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Catholic Healthcare W. v. U.S. Foodservice Inc. (In re U.S. Foodservice Pricing Litig.),* 729 F.3d 108, 118 (2d Cir. 2013)); *see also In re AXA Equitable Life Ins. Co. COI Litig.,* No. 16-CV-740 (JMF), 2020 WL 4694172, at *14 (S.D.N.Y. Aug. 13, 2020) ("Common questions are not just 'more substantial' than individual ones — they form the crux of the class claims.") (citing *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2010)).

**\*20**    Evaluating predominance requires a " 'more demanding' " inquiry than that required to find commonality under Rule 23(a), in which courts examine whether "common issues can profitably be tried on a class-wide basis, or whether they will be overwhelmed by individual issues." *Johnson,* 780 F.3d at 138 (quoting *Comcast Corp.,* 569 U.S. at 34); *see also Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 453 (2016) ("The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." (internal quotation marks and citations omitted)). As a result, courts must "give careful scrutiny to the relation between common and individual questions in a case." *Bouaphakeo,* 577 U.S. at 453. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 109 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.' " *Id.* (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)).

In undertaking the predominance inquiry, courts typically begin by considering the elements of the underlying causes of action. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 (JG) (VVP), 2014 WL 7882100, at *35 (E.D.N.Y. Oct. 15, 2014) (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)), *adopted by* 2015 WL 5093503 (July 10, 2015). However, the rule "does not require a plaintiff seeking class certification to prove that each element of [his] claim is susceptible to class wide proof," but requires that he "show that 'questions common to the class predominate, and not that those questions will be answered, on the merits, in the favor of the class.' " *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 273 (E.D.N.Y. 2019) (quoting *Amgen*, 568 U.S. at 459, 468). "Typically, common issues predominate when liability is determinable on a class-wide basis, even where class members have individualized damages." *Id.* (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001), *abrogated on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.' " *Bouaphakeo*, 577 U.S. at 453–454 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)). [11]

[11]    Equifax argues, in part, that the Court cannot certify a class where individual questions regarding damages will predominate. (Def's Opp. at 20–23). However, as noted above, individualized issues with respect to damages do not necessarily preclude a finding that common issues predominate. Indeed, "it is well-established in this Circuit that 'individualized damages determinations alone cannot preclude certification under Rule 23(b)(3),' and proponents of class certification need not 'rely upon a class-wide damages model to demonstrate predominance.' " *Pryce*, 2022 WL 1085489, at *19 n.8 (citing *Roach*, 778 F.3d at 408–09). Further, as Hines notes, since statutory and punitive damages are sought here for each class member, rather than

actual damages, no such individualized inquiry is required. (Pl.'s Mem. at 16).

a. Section 1681i — Reinvestigation Class Claims [12]

[12]    Violations of the reinvestigation provisions of the NYFCRA are evaluated in an identical manner to those brought under Section 1681i. *See, e.g.*, *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10 Civ. 3760 (PAE), 2013 WL 1430467, at *9 n.7 (S.D.N.Y. Apr. 8, 2013) ("[T]he Court construes [N.Y. Gen. Bus. Law § 380-f(a)] in the same way as its similar federal analogue."); *Abdallah v. LexisNexis Risk Sols. FL Inc.*, No. 19-CV-3609 (RRM) (VMS), 2021 WL 1209419, at *8 (E.D.N.Y. Mar. 30, 2021), *reconsideration denied*, 2021 WL 6197060 (E.D.N.Y. Dec. 30, 2021).

*21 Section 1681i requires that "if a consumer notifies a consumer reporting agency—either directly or indirectly [through a reseller]—of a dispute as to the accuracy of any item of information contained in his file, within thirty days of notification, the consumer reporting agency 'shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.' " *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367 (MKB), 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019) (quoting 15 U.S.C. § 1681i(a)(1)(A); *Jones*, 982 F. Supp. 2d at 272 (S.D.N.Y. 2013)). "What constitutes a 'reasonable' reinvestigation depends on the circumstances of the allegations." *Id.* (citing *Jones*, 982 F. Supp. 2d at 272). However, in undertaking a reinvestigation, the agency must at a minimum "review and consider all relevant information submitted by the consumer ... with respect to such disputed information," and must forward such relevant information to "any person who provided any item of information in dispute." 15 U.S.C. §§ 1681i(a)(2), (4). Importantly, "the statutory responsibility imposed on the credit report agency 'must consist of something more than merely parroting information received from other sources.' " *Jones*, 982 F. Supp. 2d at 273 (quoting *Gorman v. Experian Info. Solutions, Inc.*, No. 07 Civ. 1846 (RPP), 2008 WL 4934047, at *5 (S.D.N.Y. Nov. 19, 2008)). If an agency reasonably determines that the consumer's dispute is "frivolous or irrelevant"—for example, where the consumer fails to provide sufficient information to conduct a reinvestigation—it may terminate its reinvestigation of a consumer's dispute, provided that it provides the consumer with notice within five days of making that determination, explaining the agency's reasoning and

2022 WL 2841909

identifying any information that it would need to actually investigate the dispute. 15 U.S.C. § 1681i(a)(3). "Ultimately, it is up to the trier of fact to weigh [various] considerations in determining whether the CRA conducted a reasonable reinvestigation" under the circumstances. *Jones*, 982 F. Supp. 2d at 273 (citing *Cushman v. TransUnion Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)).

Unless the dispute is made through a reseller, a consumer must directly dispute an alleged inaccuracy in order to trigger the duty to reinvestigate. 15 U.S.C. § 1681i(a)(1)(A); *see also Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 104 (2d Cir. 1997) ("[T]he statutory duty [to reinvestigate] is triggered only by direct requests from *consumers*, and ... no claim could have arisen here until [plaintiff] himself communicated with TransUnion to dispute his credit record."). "A consumer has not 'directly' contacted a credit reporting agency when ... she merely signs up for a credit repair service and then has no further involvement with, or even knowledge of, the disputes submitted putatively on her behalf." *Cohen v. Equifax Info. Servs., LLC*, No. 18 Civ. 6210 (JSR), 2019 WL 5200759, at *6 (S.D.N.Y. Sept. 13, 2019). *But see Milbauer v. TRW, Inc.*, 707 F. Supp. 92, 95 (E.D.N.Y. 1989) (holding that "consumer reporting agencies ... are not privileged to ignore a consumer's dispute simply because that dispute is submitted by a third party," and noting that such third party submissions "do[ ] not constitute a complete defense" to reinvestigation claims).

Additionally, to succeed on a Section 1681i claim, a plaintiff "must demonstrate that the disputed information is inaccurate." *Khan*, 2019 WL 2492762, at *3 (quoting *Gestetner v. Equifax Info. Servs. LLC*, No. 18 Civ. 5665 (JFK), 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019)); *see also Cohen v. Equifax Info. Servs., LLC*, 827 F. App'x 14, 16 (2d Cir. 2020) (summary order) ("The parties agree that a plaintiff must demonstrate that her credit report contained inaccurate information in order to prevail on a claim under § 1681e(b) or § 1681i."); *Artemov v. TransUnion, LLC*, No. 20-CV-1892 (BMC), 2020 WL 5211068, at *2 (E.D.N.Y. Sept. 1, 2020) ("In considering a challenge under § 1681e(b) or § 1681i, the 'threshold question' is whether the disputed credit information is accurate; if the information is accurate, 'no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary.' ") (quoting *Whelan v. TransUnion Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994)); *Jones*, 982 F. Supp. 2d at 272–73 (S.D.N.Y. 2013) ("[A] 'plaintiff asserting claims under § 1681i must demonstrate that the disputed information is inaccurate in order to prevail on allegations that a consumer

reporting agency had failed to reasonably reinvestigate a disputed item.' ") (quoting *Fashakin v. Nextel Commc'ns.*, No. 05-CV-3080 (RRM), 2009 WL 790350, at *11 (E.D.N.Y. Mar. 25, 2009)). "Although the Second Circuit has yet to address the issue, 'the overwhelming weight of authority holds that a credit report is inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect on credit decisions.' " *Abdallah*, 2021 WL 6197060, at *7 (quoting *Gross v. Priv. Nat'l Mortg. Acceptance Co., LLC*, 512 F. Supp. 3d 423, 426 (E.D.N.Y. 2021)). If disputed information is found to be inaccurate or incomplete, or if it cannot be verified pursuant to a reinvestigation, it must be deleted from the consumer's credit report. *See* 15 U.S.C. § 1681i(a)(5)(A)(i); *see also Okocha v. TransUnion LLC*, No. 08-CV-3107, 2011 WL 2837594, at *7 (E.D.N.Y. Mar. 31, 2011), *aff'd* 488 F. App'x 535 (2d Cir. 2012).

**\*22** Plaintiff maintains that with respect to his Section 1681i claims, Equifax's transmission of [Redacted] to all nationwide FCRA class members and New York Subclass members in response to hard inquiry disputes, and the legal sufficiency of that transmission to satisfy Section 1681i's reinvestigation requirements are common factual and legal issues that predominate over any individual issues. (Pl.'s Mem. at 15). However, as described in more detail below, Equifax argues that "overwhelmingly individualized evidence" rather than "common proof" must be presented to show that each disputed hard inquiry was in fact "inaccurate" and to show that each hard inquiry was disputed "directly" by the individual consumer class member, such that the predominance requirement is not satisfied and class certification is unwarranted. (Def's Opp. at 13–18).

With respect to "inaccuracy," Equifax argues that its policy of categorizing disputes as "Miscellaneous/Not Mine" cannot be relied upon to determine whether an inquiry was, in fact, unauthorized and therefore inaccurate, particularly since certain dispute letters produced in this case were sorted into that category but do not clearly articulate the reason for the dispute, or otherwise indicate that the inquiry may have been disputed for different reasons. (Def's Opp. at 5–6, 14). For example, Equifax argues that produced dispute letters sorted into the "Miscellaneous/Not Mine" category reveal instances where consumers disputed an inquiry because Equifax failed to comply with the "permissible purpose" provisions of the FCRA or because the inquiry was otherwise "false" without further explanation. (Def's Opp. at 5–6; *see also* Pritchard Decl. ¶¶ 6–7). Further, Equifax argues that consumers may

Case 1:25-cv-01393-MAD-MJK   Document 5   Filed 02/20/26   Page 111 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

have acquired an accurate inquiry as "unauthorized" because they forgot that they engaged in the transaction that resulted in the inquiry, did not recognize the name of the creditor as it appeared on their credit report, did not expect a known transaction to result in an inquiry, or falsely disputed the inquiry in an attempt to improve their credit score. (Def's Opp. at 5; *see also* Gobin Decl. ¶ 12; Hendricks Depo. Tr. at 54:4–18; Turner Expert Rep. ¶ 18).

According to Equifax, determining whether an inquiry was "unauthorized" and "inaccurate" will therefore require a direct review of each consumer's individual dispute correspondence, review of other relevant documents, and testimony from consumers and from the representatives of data inquirers to determine whether each disputed inquiry was actually authorized, or whether the data inquirer believed they had some other permissible purpose to obtain the information. (Def's Opp. at 14–16). As a result, Equifax maintains that individual issues of fact predominate and will demand thousands of mini-trials to determine whether each class member has a valid claim. Indeed, Equifax argues that adjudicating Hines' individual claims will require a review of documentation and testimony from Hines and from Capital One to determine whether he applied for credit and authorized the Capital One Inquiry, and that the same process must be followed "for each putative class member" showing "consumer-specific evidence proving that the inquiries about them should not have occurred." (Def's Opp. at 15) (citing *Mazzei v. Money Store,* 829 F.3d 260, 232–73 (2d Cir. 2016)).

Plaintiff responds that class-wide proof can demonstrate, and indeed has demonstrated, that upon notification of a presumptively bona fide dispute from a consumer regarding a hard inquiry,[13] Equifax uniformly responds by sending [Redacted] without further investigating the circumstances of the inquiry, and therefore uniformly fails to satisfy its obligations under Section 1681i to delete disputed information, reinvestigate disputed information, or decline to reinvestigate for cause upon proper notice to the consumer. (Pl.'s Reply at 5–9). According to Hines, Equifax should have conducted individualized inquiries into the accuracy of disputed information, reviewed documentary evidence, and considered statements from complaining consumers and relevant data inquirers regarding whether the inquiry was authorized or otherwise inaccurate within the thirty day window for reinvestigation established by § 1681i, or alternatively should have notified the complaining consumer at that time that he or she did not provide sufficient information to conduct such an inquiry. (Pl.'s Reply at 4). Put

differently, Hines argues that Equifax "cannot now claim ... that had it reinvestigated it would have come up with results that showed that some of the inquiries were accurate." (Pl.'s Reply at 6). Rather, their failure to reinvestigate constitutes a violation of § 1681i, and "[t]o require more of a disputing consumer now, as Equifax suggests, when the agency neither reinvestigates nor deletes the disputed information, places consumers in an untenable Catch 22." (Pl.'s Reply at 8). Further, Hines argues that to the extent merits discovery exposes evidence indicating that Equifax shared consumer data for permissible purposes, or that Equifax properly declined to investigate, the relevant individuals can be identified using representative or statistical methods and can be administratively removed from the class. (Pl.'s Reply at 4 n.3).

13    According to the Federal Trade Commission, "[a] CRA must assume a consumer's dispute is bona fide, unless there is evidence to the contrary. Such evidence may constitute receipt of letters from consumers disputing all information in their files without providing any allegations concerning the specific items in the files, or of several letters in similar format that indicate that a particular third party (e.g., a 'credit repair' operator) is counseling consumers to dispute all items in their files, regardless of whether the information is known to be accurate." Fed. Trade Comm'n, *40 Years of Experience With the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations,* 2011 WL 3020575, at *69 (July 2011) (citing 1990 Commentary on the Fair Credit Reporting Act, Appendix to Part 600, comment 611-11).

**\*23** With respect to "directness," Equifax argues that determining whether a consumer class member directly disputed his or her inquiry will similarly require reviewing individual dispute correspondence "for indicia that the dispute was made by a [credit repair organization] or other third party"—such as [Redacted]—and would require the assessment of further evidence related to the class member's participation in generating and submitting the dispute to make an affirmative determination that he or she "directly" disputed the alleged inaccuracy. (Def's Opp. at 17–18; *see also* Gobin Decl. ¶ 14). To support this argument, Equifax points to [Redacted] dispute letters which contain such indicia of indirectness. (Def's Opp. at 18; *see also* Pritchard Decl. ¶¶ 3–5). Hines argues that these alleged indicia of indirectness are based in speculation and are supported by cherry-picked evidence, and that to the extent "indirect disputes" exist

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 112 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

and preclude recovery, the relevant class members can be identified and administratively removed from the class. (Pl.'s Reply at 9–10).

Although Equifax raises legitimate concerns regarding the feasibility of evaluating individualized issues of inaccuracy and directness, the crux of the class claim here is whether treating disputed hard inquiries as accurate without any further investigation, sending [Redacted], and shifting the burden to consumers to investigate allegedly unauthorized inquiries by contacting their customers satisfies Equifax's reinvestigation obligations under § 1681i. Hines has demonstrated that Equifax's common course of conduct in response to hard inquiry disputes is susceptible to class-wide proof, (*see, e.g.*, Equifax Dispute Policy Manual v.17 at 37; Equifax Dispute Policy Manual v.22 at 35; Equifax Training & QA at 3; Gobin Decl ¶¶ 9, 18, 20), and the legal sufficiency of Equifax's reinvestigation practices may therefore be evaluated on a class-wide basis. While inaccuracy and directness are "important matter[s]" bearing on individual class members' ability to recover that may "have to be tried separately," *Bouaphakeo*, 577 U.S. at 453–54, or may require developing a method of administratively removing individuals from the class, issues regarding the legal sufficiency of Equifax's common course of conduct predominate over these individualized issues. Accordingly, these individualized issues do not defeat predominance.

Therefore, despite Equifax's legitimate concerns regarding individualized accuracy and directness issues, I find that common legal questions susceptible to class-wide proof predominate such that Plaintiff's claims under § 1681i and N.Y. Gen. Bus. Law § 380-f are amenable to class resolution.

b. Section 1681e(a) — Capital One Subclass Claims

Because the statutes reference one another, the Court considers the Reasonable Procedures claims brought on behalf of the Capital One Subclass under sections 1681e(a) and 1681b together. Section 1681e(a) requires that consumer reporting agencies "maintain reasonable procedures designed ... to limit the furnishing of consumer reports to the purposes listed under section 1681b .... These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a); *see also Pietrafesa v. First Am. Real Est.*

*Info. Servs., Inc.*, No. 05-CV-1450, 2007 WL 710197, at *3 (N.D.N.Y. Mar. 6, 2007) ("These reasonable procedures must include a requirement that the prospective users of information: (1) identify themselves; (2) certify the purposes for which the information is sought; and (3) certify that the information will be used for no other purpose."). Under this section, "no consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b[.]" 15 U.S.C. § 1681e(a). "To determine whether the consumer reporting agency maintained reasonable procedures, the standard of conduct is what a reasonably prudent person would do under the circumstances." *Pietrafesa*, 2007 WL 710197, at *3 (quoting *Dobson v. Holloway*, 828 F. Supp. 975, 977 (M.D. Ga. 1993)); *see also Obabueki v. Int'l Bus. Machines Corp.*, 145 F. Supp. 2d 371, 395–96 (S.D.N.Y. 2001) (liability may be imposed upon a credit reporting agency for failing to act reasonably in complying with the FCRA), *aff'd* 319 F.3d 87 (2d Cir. 2003). [14]

[14]     Notably, only one court in this Circuit has evaluated claims brought specifically for violations of § 1681e(a). *See Pietrafesa*, 2007 WL 710197, at *4 (finding on summary judgment that defendant agency complied with the requirements enumerated in § 1681e and that plaintiff "failed to identify any deviations from the standard of care to be used by credit reporting agencies in maintaining reasonable procedures to comply with §§ 1681b and 1681c").

**\*24** In turn, "[t]o prove a violation of section 1681b, a plaintiff must show that credit information was obtained for an impermissible purpose." *Ogbon*, 2013 WL 1430467, at *10 (quoting *Stonehart v. Rosenthal*, No. 01 Civ. 651 (SAS), 2001 WL 910771, at *3 (S.D.N.Y. Aug. 13, 2001); citing *Perl v. Am. Express*, 12 Civ. 4380 (ER), 2012 WL 2711270, at *2 (S.D.N.Y. July 9, 2012)). "Conversely, a showing of a permissible purpose is a complete defense." *Stonehart*, 2001 WL 910771, at *3 (citing *Advanced Conservation Sys. Inc. v. Long Island Lighting Co.*, 934 F. Supp. 53, 54 (E.D.N.Y. 1996)). Further, "[t]he fact that a consumer report is furnished for an impermissible purpose does not result in automatic liability. Liability is imposed only when the consumer reporting agency either willfully or negligently fails to maintain reasonable procedures to avoid violations of, *i.e.*, § 1681b." *Pietrafesa*, 2007 WL 710197, at *3 (internal quotation marks and alterations omitted); *see also Betz v.*

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 113 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

*Matte*, No. 12-CV-5946 (SJF) (ETB), 2013 WL 5603846, at *2 (E.D.N.Y. Oct. 10, 2013) ("To state a claim based on Section 1[6]81b of the FCRA, 'a plaintiff must allege both that the defendant used or obtained the plaintiff's credit report for an impermissible purpose, and that the violation was willful or negligent.' ") (quoting *Perl*, 2012 WL 2711270, at *2).

In connection with the § 1681e(a) claims of the Capital One Subclass, Plaintiff argues that in addition to common factual questions regarding the procedures used by Equifax to prevent unauthorized disclosures to its customers generally and to Capital One in particular, common legal questions regarding the reasonableness of those procedures predominate over any individualized issues. (Pl.'s Mem. at 16; *see also* Pl.'s Reply at 10–11). Equifax argues that even assuming class members' disputed Capital One inquiries correspond with truly unauthorized transactions, there are other permissible purposes for obtaining consumer information that Capital One may have had, such that "to adjudicate the class members' [claims], the factfinder would have to delve even more deeply into the class member-specific facts to determine if Capital One had *any* permissible purpose to obtain their consumer report," and would need to prove that Equifax had a "reason to believe" that Capital One would not use the data for a permissible purpose. (Def's Opp. at 19).

Although individual questions concerning whether Capital One had a permissible purpose to obtain consumer information are relevant here, such questions are secondary to and outweighed by common questions concerning the reasonableness of Equifax's standardized procedures. Specifically, the Court is satisfied that questions of law concerning whether Equifax's procedures meet the minimum requirements established by § 1681e(a) and were objectively reasonable as applied to its transactions with Capital One, are susceptible to common proof and predominate over those individualized issues that can be adjudicated separately. Indeed, even if showing a permissible purpose as to certain class members would serve as a complete defense, the fact that such a defense "may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *In re Visa Check*, 280 F.3d at 138 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288. 296 (1st Cir. 2000)). "[T]he question for purposes of determining predominance is not whether a defense exists, but whether the common issues will predominate over the individual questions raised by

that defense." *Id.* Here again, Equifax's common course of conduct and generally applicable procedures are the predominant concern, rather than their application to each class member's disputed inquiry. Further, while Equifax argues that liability requires a finding that Equifax had a "reason to believe" that Capital One acted improperly in each instance (Def's Opp. at 19), the high volume of Capital One-related dispute letters suggests that representative or statistical proof may be used to evaluate whether, under the circumstances, Equifax should have known Capital One was improperly using consumer data. (*See* Pl.'s Reply at 10; *see also* Sartell Decl. ¶¶ 3–5).

c. Section 1681b(c)(3) — Post Dispute Publication Subclass

**\*25**  Under Section 1681b(c)(3), "a consumer reporting agency shall not furnish to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer." 15 U.S.C. § 1681b(c)(3). As Equifax notes, there is a scarcity of case law evaluating claims brought under this section. (*See* Def's Opp. at 11 n.8). Nevertheless, the application of the provision is straightforward—an agency violates this provision by furnishing to any person a record of an inquiry that corresponds with a credit or insurance transaction that the consumer did not initiate.

Plaintiff contends that the Post-Dispute Publication Subclass claims raise "predominating factual issue[s]" regarding whether a consumer disputed a hard inquiry with Equifax and "whether Equifax prepared a credit report about that consumer for one of its customers after the dispute that included the disputed hard inquiry[,]" which "implicate[ ] the legal issue of whether such conduct violates" the provisions of § 1681b(c)(3). (Pl.'s Mem. at 15–16). Equifax argues that in addition to proving that each class member's disputed inquiry was, in fact, "unauthorized," these claims require proving that each class member's disputed hard inquiry was shared with a third party, and that there is no common evidence available to establish that element of the claim since Equifax does not retain copies of the consumer reports it transmits to its customers. (Def's Opp. at 20) (citing Pl.'s Mem. at 8; Def's Suppl. Resp. to Pl.'s Interrog. No. 6; Leslie Depo. Tr. at 65:19–66:7, 83:4–20; Gobin Decl. ¶ 22). Hines replies that the MDB records reflecting the sale of credit reports to third parties should suffice as common evidence to prove these claims, and further contends that certification should not be defeated simply because Equifax—a data broker—maintains unreliable records. (Pl.'s Reply at 11–12).

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 114 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

In general, "[c]ommon issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria, thus rendering unnecessary an evidentiary hearing on each claim." *Shady Grove*, 293 F.R.D. at 306 (quoting *Smilow v. Sw. Bell Mobile Sys's., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)). Here, using computer records and objective criteria, Equifax has been able to identify and aggregate those New Yorkers who received [Redacted] and about whom confirmation was transmitted after a hard inquiry dispute was made (Def's Suppl. Resp. to Pl.'s Interrog. No. 6 at 2), and has suggested that Log F and MDB records generated at the time of delivery can be cross referenced against Equifax's billing records to determine whether the product delivered included the disputed hard inquiry information (Leslie Depo. Tr. at 15:18–17:24).

Importantly, though, these computer records are not able to determine whether the consumer initiated the transaction that caused the hard inquiry. And unlike the FCRA Class claims, which focus predominantly upon the propriety of Equifax's uniform reinvestigation practices in response to hard inquiry disputes, and the Capital One Subclass claims, which predominantly turn on the reasonableness of its standardized procedures in preventing the disclosure of consumer data for impermissible purposes, the Post-Dispute Publication Subclass claims turn entirely on the individualized, non-consumer-initiated nature of the inquiry. Put differently, the Post-Dispute Publication Subclass claims do not rely on a uniform or standardized practice adhered to by Equifax, but hinge on whether the individual consumer initiated the underlying transaction. Thus, while aggregate proof may be available to administratively manage certain aspects of the Post-Dispute Publication claims, assessing Equifax's conduct raises predominantly individualized questions and is not suitable to class adjudication.

**\*26** Because the predominance requirement is not satisfied with respect to these claims, I respectfully recommend that Your Honor deny class certification with respect to the Post-Dispute Publication Subclass.

## 2. Superiority

Rule 23(b)(3) requires a plaintiff establish "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In assessing superiority, Rule 23 advises that courts might consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). "Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130; *see also Amchem Prods., Inc.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Plaintiff argues that the "consumer claims" here are "particularly appropriate for class resolution," where "Equifax has violated the rights of [sic] large number of geographically dispersed persons to such an extent that the cost of pursuing individual litigation to seek recovery against a well-financed adversary is not feasible," and where "the alternatives to a class action are either no recourse for tens of thousands of consumers, or ... a multiplicity of thousands of scattered suits resulting in the inefficient administration of litigation." (Pl.'s Mem. at 17). Equifax does not contest whether the superiority requirement has been satisfied. The Court agrees that the class action mechanism typically offers a more efficient method of redressing harms caused by FCRA violations. *See, e.g.*, 7 Newberg on Class Actions § 21:4 (5th ed. 2021) ("FCRA matters remain good candidates for class actions—they tend to involve a large number of harmed individuals with small claims, often disbursed throughout the country. Absent a class suit, many FCRA violations would remain un-remedied."). However, the nature and extent of the *Rivera* Action gives me pause with respect to nationwide FCRA Class.

Hines specifically brought the *Rivera* Action to the Court's attention to stand for the proposition that certification in *Rivera* "directly supports his position that class certification in this matter is warranted and should be granted in this case." (ECF No. 47). While "a multiplicity of class-action filings is not necessarily 'needless,' " and "may aid a district

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 115 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

court in determining, early on, whether class treatment is warranted," *China Agritech, Inc. v. Resh,* 138 S. Ct. 1800, 1811 (2018), the maturity of this first-filed, [15] duplicative litigation that "has already begun by ... class members" militates against certifying an overlapping nationwide FCRA class here. Fed. R. Civ. P. 23(b)(3)(B).

[15]     "The first-filed rule is a well-established Second Circuit doctrine, based on the principle that 'where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second.' " *Thomas v. Apple-Metro, Inc.,* No. 14 Civ. 4120 (VEC), 2015 WL 505384, at *2 (S.D.N.Y. Feb. 5, 2015) (quoting *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir. 1989)). This rule "embodies considerations of judicial administration and conservation of resources by avoiding duplicative litigation and honoring the plaintiff's choice of forum." *Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 348 (E.D.N.Y. 2018) (quoting *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274–75 (2d Cir. 2008)). *See also, e.g.*, *Baduria v. Sealift Holdings, Inc.*, 451 F. Supp. 3d 248, 257 (E.D.N.Y. 2020) (transferring a putative class action to the Western District of Louisiana under the "first filed" rule). *But see Shimon v. Equifax Info. Servs. LLC*, No. 18-CV-2959 (BMC), 2018 WL 4906245, at *3 (E.D.N.Y. Oct. 9, 2018) (finding that the first-filed rule should not be applied to stay or dismiss claims where putative class actions do not entirely overlap), *aff'd*, 994 F.3d 88 (2d Cir. 2021).

**\*27** In general, parallel and overlapping class actions create problems related to duplicative litigation and fees, risk disparate verdicts, and undermine the goals of judicial economy that the class action device was meant to advance. *See, e.g.*, *Galvan v. Mnuchin*, No. 20-CV-4511, 2020 WL 8259110, at *3 (N.D. Ill. Oct. 15, 2020) ("Considerable authority counsels against certifying a redundant class.") (collecting authorities); 7B C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1798.1 (3d ed. 2022) ("[C]ompeting and duplicative actions not only generate unnecessary litigation and duplicative fees, but also they may result in delay, pose complicated problems of judicial coordination in some instances, increase the risk of disparate verdicts raising serious questions of fairness, and, in situations in which there are limited funds available

as compensation, result in the unequal distribution of those funds."); Rhonda Wasserman, *Dueling Class Actions*, 80 B.U. L. Rev. 461, 542 (2000) ("Whenever two or more class actions are filed on behalf of the same class, seeking the same relief for the same wrong, numerous problems result: (1) scarce resources are wasted, (2) counsel are subject to intense pressure to settle, (3) class counsel, class members and the court all are compelled to make important decisions without complete information, and (4) courts are required to grapple with complex and difficult preclusion questions. These problems seriously undermine the utility of the class action vehicle.").

In addition to sharing the same class members and the same reinvestigation claims brought under the FCRA, the sharing of discovery with the *Rivera* Action further demonstrates the potential for such concerns. As has been noted, Hines has secured the reproduction of substantial evidence from the *Rivera* Action to demonstrate that Rule 23's requirements are satisfied here. (Pritchard Decl. ¶ 2 (noting that [Redacted] dispute letters produced in *Rivera* were reproduced here); *see also* ECF No. 27). On one hand, coordinating discovery among the two actions enables certain efficiencies by preventing duplication of effort in the fact gathering process; on the other, the efficiencies that result are likely outweighed by the inefficiencies of having multiple lawyers from multiple firms duplicating efforts to review the same materials on behalf of the same class members but on behalf of different named class representatives in different fora, thereby increasing attorneys' fees, reducing the amount of compensation available to the class upon recovery, and increasing the risk that inconsistent decisions will be made based on the same proffered evidence.

Beyond issues regarding the nature and extent of the *Rivera* Action, the remaining Rule 23(b)(3) superiority factors do not weigh heavily toward class certification. Indeed, the existence of an overlapping action concerning the same claims and class members indicates that there is no strong interest in individual control of litigation and no particular desirability in concentrating litigation in this forum. Finally, the likely difficulties of managing a class action would likely be exacerbated in managing multiple, overlapping class actions, notwithstanding the presence of shared class counsel. Accordingly, with all due respect to the certification decision of the Northern District of Georgia, [16] I respectfully recommend that the Court deny certification of the nationwide FCRA class in order to avoid the concerns created by overlapping class actions.

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)

2022 WL 2841909

Alternatively, I recommend that the Court order further briefing from the parties on the issue of whether a stay, consolidation, or transfer of proceedings is warranted under the circumstances. *See, e.g., China Agritech*, 138 S. Ct. at 1811 (noting that "district courts have ample tools at their disposal to manage [overlapping class] suits, including the ability to stay, consolidate, or transfer proceedings.").

16    *Smith v. Bayer Corp.*, 564 U.S. 299, 317 (2011) (noting that federal courts are expected "to apply principles of comity to each other's class certification decisions when addressing a common dispute"); *see also Mast, Foos, & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488 (1900) ("Comity is not a rule of law, but one of practice, convenience, and expediency. It is something more than mere courtesy, which implies only deference to the opinion of others, since it has substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question.").

**\*28** Despite this recommendation, I find that the Rule 23(b)(3) superiority factors weigh in favor of certifying the New York Subclass and Capital One Subclass. With respect to those subclasses, the likely cost of litigation as compared with the potential recovery indicates that class members have no strong interest in individually controlling the prosecution or defense of separate actions. Those subclasses also contemplate separate claims not covered by the *Rivera* action, such that the extent and nature of that litigation is not relevant to the decision. Further, the concentration of litigation of NYFCRA class claims in this forum is particularly desirable, as this Court is well equipped to apply New York law. Finally, there are no particular manageability concerns implicated by these subclass claims.

Accordingly, because the Rule 23(a) and Rule 23(b)(3) factors are satisfied, I respectfully recommend that Your Honor grant Plaintiff's motion for class certification with respect to the New York Subclass and the Capital One Subclass.

D. Rule 23(g)—Class Counsel
Rule 23(g) requires that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). The Rule requires that the court consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law;

and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Defendant raises no objections to Plaintiff's proposed class counsel.

Although Plaintiff is represented by five firms, the proposed order submitted in connection with his motion for class certification lists only four firms. (*See* Proposed Order at 3, 5 (omitting Mallon Consumer Law Group, PLLC)). For those four firms, Plaintiff has submitted exhibits demonstrating the experience, knowledge, and resources of those four listed firms that satisfy the factors outlined in Rule 23 (g). (*See* Firm Bios). Without documentation to consider the credentials of the Mallon Consumer Law Group, PLLC or a request that such firm be appointed class counsel, however, the Court finds that it would be inappropriate to include Mallon Consumer Law Group, PLLC in an order appointing class counsel. Accordingly, I respectfully recommend that Your Honor appoint Francis Mailman Soumilas, P.C., Robert S. Sola, P.C., Skaar & Feagle, LLP, The Adkins Firm, P.C. as class counsel.

<u>CONCLUSION</u>

For the reasons set forth above, I respectfully recommend that Your Honor (1) grant Plaintiff's request for certification of the New York Subclass, and Capital One Subclass under Rule 23(b)(3); (2) deny Plaintiff's request for certification of the nationwide FCRA Class under Rule 23(b)(3), or alternatively order further briefing from the parties on the issue of whether a stay, consolidation, or transfer of proceedings is warranted in light of the pending *Rivera* Action; (3) deny Plaintiff's request for certification of the Post-Dispute Publication Subclass under Rule 23(b)(3); (4) deny Plaintiff's request for certification under Rule 23(b)(2) with respect to the New York Subclass; (5) appoint Plaintiff as the class representative and Francis Mailman Soumilas, P.C., Robert S. Sola, P.C., Skaar & Feagle, LLP, The Adkins Firm, P.C. as class counsel; and, (6) direct the parties to submit to the Court within thirty days proposed forms and schedules for providing notice to the certified classes.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Rachel P. Kovner within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 117 of 143

Hines v. Equifax Information Services, LLC, Not Reported in Fed. Supp. (2022)
2022 WL 2841909

District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2841909

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:19-CV-06701**<br>Hines v. Equifax Information Services LLC | — | E.D.N.Y. | Nov. 27, 2019 | Docket |

**History (3)**

**Direct History (2)**

> 🚩  1.  Hines v. Equifax Information Services, LLC 👓
> 2022 WL 2841909 , E.D.N.Y. , July 16, 2022

*Report and Recommendation Adopted as Modified by*

🚩  2.  Hines v. Equifax Information Services LLC
2024 WL 4132333 , E.D.N.Y. , Sep. 10, 2024

**Related References (1)**

3.  Hines v. Equifax Information Services LLC
2024 WL 4930116 , E.D.N.Y. , Dec. 02, 2024

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 121 of 143
Perez v. Experian, Not Reported in Fed. Supp. (2021)
2021 WL 4784280

2021 WL 4784280
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Eric Andrew PEREZ, Plaintiff,
v.
EXPERIAN, et al., Defendants.

20-CV-9119 (PAE) (JLC)
|
Signed October 14, 2021

**Attorneys and Law Firms**

Eric Andrew Perez, New York, NY, Pro Se.

Cealagh P. Fitzpatrick, Jones Day, Courtney Sophie Stieber, Seyfarth Shaw LLP, New York, NY, for Defendant Experian.

Courtney Sophie Stieber, Seyfarth Shaw LLP, New York, NY, for Defendant Equifax.

Camille Renee Nicodemus, Schuckit & Associates, P.C., Zionsville, IN, Courtney Sophie Stieber, Seyfarth Shaw LLP, New York, NY, for Defendant Trans Union.

Howard Alan Fried, McGivney Kluger Clark & Intoccia, P.C., Courtney Sophie Stieber, Seyfarth Shaw LLP, Danit Sibovits, Dean L. Pillarella, McGivney, Kluger, Clark & Intoccia, P.C., New York, NY, for Defendant Verizon.

Brendan Hoffman Little, Lippes Mathias LLP, Buffalo, NY, for Defendant Sequium Asset Solutions.

## REPORT & RECOMMENDATION

JAMES L. COTT, United States Magistrate Judge

**\*1 To the Honorable Paul A. Engelmayer, United States District Judge:**

*Pro se* plaintiff Eric Andrew Perez brings this action alleging violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Federal Trade Commission Act ("FTC Act") against Experian Information Solutions ("Experian"), Equifax Information Services LLC ("Equifax"), Trans Union, LLC ("Trans Union"), New York SMSA Limited Partnership d/b/a Verizon Wireless ("Verizon"), Sequium Asset Solutions ("Sequium"),

the Federal Trade Commission ("FTC"), and Citibank, N.A. ("Citibank").[1] Sequium has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Experian, Equifax, Trans Union, and Verizon ("joint defendants") have jointly filed motion papers but under two different rules. As Equifax has not yet filed its answer, it has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, while Experian, Trans Union, and Verizon, which have each filed an answer, have moved for judgment on the pleadings pursuant to Rule 12(c). For the reasons set forth below, I recommend that both motions be granted, but that Perez be given leave to file an amended complaint as to certain of his claims.

1    Citibank appears to have been served via certified return receipt to a registered agent at the CT Corporation System but has not responded to the complaint to date. Dkt. No. 19. As discussed *infra*, the Court previously dismissed all claims against the FTC. Dkt. No. 11.

## I. BACKGROUND

### A. Perez's Allegations

The following facts are taken from the complaint. Complaint ("Compl."), Dkt. No. 2.[2] All of its factual allegations are accepted as true for purposes of both motions. *See, e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015) (motion to dismiss); *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (motion for judgment on the pleadings). Because Perez is proceeding *pro se*, the Court also considers allegations made for the first time in his response opposing the motions. *See, e.g.*, *Saudager v. Walgreens Co.*, No. 18-CV-437 (KPF), 2019 WL 498349, at *1 n.1 (S.D.N.Y. Feb. 8, 2019) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." (quoting *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013))).

2    Attached to the complaint are exhibits that appear to be the credit reports issued by consumer reporting agency ("CRA") defendants Equifax, Experian, and Trans Union ("CRA defendants"), with annotations, presumably made by Perez, indicating that many of the outstanding debts listed

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 122 of 143

Perez v. Experian, Not Reported in Fed. Supp. (2021)
2021 WL 4784280

on the reports are disputed, as well as emails sent by Perez to the FTC. Compl., Exhibits ("Ex.") 1–12. The exhibits are properly considered under Rule 10(c), which provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." In the context of a Rule 12(b)(6) motion, courts "may permissibly consider documents other than the complaint," including "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). The same applies to Rule 12(c) motions. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) ("[C]ourts may on a Rule 12(c) motion—just as on a Rule 12(b)(6) motion—consider extrinsic material that the complaint 'incorporate[s] by reference,' that is "integral" to the complaint ...." (citation omitted)).

**\*2** Perez was born on June 27, 1976. Compl., Ex. 4. He is a discharged United States Marine Corps veteran who suffers from post-traumatic stress disorder ("PTSD") and traumatic brain injury ("TBI"). Plaintiff's Opposition ("Pl. Opp."), Dkt. No. 73, at 1. Perez alleges that defendants have developed a "system of misreporting and manipulating credit files and scores for their own profit" (*id.* at 2) as part of a "civil criminal conspiracy" depriving him of his rights and charging him with "socioeconomic oppression ... in construction and collusion with various federal and state agencies." Compl. ¶25; Pl. Opp. at 3.

Perez alleges the CRAs Experian, Equifax, and Trans Union have all misreported accounts to his credit file and inaccurately reported his credit. Compl. ¶¶27, 29. He alleges the following inaccuracies:

**Table 1: Alleged Inaccuracies on Experian Report**

|  | Reported | Alleged by Perez |
|---|---|---|
| Capital Bank | $21 | $0 |
| Verizon | $421 | $0 |
| Educational accounts | 4 accounts with 9 late payments | Educational account in forbearance and then disputed using the borrowers' defense application |
| Inquiries | 9 | 5 |

*Id.* ¶29, Ex. 1 at 23–44. [3]

[3] The page numbers cited are those produced by the Electronic Case Filing ("ECF") system.

**Table 2: Alleged Inaccuracies on Equifax Report**

|  | Reported | Alleged by Perez |
|---|---|---|
| Best Buy | $753 | $0 |
| Capital Bank | $136 | $0 |
| Lead Bank | $259 | $0 |

*Id.*; Ex. 1 at 44–65.

**Table 3: Alleged Inaccuracies on Trans Union Report** [4]

|  | Reported | Alleged by Perez |
|---|---|---|

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 123 of 143

Perez v. Experian, Not Reported in Fed. Supp. (2021)

2021 WL 4784280

| | | |
|---|---|---|
| Capital Bank | $136 | $0 |
| Best Buy CBNA | $753 | $0 |
| "Self" | $259 | $100 |
| Educational loans | 4 loans paid on time, and 6 educational loans with 9 late payments | 4 loans "on time placed in forbearance borrowers defense application pending" |
| Inquiries | 7 | 5 |

[4]   Perez attaches a "Trans Union Credit Report as of 10-29-20." However, it appears to be a duplicate of the Equifax Credit Report from October 14, 2020. *See* Compl., Ex. 1 at 65–84. For the purposes of the motion, the Court will take Perez's allegations in his Complaint as true reflections of the Trans Union credit report, although there is no report attached. *See* Compl. ¶28.

*Id.* ¶29. Lastly, Perez alleges that Experian, Equifax, and Trans Union have misreported his employment history by providing an incomplete history of United Way of America, J & J Towers, Kew Forest, and Stream America despite Perez having additional employment history, although he does not specify which employers are missing. *Id.* ¶28. Experian lists United Way of America and JJ Auto Repair, *see* Ex. 1 at 43, and Equifax lists Fresh Direct as his employer, *see* Ex. 1 at 63. Perez contends that the CRA defendants arbitrarily assigned him credit scores as part of a "scheme to disenfranchise en mass" by the CRA defendants and federal and state agencies. *Id.* ¶30. As part of the scheme, Perez alleges that the CRA defendants have assigned an "illegal synthetic identity to a confidential informant." *Id.* ¶31. Perez alleges that Citibank is also an active participant in the "alternate credit scheme." *Id.* ¶38. Additionally, he alleges that Verizon provided access to Perez's cable, internet, and cell phone accounts to informants and law enforcement without warrants and passed off the "debt of an unknown informant into his account and reported the debt to three credit bureaus after the debt was settled." *Id.* ¶¶35–36.

Perez has contacted Citibank, Verizon, and Sequium to dispute information that he believed was inaccurate and furnished to the CRAs. *Id.* ¶¶42, 47. Perez claims that he has provided information to validate that the debt was assigned to the wrong person, such as his driver's license, social security number, proof of residence, and proof of payment. *Id.* ¶43. Despite Perez's attempts to dispute the information, Citibank, Verizon, and Sequium have allegedly failed to remove the inaccurate information and continued to furnish it to the CRAs, without informing them that the information is disputed by Perez. *Id.* ¶¶44, 50. Perez also asserts that Sequium failed to issue him a debt settlement letter after his request. *Id.* ¶37.[5]

[5]   Debt settlement offers are letters that offer a specific amount of money in exchange for forgiveness of the consumer's debt. *See, e.g., Cortez v. Forster & Garbus, LLP*, 999 F.3d 151, 156 (2d Cir. 2021) (describing debt settlement offers).

**\*3** Perez's credit file allegedly has several errors that he claims indicate proof of manipulation and control. Pl. Opp. at 6. For example, Perez complains that his gender is not included on the reports, his changes of physical addresses are delayed and not reported at the same time, and he still receives Experian notifications for new sex offenders added to his former zip code of 10304. *Id.* at 6–7.[6] Perez has allegedly reported the scheme and his claims of identity theft to the FTC on more than 12 occasions without any response. Compl. ¶¶76–78; Exs. 2–12 (11 emails from Perez to FTC from March 14, 2020 through October 6, 2020). Perez contends that as a result of the inaccuracy of his credit reports, he is unable to increase his existing credit and was denied economic opportunities, including entrepreneurship programs, more than 50 employment opportunities, and 30

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 124 of 143

Perez v. Experian, Not Reported in Fed. Supp. (2021)

2021 WL 4784280

opportunities for personal credit. Moreover, he alleges that he has suffered from character defamation and experienced pain and suffering over a ten-year period. Compl. ¶¶79–83; Pl. Opp. at 6.

6    Experian offers Sex Offender Monitoring to inform users of all registered sex offenders living within the user's area and notify the user when a new offender is added. *Non-Credit Monitoring Services*, EXPERIAN, https://www.experianpartnersolutions.com/identity-management/non-credit/ (last visited Oct. 12, 2021).

### B. Procedural History

Perez commenced this action on October 30, 2020, asserting claims under the FCRA, 15 U.S.C. §§ 1681 *et seq.*, against all defendants, including a violation of § 1681s-2(a) by furnishing information about him despite notice that it is inaccurate, and a violation of § 1681s-2(b) by failing to investigate upon notice of dispute and furnishing information without notice that the reported information is under investigation. Compl. ¶¶42–45; 46–48. He also asserts claims under the FDCPA, 15 U.S.C. §§ 1692-1692p, for the false representations by all defendants concerning the legal status of a debt. *Id.* ¶¶53–54. Perez seeks damages as well as declaratory and injunctive relief. *Id.* ¶¶ 20–21. Although Perez initially included the FTC as a defendant, the Court dismissed all claims against the FTC and all claims brought under the FTC, 15 U.S.C. § 45, in an Order of Service dated January 6, 2021. Dkt. No. 11.

On May 14, 2021, Sequium moved for judgment on the pleadings pursuant to Rule 12(c), arguing that Perez fails to state a claim upon which relief may be granted. Defendant Sequium's Brief in Support of its Motion ("Sequium Mem."), Dkt. No. 62. In particular, Sequium argues that: (1) Perez's claims under § 1681s-2(a) fail because the FCRA does not provide Perez with a private right of action; (2) his claims under § 1681s-2(b) of the FCRA fail because Sequium did not act as a furnisher of information regarding the debt at issue; and (3) his claims under the FDCPA fail because it does not have a requirement to issue debt settlement letters. Sequium Mem. at 1–2, 5.

On May 17, 2021, Equifax, Trans Union, Experian, and Verizon jointly filed motion papers. Defendants' Joint

Memorandum of Law in Support of Their Motions ("Joint Defs. Mem."), Dkt. No. 65. As Experian, Trans Union, and Verizon have all filed answers to the complaint, they moved for judgment on the pleadings. *Id.* at 1 n.1. Equifax has not yet filed its answer and therefore moved to dismiss the complaint for failure to state a claim. *Id.* Specifically, they argue that Perez failed to state a claim for a violation of the FCRA because: (1) a CRA cannot be held liable for the reporting of employment information; (2) the inaccurate reporting claim is based on a false allegation that defendants were engaged in a criminal conspiracy; (3) Equifax, Experian, and Trans Union are not furnishers of information; (4) there is no private right of action to assert a claim under § 1681s-2(a) against Verizon; and (5) Perez failed to allege that Verizon was notified of Perez's dispute by any CRA as required by § 1681s-2(b). *Id.* at 1–2. The joint defendants also argue that Perez failed to state a claim for a violation of the FDCPA because they are not debt collectors. *Id.* at 2. [7]

7    Despite the parties' briefing on the issue (Joint Defs. Mem. at 13–14), Perez's criminal negligence claims were only alleged against the FTC and have already been dismissed. *See* Dkt. No. 11. Similarly, Perez's claims of character defamation under state law were also only made against the FTC and were also dismissed. *Id.*; Compl. ¶83. Therefore, the Court need not address those claims.

**\*4**  On June 13, 2021, Perez submitted his response to the motions, restating his claims against the CRAs for failure to report his complete and accurate information (Pl. Opp. at 3–4, 9–11), his claims against Verizon, *id.* at 12–13, and his claims against defendants as debt collectors, *id.* at 13–14. On July 1, 2021, Sequium submitted reply papers. Sequium's Reply Brief in Support Of Its Motion ("Sequium Reply"), Dkt. No. 75. On July 2, 2021, the joint defendants submitted reply papers as well. Defendants' Joint Reply to Plaintiff's Opposition ("Joint Defs. Reply"), Dkt. No. 76.

### II. DISCUSSION

#### A. Applicable Standards

#### 1. Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."

Case 1:25-cv-01393-MAD-MJK   Document 5   Filed 02/20/26   Page 125 of 143

Perez v. Experian, Not Reported in Fed. Supp. (2021)

2021 WL 4784280

Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead facts in his complaint that "state a claim to relief that is plausible on its face" and that satisfy Rule 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 677–78 (quoting Fed. R. Civ. P. 8(a)(2)). A claim is facially plausible when there exists "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). Nevertheless, this standard requires a plaintiff's pleadings to sufficiently "nudge[ ] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Littlejohn*, 795 F.3d at 306 (citing *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 300 (2d Cir. 2006)). "A complaint need not include 'detailed factual allegations,' but it must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.' " *JCG v. Ercole*, No. 11-CV-6844 (CM) (JLC), 2014 WL 1630815, at *5 (S.D.N.Y. Apr. 24, 2014) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted), *adopted by* 2014 WL 2769120 (June 18, 2014). A complaint containing only "conclusory allegations or legal conclusions masquerading as factual conclusions" will not survive a motion to dismiss. *Womack v. Capital Stack, LLC*, No. 18-CV-4192 (ALC), 2019 WL 4142740, at *3 (S.D.N.Y. Aug. 30, 2019) (quoting *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).

### 2. Motion for Judgment on the Pleadings Pursuant to Rule 12(c)

Under the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). The standard for evaluating a motion for judgment on the pleadings under Rule 12(c) is the same as the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See, e.g.*, *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). "To survive a Rule 12(c) motion, [a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 43–44 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). In considering such

motions, the court must take all factual allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor. *See, e.g.*, *Famous Horse Inc.*, 624 F.3d at 108.

### 3. Standards Applicable to *Pro Se* Litigants

**\*5** "A document filed *pro* se is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations omitted)). Courts within this Circuit grant *pro se* litigants a " 'special solicitude' by interpreting a complaint filed *pro se* 'to raise the strongest claims that it suggests.' " *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). However, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting *2 Moore's Federal Practice* § 12.31[1][b] (2005), at 12–61 (internal quotation marks omitted)). Therefore, a court should "not hesitate to dismiss a *pro se* complaint if it fails altogether to satisfy the pleading standard." *Henry v. Davis*, No. 10-CV-7575 (PAC) (JLC), 2011 WL 3295986, at *2 n.5 (S.D.N.Y. Aug. 1, 2011), *adopted by* 2011 WL 5006831 (Oct. 20, 2011).

With these standards in mind, the Court will discuss each of Perez's claims in turn, beginning with his claims under the FCRA.

### B. Claims under the Fair Credit Reporting Act

Perez contends that all of the defendants have violated the FCRA. Compl. ¶¶39–51. The FCRA regulates consumer credit reporting agencies to ensure accuracy, confidentiality, relevancy, and proper utilization of consumer credit information. 15 U.S.C. § 1681(b). It "places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475 (DLC), 2002 WL 31106934, at *3 (S.D.N.Y. Sept 20, 2002) (citing 15 U.S.C. §§ 1681 *et seq.*). Perez alleges claims under the FCRA against both consumer reporting agencies (Experian, Equifax, and Trans Union) and alleged furnishers of information (Sequium and Verizon). Accordingly, the Court will address the two relevant types of obligations—first, obligations for furnishers

Case 1:25-cv-01393-MAD-MJK   Document 5   Filed 02/20/26   Page 126 of 143

Perez v. Experian, Not Reported in Fed. Supp. (2021)

2021 WL 4784280

of information, and then obligations for consumer reporting agencies.

### 1. Liability of furnishers of information

Although the primary function of the FCRA is to regulate the actions of consumer reporting agencies like Equifax, Experian, and Trans Union, the FCRA also imposes obligations on parties that furnish information to such agencies. *See* 15 U.S.C. § 1681s-2. Courts in this Circuit have "interpreted [furnishers of information] to mean entities that transmit, to credit reporting agencies, information relating to debts owed by consumers." *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 426 n.11 (S.D.N.Y. 2010) (internal quotation omitted) (citing *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847 (ERK), 2005 WL 1153623, at *4 (E.D.N.Y. May 16, 2005)). "[T]hese obligations involve the duty to provide accurate information and to correct inaccurate information, 15 U.S.C. § 1681s–2(a), and to conduct an investigation after receiving notice of a credit dispute from a consumer reporting agency, § 1681s–2(b)." *Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 303 (E.D.N.Y. 2014) (citing *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012)). However, certain requirements are only triggered when a furnisher of information receives notice of a credit dispute from specified parties. If a consumer files a dispute with the furnisher of the disputed information, under § 1681s-2(a)(8) the furnisher must investigate the dispute. If a consumer files a dispute with the consumer reporting agency, then both the consumer reporting agency and the furnisher have a duty to investigate the dispute. 15 U.S.C. §§ 1681i(a)(1)(A), 1681s-2(b).

### a. Statutory Requirements

#### i. The duty to provide accurate information and correct inaccurate information under § 1681s-2(a)

**\*6** Perez alleges Verizon and Sequium have violated FCRA § 1681s-2(a). Compl. ¶¶41–45. FCRA § 1681s-2(a) provides that a furnisher of information has a duty to report information accurately to credit reporting agencies. 15 U.S.C. § 1681s-2(a). Moreover, if a person, or creditor, learns that any reported information is inaccurate, Subsection (a) obligates them to notify the credit reporting agency of the inaccuracies and provide corrections. 15 U.S.C. § 1681s-2(a).

However, it is well-settled that there is no private cause of action for alleged violations of Section 1681s-2(a). *See, e.g.*, *Longman*, 702 F.3d at 151 ("[T]he statute plainly restricts enforcement of that provision to federal and state authorities."). Enforcement of FCRA § 1681s-2(a) is limited to government agencies and officials as the statute provides that Subsection (a) "shall be enforced *exclusively* ... by the Federal agencies and officials and the State officials identified in section 1681s of this title." 15 U.S.C. § 1681s-2(d) (emphasis added).

Although Perez has alleged a violation of Subsection (a) of Section 1681s-2 of the FCRA, because that provision does not provide a private right of action, this claim fails as a matter of law.

#### ii. The duty to investigate after receiving notice of a credit dispute from a consumer reporting agency under § 1681s-2(b)

Perez also alleges defendants have violated § 1681s-2(b) of the FCRA. Compl. ¶¶46–48. In contrast to § 1681s-2(a), which is triggered when a consumer sends a dispute directly to a furnisher of information, § 1681s-2(b) is triggered when the furnisher is notified by the CRA that a consumer disputes the accuracy of the furnished information. *Compare* 15 U.S.C. § 1681s-2(a)(8) *with* 15 U.S.C. § 1681s-2(b)(1). [8] Section 1681s-2(b) requires the furnisher to "conduct an investigation with respect to the disputed information," after receiving notice from a CRA. 15 U.S.C. § 1681s-2(b)(1); *see, e.g.*, *Redhead*, 2002 WL 31106934, at *4 ("The category of duties in [1681s-2(b)] governs the furnishers' duty once notice is received from a credit reporting agency that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency."). Upon such notice, a furnisher must:

> (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the consumer reporting agency...; (3) report the results of the investigation to the consumer reporting agency; (4) where an investigation finds that the information is incomplete or inaccurate, report those results to all other consumer

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 127 of 143

Perez v. Experian, Not Reported in Fed. Supp. (2021)
2021 WL 4784280

reporting agencies to which the person furnished the information ...; and (5) where the information is found to be inaccurate, incomplete, or unverifiable, promptly modify, delete, or permanently block the reporting of that information.

*Frederick v. Cap. One Bank (USA), N.A.*, No. 14-CV-5460 (AJN), 2018 WL 1583289, at *6 (S.D.N.Y. Mar. 27, 2018) (internal quotations omitted) (citing 15 U.S.C. §§ 1681s-2(b)(1)(A)-(E)).

8      Although § 1681s-2(a) of the FCRA does not provide a private right of action, § 1681s-2(b) has been recognized to provide a private right of action for willful or negligent noncompliance with the statute. *See, e.g., Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014) (collecting cases).

To satisfy a claim under § 1681s-2(b), a plaintiff must first establish that the defendant is a "furnisher of information" within the meaning of the statute. *Id.* at *6. Then, he must establish that: "(1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in 'willful or negligent noncompliance with the statute.'" *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012) (quoting *Redhead*, 2002 WL 31106934, at *5). "Notice from an individual consumer, in the absence of notice from a credit reporting agency, is insufficient to trigger the duties contained in Subsection (b)." *Kane*, 2005 WL 1153623, at *4; *see also O'Diah v. New York City*, No. 02-CV-274 (DLC), 2002 WL 1941179, at *13 (S.D.N.Y. Aug. 21, 2002) (§ 1681s-2(b) requires plaintiff to "show that the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information is disputed").

**b. Perez failed to allege the CRAs are "furnishers of information" as defined under FCRA § 1681s-2(b).**

*7  Equifax, Experian, and Trans Union argue they are not "furnishers of information" under § 1681s-2(b) of the FCRA, as they are consumer reporting agencies and therefore not liable under § 1681s-2(b). Joint Defs. Mem. at 9. [9] Perez failed to allege in his complaint that the CRA defendants were

furnishers of information. Moreover, in his opposition papers, Perez concedes that the "CRA defendants are not furnishers of information." Pl. Opp. at 11. Because Perez does not allege that the CRA defendants are furnishers of information, he fails to state a plausible claim under Section 1681s-2(b) as against them and that claim should also be dismissed. *See Frederick v. Cap. One Bank (USA), N.A.*, No. 14-CV-5460 (AJN), 2015 WL 5521769, at *6 (S.D.N.Y. Sept. 17, 2015), *opinion amended on reconsideration sub nom. Frederick v. Cap. One (USA) N.A.*, No. 14-CV-5460 (AJN), 2015 WL 8484560 (Dec. 8, 2015) (dismissing for failure to allege defendants were furnishers of information).

9      As defined in the FCRA, the term "consumer reporting agency" means "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

Accordingly, the Court recommends that all of Perez's claims under FCRA § 1681s-2(b) against Equifax, Experian, and Trans Union be dismissed. However, Verizon concedes it is a "furnisher of information" and therefore can be liable under § 1681s-2(b). Joint Defs. Mem. at 10. Additionally, Perez alleges sufficient facts to support a reasonable inference that Sequium is a furnisher of information. *See* Compl. ¶14 ("As part of its debt collection activities, ... Sequium ... furnishes information to CRAs"). The Court will thus analyze the remaining claims against Verizon and Sequium as furnishers of information under the FCRA.

**c. Perez fails to state a claim against Verizon or Sequium under FCRA § 1681s-2(b).**

In response to his allegations that they violated § 1681s-2(b), both Verizon and Sequium contend that Perez failed to allege that he disputed the information with a consumer reporting agency, who then reported the dispute to the furnishers of information (Verizon and Sequium). Joint Defs. Mem. at 11; Joint Defs. Reply at 7; Sequium Mem. at 5. [10] In his complaint, Perez alleges that he had reported disputes directly to Citibank, Verizon, and Sequium regarding information that

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 128 of 143

Perez v. Experian, Not Reported in Fed. Supp. (2021)

2021 WL 4784280

they had furnished to the CRAs. Compl. ¶42. In his opposition papers, Perez further stated that he disputed "several accounts electronically and by mail" but it is unclear if he is referring to his communications with the FTC, the CRA defendants, or Verizon and Sequium. Pl. Opp. at 13. Perez also contends that he contacted Verizon directly to dispute the charges in Small Claims Court in the Bronx in 2019 and when Verizon "over charged him for his devices and bills," Perez notified them that he wanted "to pay [the charges] off prior to having these charges appear on his credit."*Id.* at 12–13. However, to state a § 1681s-2(b) claim, Perez must allege that Verizon and Sequium were contacted by a *consumer reporting agency* about a dispute, not contacted by Perez himself, and that those agencies followed up with a notice of dispute to Verizon and Sequium (which in turn must then conduct an investigation into the information in question). *Kane*, 2005 WL 1153623, at *4 (granting motion to dismiss for failure to allege furnisher received notice of dispute from CRA). This he has failed to do.

10      In its motion papers, Sequium Mem. at 5, Sequium cites to the declaration of its chief compliance officer and general counsel, *see* Dkt. No. 29-1, which it has attached to its answer, but on a motion for judgment on the pleadings, a court cannot consider matters outside the pleadings. Moreover, Sequium did not move in the alternative for summary judgment, or provide Perez with the appropriate notice under Local Rule 56.2 that it intended to do so. For these reasons, the Court has not considered this declaration in its review of the motion papers.

**8  In sum, Perez's "furnishers of information" FCRA claims should be dismissed. Specifically, Perez's claim under 15 U.S.C. § 1681s-2(a) should be dismissed with prejudice, as that Subsection affords no private right of action and any amendment would be futile. However, Perez's claim under 15 U.S.C. § 1681s-2(b) against Verizon and Sequium should be dismissed without prejudice to his filing an amended complaint, pleading all the necessary elements of a claim under that Subsection to the extent they exist, given that the complaint is difficult to parse through but suggests he might have a viable claim. *See, e.g., Branum v. Clark*, 927 F.2d 698, 705–06 (2d Cir. 1991) (where *pro se* pleading contained "the seeds" of viable claims, it should not be dismissed "without granting leave to amend at least once"); *Kane*, 2005 WL 1153623, at *11 (while plaintiff's complaint "le[ft] much to be desired," it was not "so clearly deficient that amendment would necessarily be futile"). Moreover, "[t]he

Second Circuit has cautioned that district courts should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Olsson v. ABM Taxi Dispatch Laguardia Airport*, No. 18-CV-8815 (PGG), 2020 WL 5038742, at *3 (S.D.N.Y. Aug. 26, 2020) (internal quotations omitted) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

**2. Liability of credit reporting agencies**

Perez also alleges claims under the FCRA against the CRA defendants. Compl. ¶¶39–48. Specifically, Perez alleges the CRA defendants violated § 1681s of the FCRA. However, as previously discussed, § 1681s-2(a) does not provide for a private cause of action and credit reporting agencies do not have a duty under § 1681s-2(b). In his opposition papers, Perez alleges that defendants "are not in compliance with the FCRA." Pl. Opp. at 12. Given its obligation to construe Perez's *pro se* complaint liberally, the Court will construe these allegations as making claims for the negligent, *see*15 U.S.C. § 1681*o*, or willful, *see*15 U.S.C. § 1681n, violation of duties or requirements imposed under the FCRA for credit reporting agencies, specifically § 1681e(b) (requiring reasonable procedures to assure accuracy) and § 1681i(a) (requiring reinvestigation of disputed information). *See, e.g., Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 173 (S.D.N.Y. 2014) (construing complaint under Section 1681(f) not Section 1681-2(b) as "a context in which [his claims] make much more sense, and a context in which Plaintiff may have intended to assert them"); *Caraveo v. Nielsen Media Rsch., Inc.*, No. 01-CV-9609 (LBS) (RLE), 2003 WL 1745064, at *2 (S.D.N.Y. Mar. 31, 2003) ("At this stage of the litigation, *pro se* Plaintiff's citations to specific statutory provisions in his memoranda of law do not supersede the plain language of the complaint."), *aff'd sub nom.Caraveo v. U.S.E.E.O.C.*, 96 F. App'x 738 (2d Cir. 2004). In other words, construing Perez's allegations liberally, the complaint can be read to allege the CRA defendants to be willfully, or in the alternative, negligently noncompliant, in violation of § 1681e(b) and § 1681i. Accordingly, the Court will consider Perez's allegations in that light.

**a. Statutory Requirements under §§ 1681e(b) and 1681i**

Section 1681e(b) imposes a duty on CRAs to "assure maximum possible accuracy of the information concerning

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 129 of 143

Perez v. Experian, Not Reported in Fed. Supp. (2021)

2021 WL 4784280

the individual about whom the report relates." 15 U.S.C. § 1681e(b). To state a claim under Section 1681e(a), a plaintiff must allege that: "(1) the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury." *Wimberly v. Experian Info. Sols.*, No. 18-CV-6058 (MKV), 2021 WL 326972, at *5 (S.D.N.Y. Feb. 1, 2021) (quoting *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367 (MKB), 2019 WL 2492762, at *2 (E.D.N.Y. June 14, 2019)).

*9 When the accuracy of a report is in dispute, Section 1681i outlines specific procedures that CRAs must follow to ensure the proper reinvestigation of disputed information. Section 1681i requires that if a consumer notifies a CRA of a dispute as to the accuracy of any item of information contained in his file, within 30 days of notification, the CRA "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A); *Jones v. Experian Info. Solutions, Inc.*, 982 F. Supp. 2d 268, 272 (S.D.N.Y. 2013). The Second Circuit has not directly addressed what constitutes a "reasonable reinvestigation" under section 1681i. *Jones*, 982 F. Supp. 2d at 273. However, courts in this District have noted that "the parameters of a reasonable investigation will ... depend on the circumstances of a particular dispute." *Frydman v. Experian Info. Sols., Inc.*, No. 14-CV-9013 (PAC) (FM), 2016 WL 11483839, at *15 (S.D.N.Y. Aug. 11, 2016) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 713 (3d Cir. 2010)), *adopted by* 2016 WL 5661596 (Sept. 30, 2016). The reinvestigation requirement has demanded "more than (a) forwarding the dispute information onto the furnisher of information and (b) relying on the furnisher of information's response." *Gorman v. Experian Info. Sols., Inc.*, No. 07-CV-1846 (RPP), 2008 WL 4934047, at *5 (S.D.N.Y. Nov. 19, 2008) (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)). To state a claim under Section 1681i, the plaintiff must also allege that "the disputed information is inaccurate." *Khan*, 2019 WL 2492762, at *3.

The threshold question under both Sections 1681e(b) and 1681i "is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Id.* (collecting cases). A credit report is inaccurate "either when it is patently incorrect *or* when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Wimberly*, 2021 WL 326972, at *5 (quoting *Wenning v. On-Site Manager, Inc.*, No. 14-CV-9693 (PAE), 2016 WL 3538379, at *9 (S.D.N.Y. June 22, 2016)). "Information provided by a consumer reporting agency is misleading where it is 'open to an interpretation that is directly contradictory to the true information.' " *Id.* (quoting *Wagner v. TRW, Inc.*, 139 F.3d 898, 1998 WL 127812, at *1 (5th Cir. 1998)).

### b. Perez fails to state a claim against the CRA defendants under §§ 1681e(b) and 1681i.

Perez argues that the CRA defendants violated the FCRA by their failure to report his gender, address changes, and complete employment information. Compl. ¶¶28–32; Pl. Opp. at 6-7. The Court interprets these claims to assert violations under § 1681e(b) and § 1681i. The CRA defendants did not address these specific statutory allegations in their motion papers, as in making such allegations, Perez cited to a different section of the FCRA. Nevertheless, in arguing that Perez's claims against them under the FCRA should be dismissed, the CRA defendants contend that they do not have a duty to report gender or address changes (Joint Defs. Reply at 8) or to report "complete" employment information (Joint Defs. Mem. at 5–6).

#### i. Failure to report gender and change of address

Perez argues that the CRA defendants violated the FCRA by failing to report his gender and changes of his physical addresses. Pl. Opp. at 6. However, inaccuracies are only actionable if they affect an assessment of a consumer's credit, insurance, or employment and fit within the definition of a "consumer report" under the FCRA. *See* 15 U.S.C. § 1681a(d)(1) (listing factors in establishing the consumer's eligibility); *Williams-Steele v. Trans Union*, No. 12-CV-0310 (GBD) (JCF), 2014 WL 1407670, at *4 (S.D.N.Y. Apr. 11, 2014) ("[N]o restriction is put on the use of information that is not a 'consumer report' ... Address information on a consumer, for example, is not a consumer report because it is not information that bears on any of the characteristics described in 15 U.S.C. § 1681a(d)(1).") (citing *Ali v. Vikar Management, Ltd.*, 994 F. Supp. 492, 497 (S.D.N.Y. 1998)), *adopted by* 2015 WL 576707 (Feb. 10, 2015), *aff'd sub nom. Williams-Steele v. TransUnion*, 642 F. App'x 72 (2d Cir. 2016). A "consumer report" communicates information bearing on a consumer's

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 130 of 143

Perez v. Experian, Not Reported in Fed. Supp. (2021)
2021 WL 4784280

"credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living," which information is used, expected to be used, or collected for purposes of establishing the consumer's eligibility for credit, insurance, and employment, or for certain other limited purposes. 15 U.S.C. § 1681a(d)(1). Perez's gender and address history do not fit within the definition of a "consumer report" nor does the Experian sex offender monitoring and notification tool. Therefore, Perez's allegations regarding his address changes and gender do not state a claim for inaccurate information under the FCRA as a matter of law. See Williams-Steele, 2014 WL 1407670, at *4 (recommending dismissal for claim based on "inaccurate contact information").

### ii. Incomplete employment history

**\*10**  Perez also contends that the CRA defendants have "deliberately and maliciously reported plaintiff's incomplete work history for a number of years." Compl. ¶28. However, in order to state a cognizable claim, Perez would need to allege that his incomplete work history has been "prejudicial to an assessment of the plaintiff's eligibility for credit under the FCRA," or otherwise adversely affected the other factors listed in § 1681a(d)(1). Williams-Steele, 2015 WL 576714, at *2 ("Plaintiff's claim that her '[p]lace of employment [is] not [a]ccurate' is not actionable."). Perez has not done so. Thus, Perez has failed in his present pleading to state a claim under the FCRA for the reporting of incomplete work history. This particular claim should be dismissed without prejudice to his filing an amended complaint, but only if he can provide the necessary information to show how the alleged reporting of his allegedly incomplete work history bore on his credit worthiness.

### c. Perez fails to allege a violation of §§ 1681e and 1681i for inaccurate reporting of his trade lines.

Perez also alleges the CRAs reported inaccurate information in his trade lines, including his Capital Bank balance, Verizon Wireless balance, Best Buy balance, as well as other accounts. Compl. ¶29; Ex. 1. [11] He claims that the CRA defendants "do not conduct a meaningful investigation, or an investigation at all, when it receives a notice of dispute from a [sic]." Id. ¶47. The party providing notice to the CRA is omitted and the sentence is incomplete, so it is unclear if Perez's allegations refer to a notice from a consumer, as in Perez himself, or from

a furnisher of information, such as Citibank or Verizon. In his opposition papers, Perez states that he has notified Experian, Equifax, and Trans Union of inaccuracies in his reports "on at least a dozen cases" over a ten-year period, with "no action... taken on the part of any of these defendants." Pl. Opp. at 6. He also alleges that he filed "at least a dozen complaints within the last [six] years in reference to mistakes that he has discovered on his reports" that were "summarily dismissed." Id. at 11. Perez contends that Experian, Equifax, and Trans Union are all "complicit" in a scheme of misreporting. Compl. ¶32. The CRA defendants respond that Perez made no claim that they failed to meet their obligations under the FCRA, and instead only contends the issues with his credit report arise from a "criminal conspiracy." Joint Defs. Mem. at 7, 15. The Court construes Perez's claims to allege willful or negligent noncompliance with Section 1681e(b) as to the CRAs' procedures to assure maximum possible accuracy, as well as Section 1681i as to the CRA's procedures to investigate disputes as to a report's accuracy.

[11]    A trade line is a "record of activity for any type of credit extended to a borrower and reported to a credit reporting agency." Trade Line, INVESTOPEDIA, https://www.investopedia.com/terms/t/trade-line.asp (last visited Oct. 12, 2021).

Taking his allegations to be true, the Court finds that Perez satisfies the threshold requirement as he has alleged his credit information is not accurate. See Compl. ¶¶27, 29; Khan, 2019 WL 2492762, at *3. However, Perez fails to set forth any allegations regarding deficiencies in the procedures followed by the CRAs. Because Perez "fail[s] to make any allegations regarding ... the procedures followed" by Equifax, Experian, and Trans Union, Nguyen, 2015 WL 2354308, at *11, his "[t]hreadbare recitals of the elements" do not state a plausible claim for relief under Section 1681e and should be dismissed. Iqbal, 556 U.S. at 678.

Because he has alleged his credit information is not accurate, Perez also satisfies the threshold requirement for a claim under § 1681i. See Compl. ¶¶27, 29; Khan, 2019 WL 2492762, at *3. Additionally, Perez directly disputed the inaccuracies with Experian, Equifax, and Trans Union. Pl. Opp. at 6. Perez's notification of dispute triggered the CRA defendants' obligation to conduct a "reasonable reinvestigation" and notify the "furnisher" of information that Perez disputed the items. 15 U.S.C. §§ 1681i(a)(1); 1681i(a)(2). However, Perez states that the CRA defendants took "no action" in response to his disputes regarding his reports. Pl. Opp. at 6. Thus, liberally construed, Perez has alleged

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 131 of 143

Perez v. Experian, Not Reported in Fed. Supp. (2021)

2021 WL 4784280

that the CRA defendants violated the FCRA requirement to reasonably reinvestigate under § 1681i. To state such a cause of action, Perez must also allege that the CRA defendants were either willful or negligent in their noncompliance with § 1681i. Accordingly, the Court will now consider whether Perez has satisfied the requirements of § 1681n or § 1681*o* for willful or negligent noncompliance with § 1681i.

### i. Perez fails to allege sufficient facts to establish that the CRA defendants' actions were willful or negligent.

**\*11** To maintain a claim under § 1681i for the failure to reinvestigate the inaccurate reporting of his trade lines, Perez must allege the CRA defendants were willful or negligent in their noncompliance. The FCRA allows for a cause of action for willful and negligent noncompliance "with any requirement imposed" by the FCRA. 15 U.S.C. §§ 1681n, 1681*o*. "In regard to a plaintiff's obligation to allege that a defendant's violation was willful or negligent, various courts have held that, in order to survive a motion to dismiss, the plaintiff's complaint must allege specific facts as to the defendant's mental state" when the defendants committed the violation of the FCRA. *Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 397 (S.D.N.Y. 2014). Merely stating that the violation was "willful" or "negligent" without more is insufficient. *Perl v. Plains Com. Bank*, No. 11-CV-7972 (KBF), 2012 WL 760401, at \*2 (S.D.N.Y. Mar. 8, 2012); *Perl v. Am. Exp.*, No. 11-CV-6899 (KBF), 2012 WL 178333, at \*2 (S.D.N.Y. Jan. 19, 2012) ("While [plaintiff] assert[s] that each [D]efendant's FCRA violation was willful, [he] do[es] so in a conclusory manner in [both] of the complaints.... [Plaintiff] ha[s] failed to allege any facts related to [D]efendants' state of mind when they allegedly [violated the FCRA]").

### ii. Willful and Negligent Noncompliance with the FCPA

#### a. Willfulness

To allege willful noncompliance with the FCRA, a plaintiff must allege facts "related to defendants' state of mind when they allegedly [violated the FCRA]." *Id.* at \*2. The requirement of willfulness in this context can be satisfied by evidence of "reckless disregard" for statutory duties. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–57 (2007). To constitute reckless disregard, a CRA's interpretation of

its statutory duties must be "objectively unreasonable," not merely "erroneous." *Id.* at 69.

Perez alleges that Experian, Equifax, and Trans Union have "deliberately and maliciously" misreported his work history and credit accounts. Compl. ¶¶28–29. Throughout his complaint, he alleges the CRA defendants have participated in a "deliberate scheme" with the other defendants and government agencies. Compl. ¶25. In his opposition papers, Perez contends that the CRAs are "in collusion with the inaccurate reporting," of his accounts and have been informed "of their indiscretions and violations." Pl. Opp. at 9, 12.

Perez adequately alleges that his credit report contained inaccuracies, but he fails to allege sufficient facts to establish the CRA defendants' actions were willful. While Perez asserts the CRA defendants' violations were "deliberate," he does so in an entirely conclusory manner and does not allege any facts related to the CRA defendants' state of mind when they allegedly failed to meet their statutory requirements. The facts he does assert do not include enough information to allow the Court to draw a reasonable inference that the alleged violations were willful or that the CRA defendants knew that they recklessly disregarded their obligations to reinvestigate the disputed information. *See, e.g., Perl*, 2012 WL 178333, at \*3.

#### b. Negligence

The Court also construes Perez's complaint as alleging the negligent violation of the FCRA under § 1681*o*. In his opposition papers, Perez states that "the CRAs should have been able to identify inaccuracies in the information being reported and the agencies reporting this information." Pl. Opp. at 12. However, like his allegations as to the CRA defendants' supposed willfulness, these allegations are pleaded in conclusory fashion, and do not constitute facts from which the Court can infer that the CRA defendants should have known that they were violating the provisions of the FCRA.

Additionally, a complaint alleging a claim for negligent violation of the FCRA under § 1681*o* must allege actual damages. To do so, the complaint need allege only enough facts demonstrating that the plaintiff suffered an injury entitling him to actual damages. *See, e.g., Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 240 (S.D.N.Y. 2014). Perez alleges actual damages in his complaint. *See* Compl.

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 132 of 143

Perez v. Experian, Not Reported in Fed. Supp. (2021)

2021 WL 4784280

¶80 ("Perez has also been unable to use or increase his existing credit"); ¶82 ("[D]enial of Personal credit card occurred without written notification: Apple Credit, Chase Business Credit, Bank of America business credit, American Express"). These allegations are enough to satisfy Perez's burden to allege actual damages. *See Braun v. Client Servs. Inc.*, 14 F. Supp. 3d at 400 (burden of actual damages satisfied by allegations of "loss of credit, loss of the ability to purchase and benefit from credit, and lowering of credit lines").

**\*12** Accordingly, the Court recommends dismissing Perez's claims for a violation of § 1681i of the FCRA against the CRA defendants as they are, on the present record, entirely conclusory in nature, but granting him leave to amend his complaint with the requisite facts—to the extent they exist —to give him one final opportunity to make these claims cognizable under the FCRA.

### C. Claims under the Fair Debt Collection Practices Act

Additionally, Perez alleges violations of § 1692e of the FDCPA. Compl. ¶¶53–54. The FDCPA prohibits debt collectors from engaging in "any conduct the natural consequences of which is to harass, oppress, or abuse any person," and from using "any false, deceptive, or misleading representation or means" in connection with the collection of any debt. 15 U.S.C. §§ 1692d, 1692e. "To establish a violation under the FDCPA, three elements must be proven: '(1) the plaintiff [must] be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a "debt collector," and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements.' " *Skvarla v. MRS BPO, LLC*, No. 21-CV-55 (ER), 2021 WL 2941118, at \*2 (S.D.N.Y. July 12, 2021) (quoting *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559– 60 (E.D.N.Y. 2017)).

The term "debt collector" is defined under the FDCPA as a person who, among other requirements, is engaged in any "business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect ... debts owed or due... another." 15 U.S.C. § 1692a(6). By contrast, " 'creditors' are not considered 'debt collectors' under [the FDCPA] and [its] provisions ... do not apply to them." *Reid v. Toyota Motor Credit Corp.*, No. 12-CV-7436 (PAC) (JLC), 2013 WL 1397143, at \*6 (S.D.N.Y. Apr. 8, 2013) (quoting *Masudi v. Ford Motor Credit Co.*, No. 07-

CV-1082 (CBA) (LB), 2008 WL 2944643, at \*3 (E.D.N.Y. July 31, 2013)), *adopted by* 2013 WL 3776201 (July 18, 2013). A "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed" except to the extent the person "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." *Masudi*, 2008 WL 2944643, at \*3 (quoting 15 U.S.C. § 1692a(4)).

The FDCPA prohibits, *inter alia*, conduct whose "natural consequence" is to "harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. To this end, the FDCPA gives a consumer the right to dispute a debt claimed by a debt collector, and to seek verification of the validity of the debt. *Id.* § 1692g(b). The FDCPA also regulates the debt collector's written notice, within five days of its initial communication with the consumer, stating the amount of debt and the name of the creditor to whom the debt is owed. *Id.* §§ 1692g(a)(1), 1692g(a)(2).

### 1. Perez failed to allege that Verizon, Equifax, Experian, and Trans Union are "debt collectors" under the FDCPA.

Perez alleges defendants have violated § 1692e of the FDCPA by using false representations concerning the character, amount, and legal status of a debt, and by failing to communicate to the CRA that the debt is disputed. Compl. ¶53. In response, Equifax, Experian, Trans Union, and Verizon argue that Perez failed to allege that they are debt collectors and that as a result, he has failed to state a claim against them for violation of the FDCPA. Joint Defs. Mem. at 11–12; Joint Defs. Reply at 8. Perez alleges that Sequium, Verizon, and Citibank serve as a debt collector "at times." Pl. Opp. at 14.

**\*13** Equifax, Experian, and Trans Union are credit reporting agencies that do not collect debts, and therefore do not fall within the meaning of "debt collector" under the FDCPA, but instead under the term "consumer reporting agency" as defined in § 1681a(f). *Compare* 15 U.S.C. 1692a(6) (defining debt collector) *with* 15 U.S.C. § 1681a(f) (defining consumer reporting agency). *See also Allah v. New Century Mortg. Corp.*, No. 06-CV-3031 (JG), 2006 WL 3196851, at \*2 (E.D.N.Y. Nov. 4, 2006) (company only becomes subject to the FDCPA as debt collector or there is an "indicat[ion] that a third person is collecting... debts" in its name). Perez does not allege that the CRA defendants are "debt collectors."

Perez v. Experian, Not Reported in Fed. Supp. (2021)

Case 1:25-cv-01393-MAD-MJK     Document 5     Filed 02/20/26     Page 133 of 143

2021 WL 4784280

Instead, he alleges that the defendants "do not always collect debts but hire debt collection companies like Sequium." Pl. Opp. at 13. Because the complaint contains no non-conclusory allegations that any of the CRA defendants are "debt collectors" or have engaged in any debt collection activity, Perez fails to state a claim under the FDCPA against them. *See Allen v. United Student Aid Funds, Inc.*, No. 17-CV-8192 (VSB), 2018 WL 4680023, at *5 (S.D.N.Y. Sept. 28, 2018) (granting motion to dismiss when plaintiff has not pled sufficient facts to classify defendants as debt collectors).

Similarly, Verizon is not a "debt collector" as Perez's pleadings, if anything, establish that it extends credit, thus creating a debt. *See Vallecastro*, 2014 WL 7185513, at *3; *Mazzei v. Money Store*, 349 F. Supp. 2d 651, 658 (S.D.N.Y. 2004) ("Creditors are generally not considered debt collectors under the FDCPA.") (citing 15 U.S.C. § 1692a(6)(F)). Perez instead alleges that Verizon "hire[s] debt collection companies like Sequium." Pl. Opp. at 13. Further, Perez does not allege that Verizon used the name of a third party in connection with his debt so as to fall within the narrow category of "creditors" who are also considered "debt collectors." *Scalercio-Isenberg v. Citizens Fin. Grp., Inc.*, No. 18-CV-9226 (JGK), 2019 WL 7187247, at *8 (S.D.N.Y. Dec. 26, 2019) (creditors only subjected to the FDCPA if they use third party name to collect debts). Because Verizon is a "creditor" who hires a debt collection company seeking to collect its debts, Perez has failed to allege that Verizon is a "debt collector" within the meaning of the FDCPA. *See Houck v. U.S. Bank, N.A. for Citigroup Mortg. Loan Tr. 2007-AR5*, 689 F. App'x 662, 664 (2d Cir. 2017) (affirming dismissal against creditor under FDCPA).

Sequium, on the other hand, concedes that it falls within the definition of a "debt collector." Sequium Mem. at 5. Accordingly, the Court will analyze whether Perez's claim that Sequium violated the FDCPA is cognizable.

**2. Perez fails to allege Sequium violated the FDCPA.**

Perez alleges that Sequium's failure to issue a debt settlement letter violates § 1692e and § 1692*l*(a) of the FDCPA. Compl. ¶¶ 37, 54. Sequium counters that Perez has failed to state a claim under the FDCPA because there is no requirement to issue settlement letters. Sequium Mem. at 6.[12] The Court agrees with Sequium. The FDCPA requires that, *inter alia*, debt collectors issue written collection letters to consumers, with language requirements to ensure the consumers are

informed of the amount of debt, name of creditor, and their right to dispute the validity within 30 days but does not require debt collectors to offer settlements. *See* 15 U.S.C. § 1692g. Because Perez has only alleged that he did not receive a settlement letter, he has failed to state a FDCPA claim against Sequium.

[12]    Sequium also contends that Perez waived any claims against it by failing to address the arguments in its Memorandum of Law. Sequium Reply at 2. However, "a litigant's failure to oppose a motion does not by itself merit dismissal of a complaint." *Bernheim v. New York City Dep't of Educ.*, No. 19-CV-9723 (VEC) (JLC), 2020 WL 3865119, at *4 (S.D.N.Y. July 9, 2020) (citing *Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010), *adopted by* 2020 WL 4383503 (July 31, 2020)). "When presented with an unopposed motion, a court remains obligated to review the pleadings and determine whether there is a sufficient basis for granting the motion." *Id.* (citing *Goldberg*, 599 F.3d at 183).

**\*14**  In sum, Perez's FDCPA claims against Equifax, Experian, Trans Union, Verizon, and Sequium should all be dismissed for failure to state a claim.

### III. CONCLUSION

For the foregoing reasons, the Court recommends that the following claims be dismissed with prejudice:

1) Perez's claims under 15 U.S.C. § 1681s-2(a);

2) Perez's claims under 15 U.S.C. § 1681s-2(b) against Equifax, Experian, and Trans Union; and

3) Perez's claims under the FDCPA.

The Court recommends that the following claims be dismissed without prejudice, so that Perez may replead them within thirty (30) days of the Court's decision:

1) Perez's claims under 15 U.S.C. § 1681s-2(b) against Verizon and Sequium;

2) Perez's claims under the FCRA against Equifax, Experian, and Trans Union related to the reporting of his employment history; and

Case 1:25-cv-01393-MAD-MJK    Document 5    Filed 02/20/26    Page 134 of 143

**Perez v. Experian, Not Reported in Fed. Supp. (2021)**
2021 WL 4784280

3) Perez's claims under 15 U.S.C. § 1681i against Equifax, Experian, and Trans Union.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer, United States Courthouse, 40 Foley Square, New York, New York.

Any requests for an extension of time for filing objections must be directed to Judge Engelmayer.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See* *Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Garwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

### All Citations

Not Reported in Fed. Supp., 2021 WL 4784280

---

End of Document                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (3)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1. Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss and for Judgment on the Pleadings** <br> Eric Andrew PEREZ, Plaintiff, v. EXPERIAN, Equifax, Trans Union, Verizon, Sequium Asset Solutions, Federal Trade Commission, Citibank, Defendants. <br> 2021 WL 11109411 | — | S.D.N.Y. | May 17, 2021 | Motion |
| **2. Docket 1:20-CV-09119** <br> Perez v. Experian et al | — | S.D.N.Y. | Oct. 30, 2020 | Docket |
| **3. Docket 7:20-CV-09119** <br> Perez v. Experian et al | — | S.D.N.Y. | Oct. 30, 2020 | Docket |

**History (2)**

**Direct History (2)**

1. Perez v. Experian 🔗
   2021 WL 4784280 , S.D.N.Y. , Oct. 14, 2021

*Report and Recommendation Adopted by*

2. Perez v. Experian
   2021 WL 5088036 , S.D.N.Y. , Nov. 02, 2021

2012 WL 178333

KeyCite Yellow Flag
Distinguished by    Braun v. United Recovery Systems, LP,    S.D.N.Y.,
March 28, 2014

2012 WL 178333
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Israel PERL, Plaintiff,
v.
AMERICAN EXPRESS, Defendant.

No. 11 Civ. 7374(KBF).
|
This Memorandum and Order also relates
to: 11 Civ. 6899(KBF), 11 Civ. 7972(KBF),
11 Civ. 7767(KBF), 11 Civ. 8165(KBF),
11 Civ. 8521(KBF), 11 Civ. 8529(KBF), 11
Civ. 8705(KBF), 11 Civ. 8887(KBF), 11 Civ.
9007(KBF), 11 Civ. 9066(KBF), 11 Civ. 9092(KBF).
|
Jan. 19, 2012.

MEMORANDUM AND ORDER

KATHERINE B. FORREST, District Judge.

**\*1** *Pro se* plaintiffs Israel Perl and Gittel Perl initiated these
related actions *in forma pauperis* over a number of months
this past fall. Either Mr. Perl or Ms. Perl brings each of
these actions against a single financial institution, purporting
to claim willful and negligent violations of the Fair Credit
Reporting Act ("FCRA"). In support of both claims, each
complaint alleges that the relevant defendant initiated one
or more "hard pull(s)" and/or "soft pull(s)" of the relevant
plaintiff's credit report without a permissible purpose, thereby
reducing his or her credit score. The complaints in *Perl
v. American Express* and *Perl v. Credit Bureau Services
Inc.* (*"Credit Bureau"* ) each also allege that the defendant
repeatedly informed the plaintiff that it could not find a record
of his or her account. In addition to the two FCRA causes
of action, the complaint in *Perl v. Arrow Financial Services,
LLC* claims violations of the Fair Debt Collection Practices
Act ("FDCPA") and the General Business Law of the State
of New York, based on allegedly deceptive debt-collection
practices.

The Court now *sua sponte* DISMISSES the complaints
without prejudice for failure to state a claim upon which
relief can be granted, except that the willful FCRA claim in
*American Express* and *Credit Bureau* and the FDCPA claim in
*Arrow Financial Services, LLC* survive dismissal at this time.

DISCUSSION

The Court has the authority to screen *sua sponte* an *in forma
pauperis* complaint at any time pursuant to 28 U.S.C. §
1915(e)(2)(B). The Court may dismiss such a complaint, or
portion thereof, if it fails to state a claim upon which relief
could be granted. § 1915(e)(2)(B)(ii). Even though the law
authorizes dismissal on that ground, courts "remain obligated
to construe *pro se* complaints liberally." *E.g., DiPetto v.
U.S. Postal Serv.,* 383 Fed. Appx. 102, 103 (2d Cir.2010);
*Johnson v. J.P. Morgan Chase Bank, N.A., et al.,* No. 11
Civ. 662(DLC), 2011 WL 497923, at *1 (S.D.N.Y. Feb.10,
2011). Thus, pro se complaints should be read with "special
solicitude" and should be interpreted to raise the "strongest
claims that they suggest." *E.g., DiPetto,* 383 Fed. Appx. at
103 (internal punctuation omitted); *see also Johnson,* 2011
WL 497923, at *1.

Nonetheless, a *pro se* complaint must still provide a defendant
with fair notice of what the plaintiff's claims are and each of
the grounds upon which they rest. See *Valenzuela v. Riverbay*
Corp., No. 06 Civ. 903(DLC), 2007 WL 414487, at *2
(S.D.N.Y. Jan.31, 2007); *see generally Dura Pharms., Inc. v.
Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577
(2005). A pleading that offers only "labels and conclusions or
a formulaic recitation of the elements of a cause of action will
not do." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949,
173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

"Even though all allegations contained in the complaint are
assumed to be true" on a motion to dismiss, that "tenet
is 'inapplicable to legal conclusions.' " *Zapolski v. Fed.
Republic of Germany,* 425 Fed. Appx. 5, 6 (2011) (quoting
*Iqbal,* 129 S.Ct. at 1949) (affirming *sua sponte* dismissal of
pro se, *in forma pauperis* complaint). Rather, "[t]he complaint
must plead 'enough facts to state a claim to relief that is
plausible on its face.' " *Zapolski,* 425 Fed. Appx. at 6 (quoting
*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct.
1955, 167 L.Ed.2d 929 (2007)); accord *DiPetto,* 383 Fed.
Appx. at 103 (*"pro se* complaints must contain sufficient
factual allegations to meet the plausibility standard"). A claim
has " 'facial plausibility when the plaintiff pleads factual

2012 WL 178333

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Zapolski,* 425 Fed. Appx. at 6 (quoting *Iqbal,* 129 S.Ct. at 1949).

### Statute of Limitations

**\*2** As an initial matter, one of the actions, *Perl v. Bombay CMPNY/CBSD* (*"Bombay"* ), may be dismissed as time-barred. An action alleging liability under the FCRA may be brought in a federal district court no later than the earlier of (1) two years after the plaintiff's discovery of the alleged violation; or (2) five years after the alleged violation occurred. 15 U.S.C. § 1681p. The alleged violation in *Bombay* occurred in July 2006, more than five years before the complaint was filed on October 27, 2011. Thus, regardless of when plaintiff discovered the alleged violation, his action is outside the statute of limitations period and so fails to state a claim upon which relief can be granted.

### Violation of the FCRA

Plaintiffs' purported FCRA causes of action each rest upon a defendant's alleged violation of Section 1681b(f) of the Act. To state a claim for civil liability based on that Section, a plaintiff must allege both that the defendant used or obtained the plaintiff's credit report for an impermissible purpose, *see* 15 U.S.C. § 1681b(f); *see also Stonehart v. Rosenthal,* No. 01 Civ. 651(SAS), 2001 WL 910771, at \*3 (S.D.N.Y. Aug.13, 2001), and that the violation was willful or negligent, *see* 15 U.S.C. §§ 1681n, 1681*o; see also, e.g., Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469, 473 (2d Cir.1995). In each of the instant cases, the relevant plaintiff adequately alleges that his or her report was "pulled"-i.e. obtained-for an impermissible purpose (*see, e.g.,* Compl. at ¶¶ 10–11, *Perl v. American Express,* No. 11 Civ. 7347) but fails adequately to allege willfulness and/or negligence. Accordingly, plaintiffs' willfulness and negligence claims against Plains Commerce Bank, AT & T Mobility, Nationwide Credit Inc., Webbank/DFS, 121 NCC 1593 via CBC Innovis, AT & T Services, Hudson Valley Federal, Capital One Bank, and Arrow Financial Services, LLC, and their negligence claim against American Express and Credit Bureau Collection Services, Inc., are dismissed with leave to replead.

### Willful Violation

While the plaintiffs assert that each defendant's FCRA violation was willful, they do so in a conclusory manner in all but two of the complaints. *See generally Iqbal,* 129 S.Ct.

at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks omitted)). Willfulness as used in the relevant provision of the FCRA, Section 1681n, means knowledge or recklessness. *See, e.g., Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 56–60, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007); *see generally* 15 U.S.C. § 1681n. Other than in *American Express* and *Credit Bureau,* plaintiffs have failed to allege any facts related to defendants' state of mind when they allegedly initiated the "hard" and/or "soft pull(s)" on plaintiffs' credit reports. Some of the complaints assert a series of "pulls." Such allegations go some of the way toward suggesting knowledge on defendants' part by demonstrating a pattern of conduct. But even those complaints do not provide enough factual content to allow this Court to draw the reasonable inference that the alleged violation was willful. *See Zapolski,* 425 Fed. Appx. at 6. Based on the allegations in the complaints, defendants' conduct could just as likely have been unintentional and so plaintiffs have failed to state a claim under Section 1681n.

**\*3** In *American Express* and *Credit Bureau,* however, the complaints provide more factual content—each additionally alleging that the relevant defendant repeatedly informed the relevant plaintiff that it could not find any record of an account belonging to him or her. (Compl. at ¶ 12, *American* Express; Compl. at ¶ 11, *Perl v. Credit Bureau Collections Servs., Inc.,* 11 Civ. 8165.) If, as alleged in each of those two actions, the relevant defendant was well aware that the plaintiff had no account, it plausibly follows that the defendant was also aware that it had no permissible purpose for obtaining the plaintiff's credit report. *See generally* 15 U.S.C. § 1681b(a) (setting forth the permissible purposes for obtaining a credit report). Given the liberal pleading standard for *pro se* cases, such allegations permit a reasonable inference that the defendant committed a knowing or reckless violation of the FCRA. Accordingly, Ms. Perl's willful violation claim against American Express and Mr. Perl's equivalent claim against Credit Bureau Collection Services survive *sua sponte* dismissal as currently pled.

### Negligent Violation

As with the willful noncompliance claim, plaintiffs' claim for negligent violation of the FCRA amounts to no more than a legal conclusion in all cases except *American Express* and *Credit Bureau.* Other than in those two actions, plaintiffs have failed to identify any duty or standard of care owed by the respective defendants. *See generally Clavizzao v. United States,* 706 F.Supp.2d 342, 349–50 (S.D.N.Y.2009) (holding that *pro se* plaintiffs failed to state a negligence claim

where they made only a "conclusory allegation of negligence" and were "woefully non-specific, failing to identify what duty [defendant] owed [p]laintiffs ... and how [defendant] breached that duty"). Allegations stating a violation of the FCRA are insufficient, without more, to establish the element of negligence, which Congress clearly intended to be an extra hurdle to liability under the FCRA. *See* 15 U.S.C. § 1681*o*; *see also Casela,* 56 F.3d at 473; *Pietrafesa v. First American Real Estate Info. Servs.,* No. 1:05–CV–1450, 2007 WL 710197, at \*3 (N.D.N.Y. Mar.6, 2007) ("The fact that a consumer report is furnished for an impermissible purpose does not result in automatic liability. Liability is imposed only when the [defendant] either willfully or negligently fails to maintain reasonable procedures to avoid violations of, i.e., § 1681b." (internal punctuation omitted)); *King v. MTA Bridges and Tunnels,* 933 F.Supp. 220, 224–25 (E.D.N.Y.1996) (rejecting potential 1681*o* claim by *pro se* plaintiff despite allegations suggesting a FCRA violation, where plaintiff had put forth no facts to support an inference of negligence).

In *American Express* and *Credit Bureau,* the same factual allegation that plausibly establishes a willful state of mind also does so for a negligent state of mind. There is no question that the defendant in each case acted unreasonably in "pulling" the relevant plaintiff's credit report if it was aware that it had no permissible purpose for doing so. Yet because plaintiffs in these actions have failed adequately to allege another necessary element of the negligence cause of action —actual damage—their claim is nevertheless dismissed. *See Engel v. Scully & Scully, Inc.,* No. 10 Civ. 3167, 2011 WL 4091468, at \*5–6 (S.D.N.Y. Sept. 14, 2011) (holding that while plaintiff had stated a willfulness claim under Section 1681n, he did not state a negligence claim under Section 1681*o* because he failed to allege actual damage).

\*4 Plaintiffs have insufficiently pled actual damage in support of their negligent noncompliance claim. A defendant who negligently violates the FCRA is liable for any actual damage sustained by the plaintiff, 15 U.S.C. § 16B1*o*(a)(1), and Courts have recognized such damage to be an essential element of a Section 1681o claim, *see Engel,* 2011 WL 4091468, at \*6 (dismissing Section 1681o claim, where no actual damage was alleged and only statutory damages were demanded); *Agu v. Rhea,* No. 09–CV–4732, 2010 WL 5186839, at \*6–7 (E.D.N.Y. Dec. 15, 2010) (*pro se* plaintiff). While the factual allegations in each of the instant complaints state that at least one of the "pulls" reduced the plaintiff's credit score, they contain no facts suggesting that such

reduction proximately caused actual injury to the plaintiff. *See Gorman v. Experlan Info. Solutions Inc.,* No. 07–CV–1846 (RPP), 2008 WL 4934047, at \*7 (S.D.N.Y. Nov.18, 2008); *see also Casella,* 56 F.3d at 474–76; *Engel,* 2011 WL 4091468, at \*6.

That plaintiffs even believe they were actually damaged is not plain from the complaints. *See generally Dura Pharms.,* 544 U.S. at 346 (holding that defendants must have fair notice of the grounds for plaintiffs' claims); *Valenzuela,* 2007 WL 414487, at \*2. Plaintiffs' recitation of the elements of their cause of action in the "Counts" section of each complaint omits a statement of actual damage, despite the obvious care plaintiffs' took in reciting the other elements of their claim. Plaintiffs also demand only statutory, not actual, damages (including on their willful noncompliance claim) in all but the *Bombay* and *Perl v. Plains Commerce Bank* matters. In any event, because in *Bombay* and *Plains Commerce Bank* and all of the other actions, plaintiffs have failed to allege adequate facts in support of actual damage and also—except in *American Express* and *Credit Bureau*—in support of a negligent state of mind, plaintiffs' negligent noncompliance claim against each of the defendants is dismissed with leave to replead.[1]

[1] Plaintiffs also demand punitive damages for their negligent noncompliance cause of action in a number of the cases, which damages are not available under Section 1681*o* for a negligent violation of the FCRA. *See* 15 U.S.C. § 1681*o*.

*Furnisher of Information*

In both of their FCRA counts in each of the complaints, plaintiffs allege that the applicable defendant is a "furnisher of information within the meaning of the FCRA, 15 U.S.C. § 16S1S–2." The term "furnisher of information" is not defined in the FCRA, but this Court has interpreted it to mean "entities that transmit, to credit reporting agencies, information relating to debts owed by consumers." *Barberan v. Nationpoint,* 706 F.Supp.2d 408, 427 n. 11 (S.D.N.Y.2010) (internal quotation marks omitted). The reference to Section 1681s–2 in the complaints is passing, and plaintiffs do not state a separate cause of action under that section. Thus, to the extent that plaintiffs intended to state such a claim, it is dismissed. Additionally, to the extent that they wish to plead a cause of action under Section 1681s–2(a) in any amended complaint—which section imposes a duty on furnishers of information to provide accurate information about consumers to credit reporting agencies—doing so

would be futile. Section 1681s–2(a) is only enforceable by government officials, not by private plaintiffs. 15 U.S.C. § 1681s–2(d); *accord Barberan,* 706 F.Supp.2d at 427. Thus, any claim for violation of that section would necessarily fail as a matter of law. Accordingly, any claim brought under Section 1681s–2(a) is dismissed with prejudice.

*Perl v. Arrow Financial Services, LLC*

**\*5** This action is different from the others in that it contains two additional counts for violations of Section 1692 of the Fair Debt Collection Practices Act ("FDCPA") and Section 349 of the General Business Law of the State of New York ("GBL"), both based on allegations of deceptive debt-collection practices. Specifically, the plaintiff alleges that he sent a "Debt Validation letter" to Arrow Financial Services ("Arrow"), a debt collection company, presumably requesting that it provide evidence that he had a valid debt. Arrow allegedly responded with a debt collection letter, stating that the "information from the credit agency will be deleted," but subsequently failed to delete that information and never validated the debt. The plaintiff also alleges that he never had "an account" with Arrow, presumably meaning that he did not in fact have any debts on which Arrow was entitled to collect. Reading between the lines of the complaint, the plaintiff seems to allege that Arrow at least implicitly acknowledged that the claimed debt was invalid when it indicated that the information regarding the debt would be erased from plaintiff's credit report, but then never actually erased it and, instead, tried to collect on the debt.

Such factual allegations should be liberally construed and interpreted to raise the strongest claims they suggest. As such, they provide sufficient support to permit the Court to draw a reasonable inference—based on the complaint—that Arrow is liable for the violations of the FDCPA claimed. *See* 15 U.S.C. §§ 1692e(2), (5), (10); *see generally DiPetto,* 383 Fed. Appx. at 103; *Zapolski,* 425 Fed. Appx. at 6. Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Whether a debt collection notice violates the FDCPA "is judged by the 'least sophisticated consumer' test," under which the notice is deceptive "if it can be reasonably read to have two or more different meanings, one of which is inaccurate." *See, e.g., Suiqulanda v. Cohen & Shamowitz, LLP,* No. 10 Civ. 5868(PKC), 2011 WL 4344044, at \*4 (S.D.N.Y. Sept.8, 2011) (internal quotation marks omitted). Given those standards, the plaintiff has stated a plausible claim for violation of Section 1692e (and the particular

subsections he identifies) that survives at least *sua sponte* dismissal.

Plaintiff's GBL claim does not fare as well, however. To state a claim under Section 349 of the GBL, a plaintiff must allege that "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *E.g. Spagnola v. Chubb Corp.,* 574 F.3d 64, 73 (2d Cir.2009). Plaintiff fails to provide anything more than a legal conclusion regarding the first element of the claim. While plaintiff alleges that Arrow's acts were "consumer-oriented" and "threaten[ed] the rights of consumers generally," he does not plead particular facts that plausibly demonstrate that Arrow's alleged conduct had "a broader impact on consumers at large" or "potentially affect[ed] similarly-situated consumers." *See S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.,* 84 F.3d 629, 636 (2d Cir.1996) (internal punctuation omitted), He does not allege, for instance, that the debt collection letter he received was a form collection letter, *see Rozier v. Fin. Recovery Sys., Inc.,* No. 10–CV–3273(DLI)(JO), 2011 WL 2295116, at \*5 (E.D.N.Y. June 7, 2011) (finding allegation that debt collection letter was a form notice sent to thousands of customers sufficient to meet 'consumer-oriented' requirement of Section 349), or that Arrow has improperly sought to collect on the debts of other consumers in a similar fashion. Thus, because the plaintiff has failed to state adequately a necessary element of his claim, the claim is dismissed. *See generally OK Petroleum v. Travelers Indem. Co.,* 09 Civ. 10273, 2010 WL 2813804, at \*4–5 (S.D.N.Y. July 15, 2010) (dismissing plaintiffs' Section 349 claim where they speculated that others had been treated in a similar fashion but provided no factual support of consumer-oriented conduct); *Cross v. State Farm Ins. Co.,* No, 3:10–CV–1179, 2011 WL 496534, at \*3–4 (N .D.N.Y. Oct. 17, 2011) (same for a *pro se* plaintiff).

CONCLUSION

**\*6** For the foregoing reasons, the following complaints and claims are hereby dismissed without prejudice and with leave to re-plead within 30 days of the date of this Order (except to the extent that they purport to state a claim under FCRA Section 1681s–2(a), which claim is dismissed with prejudice):

• The complaints in their entirety in *Perl v. Bombay CMPNY/CBSD,* 11 Civ. 7767, *Perl v. Plains Commerce Bank,* 11 Civ. 7972, *Perl v. AT & T Mobility,* 11 Civ.

8521, *Perl v. Nationwide Credit Inc.,* 11 Civ. 8529, *Perl v. Webbank/DFS,* 11 Civ. 8705, *Perl v. 121 NCC 1593 via CBC Innovis,* 11 Civ. 8887, *Perl v. AT & T Services,* 11 Civ. 9007, *Perl v. Hudson Valley Federal,* 11 Civ. 9066, and *Perl v. Capital One Bank USA NA,* 11 Civ. 9092.

• Count II of the complaints in *Perl v. American Express,* 11 Civ. 7347, and *Perl v. Credit Bureau Collection Services, Inc. DBA CBCS,* 11 Civ. 8165.

• Counts I–II and IV of the complaint in *Perl v. Arrow Financial Services, LLC,* 11 Civ. 6899.

If plaintiffs choose to replead, to survive dismissal they must allege particular facts that would allow this Court to draw the reasonable inference that each defendant is liable for the conduct alleged. Put another way, plaintiffs would have to plead facts that would permit the Court to conclude that each defendant's conduct was more likely illegal than legal based on the applicable statute. Any amended complaints should also allege, provide facts in support of, and demand actual damage for the defendants' negligent violation of the FCRA. Additionally, while plaintiffs have already pled sufficient facts to support some elements of some of their claims, to the extent that they know of other facts relevant to the conduct alleged, they would be prudent to add those facts to any amended complaints they file.

If plaintiffs fail to replead any of their dismissed complaints or claims within the 30–day period, those complaints or claims will be dismissed with prejudice. As noted, any claim intended to be brought under Section 1681s–2(a) of the FCRA is already dismissed with prejudice and cannot be resuscitated by repleading.

The non-dismissed claims in *American Express, Credit Bureau* and *Arrow Financial Services* will proceed in their current form. The Court notes that defendant American Express is technically in default, having failed to answer Mr. Perl's original complaint by January 11, 2012 (*see* Docket Entry 8, *Perl v. American Express,* 11 Civ. 7347), and should answer plaintiff's willfulness claim immediately.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 178333

---

**Filings (5)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:11cv08887**<br>PERL v. 121 NCC 1593 VIA CBC INNOVIS | — | S.D.N.Y. | Dec. 02, 2011 | Docket |
| **2. Docket 1:11cv08705**<br>PERL v. WEBBANK/DFS | — | S.D.N.Y. | Nov. 28, 2011 | Docket |
| **3. Docket 1:11cv08529**<br>PERL v. NATIONWIDE CREDIT INC. | — | S.D.N.Y. | Nov. 18, 2011 | Docket |
| **4. Docket 1:11cv08521**<br>PERL v. AT&T MOBILITY | — | S.D.N.Y. | Nov. 18, 2011 | Docket |
| **5. Docket 1:11cv07347**<br>PERL v. AMERICAN EXPRESS | — | S.D.N.Y. | Oct. 11, 2011 | Docket |

**History (2)**

**Direct History (1)**

⚑  1.  Perl v. American Exp. 🖙
2012 WL 178333 , S.D.N.Y. , Jan. 19, 2012

**Related References (1)**

2.  Perl v. Plains Commerce Bank
2012 WL 760401 , S.D.N.Y. , Mar. 08, 2012